## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES MADISON PROJECT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 17-597-CKK |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant United States Department of Justice ("DOJ") hereby moves for summary

judgment pursuant to Fed. R. Civ. P. 56(b) and Local Rule 7(h) for the reasons stated in the

attached memorandum of points and authorities, statement of material facts, and supporting

declarations and exhibits.

Dated:  July 14, 2017                    Respectfully Submitted,

CHAD READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W., Room 5377
Washington, D.C. 20530
Tel.:    (202) 514-9836
Fax.:    (202) 616-8470
Email:  amy.powell@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAMES MADISON PROJECT, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | )    Case No. 17-597-CKK |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**STATEMENT OF MATERIAL FACTS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

As required by Local Civil Rule 7(h)(1), and in support of the Motion for Summary

Judgment, Defendants hereby make the following statement of material facts as to which there is

no genuine issue.

1.      This action arises from FOIA requests submitted by the Plaintiffs to the Federal

Bureau of Investigation ("FBI") and DOJ National Security Division ("NSD").  By letter dated

March 6, 2017, Plaintiffs sought:

> 1)      Any orders by the FISC authorizing surveillance of and/or
> collection of information concerning the Trump Organization,
> President Trump, President Trump's campaign for presidency, or
> people associated with President Trump.
> 2)      Any applications to the FISC seeking authorization for
> surveillance of and/or collection of information concerning the
> Trump Organization, President Trump, President Trump's
> campaign for presidency, or people associated with President
> Trump.
> 3)      Any minimization procedures issued by the FISC and that
> applied to any orders issued that fall within the scope of #1 or #2.

*See* Declaration of David Hardy, dated July 14, 2017, ¶ 5 & Exhibit A (FOIA Request);

Declaration of G. Bradley Weinsheimer, dated July 13, 2017, ¶ 4 & Exhibit A (FOIA Request).

2.      By email dated March 17, 2017, NSD refused to confirm or deny the existence of responsive records pursuant to Exemption 1, explaining that to confirm or deny the existence of responsive records would reveal information that is properly classified under Executive Order 13526.  *See* Weinsheimer Decl. ¶ 5 & Ex. B (NSD Response).

3.      On the same day, Plaintiffs appealed the determination to the DOJ Office of Information Policy ("OIP").  On April 12, 2017, OIP affirmed the determination of NSD – that the existence or non-existence of responsive records is a properly classified fact.  *See* Weinsheimer Decl. ¶ 5 & Ex. C (NSD Appeal Determination).

4.      By letter dated March 16, 2017, the FBI acknowledged receipt of Plaintiffs' request, and on April 4, 2017, the FBI also issued a Glomar response.   The FBI's Glomar response was based on FOIA Exemptions (b)(1), (b)(3), (b)(7)(A), and (b)(7)(E).  *See* Hardy Decl. ¶ 11 & Ex. D.

5.      G. Bradley Weinsheimer is an original classification authority.  Weinsheimer Decl. ¶ 2.  He determined that the information withheld by NSD is protected by Exemption 1. *Id.* ¶¶ 7-12.

6.      David Hardy is an original classification authority.  Hardy Decl. ¶ 2.  He determined that the information withheld by FBI is protected by Exemption 1.  *Id.* ¶¶ 24-33.

7.      The information withheld pursuant to Exemption 1 is under control of the United States Government, and contains information pertaining to intelligence activities, sources or methods.  *See* Executive Order 13526 §§ 1.4(c); Hardy Decl. ¶¶ 26-29; Weinsheimer Decl. ¶ 8.

8.      The information withheld pursuant to Exemption 1 also pertains to foreign relations.  Hardy Decl. ¶¶ 30-33.

9.      Mr. Weinsheimer and Mr. Hardy both determined that disclosure of the existence or non-existence of responsive records would cause harm to national security, and have articulated the harm that could be expected to occur.  Hardy Decl. ¶¶ 26-33; Weinsheimer Decl. ¶¶ 9-12.

10.      Mr. Hardy further determined that disclosure of the existence or non-existence of responsive records risks disclosure of intelligence sources and methods and is therefore protected by the National Security Act and Exemption 3.   *See* Hardy Decl. at ¶¶ 34-36.

11.      Mr. Hardy further determined that FISA applications and FISC orders – when they exist – are records compiled for law enforcement purposes within the meaning of Exemption 7.  *See* Hardy Decl. ¶¶ 37-39.

12.      Mr. Hardy further determined that disclosure of the existence or non-existence of responsive records could reasonably be expected to interfere with enforcement proceedings that are pending or reasonably anticipated, and that the information is therefore properly withheld under Exemption 7A.   Hardy Decl. ¶¶ 40-45.

13.      Mr. Hardy further determined that disclosure of the existence or non-existence of responsive records would disclose techniques and procedures for law enforcement investigations and that such disclosure could reasonably be expected to risk circumvention of the law, and that the information is therefore properly withheld under Exemption 7E.  Hardy Decl. ¶¶ 47-48.

14.      No authorized Executive Branch official has disclosed the information withheld in this matter.  Hardy Decl. ¶¶ 14-20; Weinsheimer Decl. ¶ 13.

Dated:  July 14, 2017

Respectfully Submitted,

CHAD READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W., Room 5377
Washington, D.C. 20530
Tel.:    (202) 514-9836
Fax.:    (202) 616-8470
Email: amy.powell@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JAMES MADISON PROJECT, et al.,    )
          )
  Plaintiffs,        )
          )
v.           )
          )    Case No. 17-597-CKK
UNITED STATES DEPARTMENT OF JUSTICE,  )
          )
  Defendant.        )
          )

# MEMORANDUM OF POINTS AND AUTHORITIES
# IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CHAD A. READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

AMY E. POWELL
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W., Room 5377
Washington, D.C. 20530
Tel.:   (202) 514-9836
Fax.:  (202) 616-8470
Email: amy.powell@usdoj.gov

## **Table of Contents**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

   I.    STATUTORY STANDARDS ................................................................................ 3

        A.   The Freedom of Information Act ................................................................ 3

        B.   Special Considerations in National Security Cases ..................................... 4

        C.   The Glomar Response. ................................................................................ 6

   II.   NSD AND FBI PROPERLY REFUSED TO CONFIRM OR DENY THE EXISTENCE OF RESPONSIVE RECORDS PURSUANT TO EXEMPTION ONE. ............................ 7

   III.  THE GLOMAR RESPONSE WAS PROPER UNDER EXEMPTION THREE AND THE NATIONAL SECURITY ACT ................................................................................ 10

   IV.  THE GLOMAR RESPONSE WAS PROPER UNDER EXEMPTION 7(A) .................. 12

   V.   THE GLOMAR RESPONSE WAS PROPER UNDER EXEMPTION 7(E) ................... 15

   VI.  DEFENDANTS HAVE NOT OFFICIALLY ACKNOWLEDGED THE EXISTENCE OR NON-EXISTENCE OF RESPONSIVE RECORDS ................................................. 17

CONCLUSION ................................................................................................................... 21

## Table of Authorities

### Cases

*ACLU v. Dep't of Def.*,
  628 F.3d 612 (D.C. Cir. 2011)...................................................................... 5, 11, 18

*Afshar v. Dep't of State*,
  702 F.2d 1125 (D.C. Cir. 1983)........................................................................ 6, 18

*Agility Pub. Warehousing Co. K.S.C. v. NSA*,
  113 F. Supp. 3d 313 (D.D.C. 2015)............................................................. 10, 11, 18

*Am. Civil Liberties Union v. CIA*,
  710 F.3d 422 (D.C. Cir. 2013)............................................................................. 17

*Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*,
  830 F.2d 331 (D.C. Cir. 1987)................................................................................ 5

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011)................................................................................ 16

*CIA v. Sims*,
  471 U.S. 159 (1985) ...................................................................................... 3, 11

*Citizens for Responsibility and Ethics in Wash. v. Dep't of Justice*,
  746 F.3d 1082 (D.C. Cir. 2014)................................................................. 12, 13, 15

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................................ 8

*Competitive Enter. Inst. v. NSA*,
  78 F. Supp. 3d 45 (D.D.C. 2015)................................................................ 10, 17, 18

*Cozen O'Connor v. Dep't of Treasury*,
  570 F. Supp. 2d 749 (E.D. Pa. 2008).................................................................... 15

*Ctr. for Nat'l Sec. Studies v. Dep't of Justice*,
  331 F.3d 918 (D.C. Cir. 2003)......................................................................... 3, 4, 5

*DiBacco v. U.S. Army*,
  795 F.3d 178 (D.C. Cir. 2015) ............................................................................... 4

*Fitzgibbon v. CIA*,
  911 F.2d 755 (D.C. Cir. 1990)................................................................. 5, 7, 17, 18

*Frugone v. CIA*,
  169 F.3d 772 (D.C. Cir. 1999)............................................................................ 5, 6

*Gardels v. CIA*,
    689 F.2d 1100 (D.C. Cir. 1982) ............................................................................... 6, 11

*Gosen v. USCIS*,
    75 F. Supp. 3d 279 (D.D.C. 2014) ................................................................................ 16

*Gov't Accountability Project v. Food & Drug Admin.*,
    206 F. Supp. 3d 420 (D.D.C. 2016) ............................................................................... 4

*Halperin v. CIA*,
    629 F.2d 144 (D.C. Cir. 1980) ..................................................................................... 11

*James Madison Project v. Dep't of Justice*,
    208 F. Supp. 3d 265 (D.D.C. 2016) ............................................................................... 6

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) .................................................................................................. 3, 4

*Juarez v. Dep't of Justice*,
    518 F.3d 54 (D.C. Cir. 2008) ....................................................................................... 13

*Judicial Watch, Inc. v. Dep't of Defense*,
    715 F.3d 937 (D.C. Cir. 2013) ....................................................................................... 7

*Judicial Watch, Inc. v. Dep't of the Navy*,
    25 F. Supp. 3d 131 (D.D.C. 2014) ................................................................................. 4

*King v. Dep't of Justice*,
    830 F.2d 210 (D.C. Cir. 1987) ............................................................................... 4, 5, 7

*Kissinger v. Reporters Comm. for Freedom of the Press*,
    445 U.S. 136 (1980) ...................................................................................................... 4

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ............................................................................. 5, 7, 11

*Mapother v. Dep't of Justice*,
    3 F.3d 1533 (D.C. Cir. 1993) ....................................................................................... 13

*Marrera v. Dep't of Justice*,
    622 F. Supp. 51 (D.D.C. 1985) .................................................................................... 10

*Mayer Brown LLP v. IRS*,
    562 F.3d 1190 (D.C. Cir. 2009) ................................................................................... 15

*Military Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ................................................................................. 4, 18

*Minier v. CIA,*
    88 F.3d 796 (9th Cir. 1996) ................................................................................................ 3

*Moore v. CIA,*
    666 F.3d 1330 (D.C. Cir. 2011) ........................................................................................ 18

*Morley v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007) ........................................................................................ 11

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ................................................................................................. 13, 15

*Parker v. EOUSA,*
    852 F. Supp. 2d 1 (D.D.C. 2012) ........................................................................................ 6

*People for the Ethical Treatment of Animals v. NIH,*
    745 F.3d 535 (D.C. Cir. 2014) .......................................................................................... 14

*PHE, Inc. v. Dep't of Justice,*
    983 F.2d 248 (D.C. Cir. 1993) .......................................................................................... 15

*Phillippi v. CIA,*
    546 F.2d 1009 (D.C. Cir. 1976) ...................................................................................... 2, 6

*Pub. Citizen v. Dep't of State,*
    11 F.3d 198 (D.C. Cir. 1993) ............................................................................................ 17

*Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-*
    *Mexico,*
    740 F.3d 195 (D.C. Cir. 2014) .................................................................................... 12, 16

*Ray v. Turner,*
    587 F.2d 1187 (D.C. Cir. 1978) .......................................................................................... 5

*SafeCard Servs., Inc. v. SEC,*
    926 F.2d 1197 (D.C. Cir. 1991) .......................................................................................... 4

*Schwarz v. Dep't of Treasury,*
    131 F. Supp. 2d 142 (D.D.C. 2000) .................................................................................. 10

*Talbot v. CIA,*
    578 F. Supp. 2d 24 (D.D.C. 2008) .................................................................................... 11

*Unrow Human Rights Litig. Clinic v. Dep't of State,*
    134 F. Supp. 3d 263 (D.D.C. 2015) ................................................................................ 5, 8

*Wheeler v. CIA,*
    271 F. Supp. 2d 132 (D.D.C. 2003) .................................................................................... 7

*Wilner v. NSA*,
  592 F.3d 60 (2d Cir. 2009) ............................................................................... 6, 10

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ..................................................................... 6, 17, 18

## **Statutes**

5 U.S.C. § 552(a)(4)(B) ...................................................................................... 4

5 U.S.C. § 552(b) ................................................................................................ 3

5 U.S.C. § 552(b)(1) .......................................................................................... 7

5 U.S.C. § 552(b)(3)(A) ..................................................................................... 10

5 U.S.C. § 552(b)(7) .......................................................................................... 12

5 U.S.C. § 552(b)(7)(A) ..................................................................................... 13

5 U.S.C. § 552(b)(7)(E) ..................................................................................... 15

50 U.S.C. § 3024(i)(1) ....................................................................................... 11

## **Other Authorities**

Exec. Order 13,526
  75 Fed. Reg. 707 (Dec. 29, 2009) ................................................................... 7, 8

H.R. Rep. No. 89-1497 (1966),
  reprinted in 1966 U.S.C.C.A.N. 2418……………………………………………………3

## INTRODUCTION

Using the Freedom of Information Act, Plaintiffs seek information about specific types of surveillance activity allegedly related to an ongoing investigation. More specifically, they seek applications to the Foreign Intelligence Surveillance Court ("FISC") regarding the Trump Organization, President Donald Trump, or the Trump campaign, as well as related FISC orders and minimization procedures. Two components of the Defendant United States Department of Justice have properly refused to confirm or deny the existence of responsive records, and no authorized Executive Branch official has disclosed the specific information at issue – namely, the existence of non-existence of Foreign Intelligence Surveillance Act warrants and orders with respect to these specific individuals or organizations.

The Government's supporting declarations establish that providing a substantive response would reveal classified information protected by Freedom Information Act ("FOIA") Exemption 1, the disclosure of which would cause harm to national security. The FBI's declaration further establishes that disclosure of the existence or non-existence of responsive records would reveal intelligence sources and methods protected by Exemption 3 and the National Security Act, as well as law enforcement information protected by Exemptions 7(A) and 7(E). The Court should defer to Defendant's determination in this regard and grant the Government summary judgment.

## BACKGROUND

This matter arises from nearly identical FOIA requests submitted to the Federal Bureau of Investigation ("FBI") and DOJ National Security Division ("NSD") on March 6, 2017, in which Plaintiffs sought records related to specific individuals and organizations allegedly subject to surveillance under the Foreign Intelligence Surveillance Act ("FISA"). Specifically, Plaintiffs sought:

      1)      Any orders by the FISC authorizing surveillance of and/or collection of information concerning the Trump Organization, President Trump, President Trump's campaign for presidency, or people associated with President Trump.

      2)      Any applications to the FISC seeking authorization for surveillance of and/or collection of information concerning the Trump Organization, President Trump, President Trump's campaign for presidency, or people associated with President Trump.

      3)      Any minimization procedures issued by the FISC and that applied to any orders issued that fall within the scope of #1 or #2.

*See* Declaration of David Hardy, dated July 14, 2017, ¶ 5 & Exhibit A (FOIA Request);

Declaration of G. Bradley Weinsheimer, dated July 13, 2017, ¶ 4 & Exhibit A (FOIA Request).

JMP quoted certain public statements by President Trump and asserted that the requesters "are

pre-emptively asserting that President Trump's public comments constitute prior official

disclosure of the existence of at least one, if not more, FISA warrants." *Id.*

      By email dated March 17, 2017, NSD refused to confirm or deny the existence of the

responsive records pursuant to Exemption 1, explaining that to confirm or deny the existence of

responsive records would reveal information that is properly classified under Executive Order

13526.  *See* Weinsheimer Decl. ¶ 5 & Ex. B (NSD Response).  This is known as a "Glomar"

response, and is proper if the fact of the existence or non-existence of agency records falls within

a FOIA exemption.  *See Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976) (acknowledging

CIA refusal to confirm or deny existence of records regarding activities of a ship named Hughes

Glomar Explorer).   On the same day, Plaintiffs appealed the determination to the DOJ Office of

Information Policy ("OIP").  On April 12, 2017, OIP affirmed the determination of NSD – that

the existence or non-existence of responsive records is a properly classified fact.  *See*

Weinsheimer Decl. ¶ 5 & Ex. C (OIP Determination).

By letter dated March 16, 2017, the FBI acknowledged receipt of Plaintiffs' request, and on April 4, 2017, the FBI also issued a Glomar response.   The FBI's Glomar response was based on FOIA Exemptions (b)(1), (b)(3), (b)(7)(A), and (b)(7)(E).  *See* Hardy Decl. ¶ 11 & Ex. D.

Plaintiffs filed a Complaint on April 4, 2017 and an Amended Complaint was filed on April 15, 2017.  *See* Compl., ECF No. 1; Am. Compl. ECF No. 5.

<u>**ARGUMENT**</u>

**I.    STATUTORY STANDARDS**

**A.    The Freedom of Information Act**

The "basic purpose" of FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  "Congress recognized, however, that public disclosure is not always in the public interest."  *CIA v. Sims*, 471 U.S. 159, 166–67 (1985). Accordingly, in passing FOIA, "Congress sought 'to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy.'"  *John Doe Agency*, 493 U.S. at 152 (quoting H.R. Rep. No. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423).  As the D.C. Circuit has recognized, "FOIA represents a balance struck by Congress between the public's right to know and the [G]overnment's legitimate interest in keeping certain information confidential."  *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency*, 493 U.S. at 152).

FOIA mandates disclosure of government records unless the requested information falls within one of nine enumerated exemptions.  *See* 5 U.S.C. § 552(b).  "A district court only has jurisdiction to compel an agency to disclose improperly withheld agency records," *i.e.* records that do "not fall within an exemption."  *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996); *see also*

5 U.S.C. § 552(a)(4)(B) (providing the district court with jurisdiction only "to enjoin the agency

from withholding agency records and to order the production of any agency records improperly

withheld from the complainant"); *Kissinger v. Reporters Comm. for Freedom of the Press,* 445

U.S. 136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B)[,] federal jurisdiction is dependent upon a

showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'").  While

narrowly construed, FOIA's statutory exemptions "are intended to have meaningful reach and

application." *John Doe Agency*, 493 U.S. at 152; *accord DiBacco v.U.S. Army*, 795 F.3d 178,

183 (D.C. Cir. 2015).

     The courts resolve most FOIA actions on summary judgment.  *See Judicial Watch, Inc. v.

Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014).  The Government bears the burden of

proving that the withheld information falls within the exemptions it invokes.  *See* 5 U.S.C. §

552(a)(4)(B); *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987).  A court may grant

summary judgment to the Government based entirely on an agency's declarations, provided they

articulate "the justifications for nondisclosure with reasonably specific detail, demonstrate that

the information withheld logically falls within the claimed exemption, and are not controverted

by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit

Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *accord Gov't Accountability Project v.

Food & Drug Admin.*, 206 F. Supp. 3d 420, 430 (D.D.C. 2016).  Such declarations are accorded

"a presumption of good faith, which cannot be rebutted by purely speculative claims[.]"

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

    **B.**    **Special Considerations in National Security Cases**

     The issues presented in this case directly "implicat[e] national security, a uniquely

executive purview." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926–27.  While courts review *de*

*novo* an agency's withholding of information pursuant to a FOIA request, "*de novo* review in FOIA cases is not everywhere alike." *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987). Indeed, the courts have specifically recognized the "propriety of deference to the executive in the context of FOIA claims which implicate national security." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927–28; *see Ray v. Turner*, 587 F.2d 1187, 1193 (D.C. Cir. 1978) ("[T]he executive ha[s] unique insights into what adverse [e]ffects might occur as a result of public disclosure of a particular classified record."). "[A]ccordingly, the government's 'arguments needs only be both "plausible" and "logical" to justify the invocation of a FOIA exemption in the national security context.'" *Unrow Human Rights Litig. Clinic v. Dep't of State*, 134 F. Supp. 3d 263, 272 (D.D.C. 2015) (quoting *ACLU v. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011)).

For these reasons, the courts have "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927; *see Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) ("Today we reaffirm our deferential posture in FOIA cases regarding the 'uniquely executive purview' of national security."); *accord Unrow Human Rights Impact Litig. Clinic*, 134 F. Supp. 3d at 272. Consequently, a reviewing court must afford "substantial weight" to agency declarations "in the national security context." *King*, 830 F.2d at 217; *see Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (holding that the district court erred in "perform[ing] its own calculus as to whether or not harm to the national security or to intelligence sources and methods would result from disclosure . . . ."); *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) (because "courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable

concerns" about the harm that disclosure could cause to national security). FOIA "bars the courts from prying loose from the government even the smallest bit of information that is properly classified or would disclose intelligence sources or methods." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

### C.  The Glomar Response.

A Glomar response allows the Government to "refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)); *accord Wilner v. NSA*, 592 F.3d 60, 68 (2d Cir. 2009) ("The Glomar doctrine is well settled as a proper response to a FOIA request because it is the only way in which an agency may assert that a particular FOIA statutory exemption covers the 'existence or non-existence of the requested records[.]'" (quoting *Phillippi v. CIA*, 546 F.2d 1009, 1012 (D.C. Cir. 1976)). In support of a Glomar response, the asserting agency "must explain why it can neither confirm nor deny the existence of responsive records." *James Madison Project v. Dep't of Justice*, 208 F. Supp. 3d 265, 283 (D.D.C. 2016) (quoting *Parker v. EOUSA*, 852 F. Supp. 2d 1, 10 (D.D.C. 2012)). The agency can satisfy this obligation by providing "public affidavit[s] explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records." *Phillippi*, 546 F.2d at 1013.

The courts in this Circuit have consistently upheld Glomar responses where, as here, confirming or denying the existence of records would reveal classified information protected by FOIA Exemption 1 or disclose information protected by statute in contravention of FOIA Exemption 3. *See, e.g.*, *Frugone*, 169 F.3d at 774–75 (finding that CIA properly refused to

confirm or deny the existence of records concerning the plaintiff's alleged employment

relationship with CIA pursuant to Exemptions 1 and 3); *Larson*, 565 F.3d at 861–62 (upholding

the National Security Agency's use of the Glomar response to the plaintiffs' FOIA requests

regarding past violence in Guatemala pursuant to Exemptions 1 and 3); *Wheeler v. CIA*, 271 F.

Supp. 2d 132, 140 (D.D.C. 2003) (ruling that CIA properly invoked a Glomar response to a

request for records concerning the plaintiff's activities as a journalist in Cuba during the 1960s

pursuant to Exemption 1).

## II.   NSD AND FBI PROPERLY REFUSED TO CONFIRM OR DENY THE EXISTENCE OF RESPONSIVE RECORDS PURSUANT TO EXEMPTION ONE.

FOIA Exemption 1 exempts from disclosure information that is "specifically authorized

under criteria established by an Executive order to be kept secret in the interest of national

defense or foreign policy" and "are in fact properly classified pursuant to such Executive Order."

5 U.S.C. § 552(b)(1).  Under Executive Order 13,526, an agency may withhold information that

an official with original classification authority has determined to be classified because its

"unauthorized disclosure could reasonably be expected to cause identifiable or describable

damage to the national security[.]"  Exec. Order No. 13,526 § 1.4, 75 Fed. Reg. 707, 709 (Dec.

29, 2009).  The information must also "pertain[] to" one of the categories of information

specified in the Executive Order, including "intelligence activities (including covert action),

intelligence sources or methods," and "foreign relations or foreign activities of the United

States."  Exec. Order 13,526 §§ 1.4(c), (d); *see also Judicial Watch, Inc. v. Dep't of Defense*, 715

F.3d 937, 941 (D.C. Cir. 2013) ("[P]ertains is not a very demanding verb.").  As addressed

above, when it comes to matters affecting national security, the courts afford "substantial

weight" to an agency's declarations addressing classified information, *King*, 830 F.2d at 217, and

defer to the expertise of agencies involved in national security and foreign relations.  *See*

*Fitzgibbon*, 911 F.2d at 766; *see also Unrow Human Rights Impact Litig. Clinic*, 134 F. Supp. 3d at 272.

Defendants invoked their Glomar responses in order to safeguard currently and properly classified information involving categories of information set forth in Section 1.4 of Executive Order 13,526. *See* Hardy Decl. at ¶ 24; Weinsheimer Decl. at ¶ 8. First, the existence or non-existence of responsive records implicates "intelligence activities (including covert action), intelligence sources or methods, or cryptology." Exec. Order 13,526 §1.4(c). The supporting declarations establish that disclosing whether or not the defendant agencies possessed responsive records would disclose the existence or non-existence of FISA records related to a particular individual or organization. *See* Hardy Decl. at ¶¶ 26-29; Weinsheimer Decl. at ¶ 8. Surveillance authorized by the FISC under any of its authorities is itself an intelligence method, and thus its use in any particular matter thus "pertains to" an intelligence source or method. *Cf. Clapper v. Amnesty Int'l USA,* 568 U.S. 398 (2013) (describing FISA authorities).

Second, the Hardy Declaration confirms that presence or non-presence of responsive records implicates "foreign relations or foreign activities of the United States, including confidential sources." Exec. Order 13,526 § 1.4(d). Verifying whether or not the defendant agencies possessed responsive records would tend to reveal a specific type of counterintelligence activity with respect to one or more foreign governments. Hardy Decl. ¶¶ 30-33.

The supporting declarations demonstrate that confirming whether or not Defendants possessed responsive records reasonably could be expected to cause damage to the national security of the United States by disclosing the existence or non-existence of intelligence sources and methods. *See* Hardy Decl. at ¶¶ 26-29; Weinsheimer Decl. at ¶¶ 9-12. As explained in the Hardy Declaration, "acknowledging the existence or non-existence of records responsive to

Plaintiffs' request would be tantamount to confirming whether or not the FBI has relied on a particular intelligence activity or method targeted at particular individuals or organizations" and "would reveal otherwise non-public information regarding the nature of the FBI's intelligence interests, priorities, activities, and methods—information that is highly desired by hostile actors who seek to thwart the FBI's intelligence-gathering mission." *Id.* ¶ 29. "Once an intelligence activity or method – or the fact of its use or non-use in a certain situation – is discovered, its continued successful use is seriously jeopardized." Hardy Decl. ¶ 27; *see* Weinsheimer Decl. ¶ 9. Moreover, U.S. adversaries review publicly available information to deduce intelligence methods, catalogue information, and take countermeasures, and disclosure of the existence or non-existence of responsive records would reasonably be expected to harm national security. *See id.*

Further, the Hardy Declaration establishes that confirming the existence or non-existence of responsive documents would reveal information about the United States Government's foreign relations, the disclosure of which could cause damage to national security. Hardy Decl. ¶¶ 30-33. Such disclosure could "weaken, or even sever, the relationship between the United States and its foreign partners (present and future), thus degrading the Government's ability to combat hostile threats abroad," and "any confirmation of records could be interpreted by some to mean that certain foreign liaison partners were involved in espionage against the United States, which could have political implications in those and other countries and also make them less willing to cooperate with the U.S. Government in the future." *Id.*[1]

---

[1] To the extent possible on the public record, the declarations explain the harm to national security that would result from disclosure of the properly classified information at issue here. If the Court finds that explanation inadequate, Defendants could offer further explanation *ex parte* and *in camera*.

The Government routinely makes a Glomar response to similar requests for information about particular FISA or surveillance subjects, and Courts routinely uphold such responses. *See, e.g., Marrera v. Dep't of Justice*, 622 F. Supp. 51, 53–54 (D.D.C. 1985) (this Court finds that OIPR's refusal to confirm or deny the existence of FISA records pertaining to this particular plaintiff to be justified in the interests of national security as part of an overall policy of [the Executive Order] with respect to all FISA FOIA requests."); *Schwarz v. Dep't of Treasury*, 131 F. Supp. 2d 142, 149 (D.D.C. 2000) ("The Office properly refused to confirm or deny that it had any responsive records maintained under the Foreign Intelligence Surveillance Act of 1978 (FISA) and in non-FISA files relating to various intelligence techniques."), aff'd, No. 00-5453, 2001 WL 674636 (D.C. Cir. May 10, 2001); *Competitive Enter. Inst. v. NSA*, 78 F. Supp. 3d 45, 60 (D.D.C. 2015) (upholding NSA Glomar response to request for metadata records with respect to two particular individuals); *Agility Pub. Warehousing Co. K.S.C. v. NSA*, 113 F. Supp. 3d 313, 329 (D.D.C. 2015) (upholding NSA Glomar in response to request for particular surveillance records); s*ee also Wilner*, 592 F.3d at 65 ("Glomar responses are available, when appropriate, to agencies when responding to FOIA requests for information obtained under a publicly acknowledged intelligence program, such as the TSP, at least when the existence of such information has not already been publicly disclosed.").

Accordingly, the Glomar response was proper under Exemption One.

## III.    THE GLOMAR RESPONSE WAS PROPER UNDER EXEMPTION THREE AND THE NATIONAL SECURITY ACT

FOIA Exemption 3 exempts from disclosure records that are "specifically exempted from disclosure by [another] statute" if the relevant statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. §

552(b)(3)(A).  The Government's mandate to withhold information under FOIA Exemption 3 is broader than its authority under FOIA Exemption 1, as it does not have to demonstrate that the disclosure will harm national security.  *See Sims*, 471 U.S. at 167; *Gardels*, 689 F.2d at 1106–07.  Instead, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.  It is particularly important to protect intelligence sources and methods from public disclosure." *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007).  In analyzing the propriety of a withholding made pursuant to FOIA Exemption 3, the Court need not examine "the detailed factual contents of specific documents[.]" *Id.*

Defendants invoke Section 102A(i)(1) of the National Security Act of 1947, as amended (now codified at 50 U.S.C. § 3024(i)(1)) ("NSA"), which requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure."[2]  It is well-established that Section 102A qualifies as a withholding statute for the purposes of FOIA Exemption 3.  *See, e.g.*, *ACLU v. DOD*, 628 F.3d at 619.  In fact, the Supreme Court has recognized the "wide-ranging authority" provided by the NSA to protect intelligence sources and methods.  *See Sims*, 471 U.S. at 169–70, 177, 180; *see Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980) (explaining that the only question for the court is whether the agency has shown that responding to a FOIA request "could reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods").  The NSA has been properly invoked to withhold information about FISA and other surveillance techniques. *See, e.g., Agility Pub. Warehousing Co. K.S.C.*, 113 F. Supp. 3d at 329

---

[2] The courts have recognized that not just the Director of National Intelligence, but also other agencies may rely upon the amended NSA to withhold records under FOIA.  *See, e.g., Larson*, 565 F.3d at 862–63, 865; *Talbot v. CIA*, 578 F. Supp. 2d 24, 28–29 n.3 (D.D.C. 2008).

The Hardy Declaration attests that Defendants have properly invoked the Glomar response to protect classified information under the NSA and FOIA Exemption 3. *See* Hardy Decl. at ¶¶ 34-36. For the reasons discussed above with regard to Exemption 1, confirming the existence or non-existence of responsive records could divulge information about the existence or non-existence of intelligence sources and methods protected from disclosure under the NSA. *Id.* Indeed, the declaration explains that a substantive response to Plaintiffs' request could reveal whether or not the United States Government has intelligence sharing relationships with foreign liaison partners. *See id.* Accordingly, the FBI has demonstrated the appropriateness of the Glomar response under FOIA Exemption 3.

## IV. THE GLOMAR RESPONSE WAS PROPER UNDER EXEMPTION 7(A)

FOIA Exemption 7 protects from disclosure all "records or information compiled for law enforcement purposes" that could reasonably be expected to cause one of the six harms outlined in the Exemption's subparts. 5 U.S.C. § 552(b)(7). "To fall within any of the exemptions under the umbrella of Exemption 7, a record must have been 'compiled for law enforcement purposes.'" *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 202 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)). "According to the Supreme Court, the term 'compiled' in Exemption 7 requires that information be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *Id*. at 203.

Exemption 7(A) "exempts from disclosure 'records or information compiled for law enforcement purposes . . . to the extent that the production of [the] records or information . . . could reasonably be expected to interfere with enforcement proceedings.'" *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice,* 746 F.3d 1082, 1096 (D.C. Cir. 2014)

(hereinafter "*CREW*") (quoting 5 U.S.C. § 552(b)(7)(A)). "Exemption 7(A) reflects the Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'" *Id.* (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)). "To justify withholding, [an agency] must therefore demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'" *Id.* (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)).

An ongoing investigation typically triggers Exemption 7(A). *See CREW*, 746 F.3d at 1098 (quoting *Juarez v. Dep't of Justice*, 518 F.3d 54, 59 (D.C. Cir. 2008)). "In the typical case," therefore, "the requested records relate to a specific individual or entity that is the subject of the ongoing investigation, making the likelihood of interference readily apparent." *Id.*

Here, the Hardy Declaration justifies the FBI's use of Exemption 7(A) to protect the currently undisclosed fact of the existence or non-existence of any investigative records that would be responsive to Plaintiffs' requests. As an initial matter, FBI records related to FISA records are plainly compiled for law enforcement purposes. As the Hardy Declaration establishes, the "only circumstance under which the FBI can request – and the Department of Justice can and would seek on the FBI's behalf – a Foreign Intelligence Surveillance Act (FISA) order is when the FBI is conducting an authorized, predicated national security investigation within the scope of its law enforcement and foreign intelligence responsibilities." Hardy Decl. ¶ 39. Accordingly, FISA applications and FISC orders – when they exist – are records compiled for law enforcement purposes.

Additionally, the information requested purportedly relates to an ongoing investigation. Plaintiffs describe their request as relating to the FBI's investigation into the Russian government's efforts to interfere in the 2016 presidential election.  Hardy Decl. ¶¶ 19, 42; Am. Compl. ¶ 8 (discussing FBI's acknowledgement of investigation into Russian interference in the election, including any attempts to coordinate with President Trump's campaign).  Any sort of investigation involving such FISA records would be the sort of active investigation protected by Exemption 7(A).  *See, e.g.*, *People for the Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 541 (D.C. Cir. 2014) (Exemption 7's threshold requirement satisfied in a *Glomar* response case because FOIA requester did not dispute that "any responsive documents," if they existed, "would constitute records or information compiled for law enforcement purposes").

The Hardy Declaration further describes the harm to an investigation that may result:

> Confirming or denying the existence or non-existence of responsive records would reveal non-public information about the focus, scope, and conduct of that investigation.  Specifically, it would reveal whether or not specific investigative techniques have been used; when and to what extent they were used, if they were; their relative value or benefit if they were used; and the targets they were used against, if any.  None of this information about the Russian interference investigation has been publicly disclosed and prematurely disclosing it here would give targets and others intent on interfering with the FBI's investigative efforts the information necessary to:  take defensive actions to conceal criminal activities; develop and implement countermeasures to elude detection; suppress, destroy, or fabricate evidence; and identify potential witnesses or sources, exposing them to harassment, intimidation, coercion, and/or physical threats.  Accordingly, to the extent that Plaintiffs' request seeks records in relation to this investigation, confirming or denying the existence or non-existence of responsive records could reasonably be expected to adversely affect it.

Hardy Decl. ¶¶ 43-44.  Moreover, to the extent the request implicates some investigation other than that alleged by Plaintiffs, revealing such an investigation prematurely would cause the same type of harm.  *Id.* ¶ 44.  Accordingly, a Glomar response is available under these circumstances

to protect the integrity of confidential law-enforcement investigations, and to therefore prevent harm cognizable by FOIA Exemption 7(A). *See, e.g.*, *Cozen O'Connor v. Dep't of Treasury*, 570 F. Supp. 2d 749, 788 (E.D. Pa. 2008); *see also CREW*, 746 F.3d at 1096 ("Exemption 7(A) reflects the Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'" (quoting *Robbins Tire*, 437 U.S. at 224)).

For these reasons, the FBI's Glomar response is justified by Exemption 7(A).

## V.   THE GLOMAR RESPONSE WAS PROPER UNDER EXEMPTION 7(E)

Exemption 7(E) authorizes withholding of information compiled for law enforcement purposes if release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Congress intended that Exemption 7(E) protect law enforcement techniques and procedures from disclosure, as well as techniques and procedures used in all manner of investigations after crimes or other incidents have occurred. *See, e.g.*, *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250–51 (D.C. Cir. 1993).  "[T]he exemption is written in broad and general terms" to avoid assisting lawbreakers.  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

The terms of the statute provide that, to withhold records that would reveal law enforcement "guidelines," an agency must show that "disclosure could reasonably be expected to risk circumvention of the law."  It is not clear whether this requirement also applies to withholding of records that would reveal "techniques and procedures."  *See CREW*, 746 F.3d at

1102 n.8.  However, the D.C. Circuit has stressed that the risk-of-circumvention requirement sets a "low bar."  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011); *accord Gosen v. USCIS*, 75 F. Supp. 3d 279, 291 (D.D.C. 2014) (describing the risk-of-circumvention requirement as a "low bar").  Given the low threshold for meeting the risk-of-circumvention requirement, and given that disclosure of law enforcement techniques and procedures usually has obvious potential to create a risk of circumvention, it generally makes little practical difference whether the risk-of-circumvention requirement applies to all of Exemption 7(E) or only the part dealing with "guidelines."  *See Pub. Emps. for Envtl. Responsibility*, 740 F.3d at 204 n.4.  In any event, FBI's Glomar response under Exemption 7(E) meets the requirement if it applies.

Here, the Hardy Declaration establishes that disclosure of existence or non-existence of responsive records would reveal a law enforcement technique or procedure.  "How the FBI applies its investigative resources (or not) against a particular allegation, report of criminal activity, or perceived threat is itself a law enforcement technique or procedure that the FBI protects."  Hardy Decl. ¶¶ 47-48.  Such an acknowledgment of the existence or non-existence of responsive records "would reveal when and under what circumstances the FBI relies upon FISA-authorized techniques in an investigation," and "provide pieces of information that adversaries could use to ascertain at what point, and against whom we might use particular techniques."  Hardy Decl. ¶ 48.  "Armed with this information, adversaries could glean significant insight into the activities likely to attract – or not attract – the FBI's law enforcement attention.  These individuals would then be able alter their behavior to avoid attention by law enforcement, making it more difficult for the FBI to be proactive in assessing threats and investigating crimes."  *Id*.  Accordingly, the FBI properly invoked Exemption 7(E).

## VI.     DEFENDANTS HAVE NOT OFFICIALLY ACKNOWLEDGED THE EXISTENCE OR NON-EXISTENCE OF RESPONSIVE RECORDS

As a general matter, under FOIA, "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information." *Am. Civil Liberties Union v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013).  This "official acknowledgement" principle applies to the Glomar context, so a requester "can overcome a Glomar response by showing that the agency has already disclosed the fact of the existence (or non-existence) of responsive records, since that is the purportedly exempt information that a Glomar response is designed to protect." *Id.* at 427.  But the plaintiff "must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Id.* (quoting *Wolf*, 473 F.3d at 378). The D.C. Circuit has narrowly construed the "official acknowledgment" doctrine, however, and to bring such a challenge plaintiff must satisfy three stringent criteria, none of which are satisfied here.

"First, the information requested must be as specific as the information previously released." *Wolf*, 473 F.3d at 378 (quoting *Fitzgibbon*, 911 F.2d at 765).  "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure.  This insistence on exactitude by the D.C. Circuit recognizes 'the Government's vital interest in information relating to national security and foreign affairs." *Id.* (quoting *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993); *Competitive Enter. Inst.*, 78 F. Supp. 3d at 54 ("Plaintiffs in this case must therefore point to specific information in the public domain establishing that the NSA has [the claimed information.]").  The information already released must also be of the same level of generality as the information sought—broadly crafted disclosures, even on the same general topic, do not

17

waive the Glomar response.  *See, e.g.*, *Afshar*, 702 F.2d at 1133 (previous disclosure that plaintiff

had "'created a problem' in U.S.-Iranian relations" was too general to justify releasing

documents detailing the nature of that problem).

"Second, the information requested must match the information previously disclosed."

*Wolf*, 473 F.3d at 378 (quoting *Fitzgibbon*, 911 F.2d at 765).  If there are "substantive

differences" between the two, an official-acknowledgment claim must fail.  *ACLU v. DOD*, 628

F.3d at 621.  That is true even if the previous disclosures are on the same topic.  *See, e.g.*,

*Competitive Enter. Inst.*, 78 F. Supp. 3d at 57 (a Presidential statement that "the intelligence

community . . . is looking at phone numbers and durations of calls," was not adequately

congruent with a request seeking the companies that had provided that data to U.S. intelligence

agencies); *Wolf*, 473 F.3d at 379 (holding that CIA could not claim Glomar protection when it

had previously read excerpts from materials sought into the record during congressional

hearing).

"Third, . . . the information requested must already have been made public through an

official and documented disclosure."  *Id.* at 378 (quoting *Fitzgibbon*, 911 F.2d at 765).  Key to

this element is that the source must be *official*; non-governmental releases, or anonymous leaks

by government officials or former government officials do not qualify.  *See, e.g.*, *ACLU v. DOD*,

628 F.3d at 621-22; *Agility Public Warehousing Co.  K.S.C.*, 113 F. Supp. 3d at 330 n.8;

*Competitive Enter. Inst.*, 78 F. Supp. 3d at 55.  In other words, "mere public speculation, no

matter how widespread," cannot undermine the agency's Glomar prerogative.  *Wolf*, 473 F.3d at

378.  And Congressional statements also cannot waive Executive Branch classification or other

Exemptions.  *See Military Audit Project v. Casey*, 656 F.2d 724, 742-745 (D.C. Cir. 1981); *see

also Moore v. CIA*, 666 F.3d 1330, 1333 n.4 (D.C. Cir. 2011) ("[W]e do not deem 'official' a

disclosure made by someone other than the agency from which the information is being sought.")

Plaintiffs cannot meet their burden of pointing to an official disclosure of the information they seek.  The Hardy Declaration and the Weinsheimer Declaration establish that no authorized government official has disclosed the precise information withheld.   *See* Hardy Decl. ¶ 17; Weinsheimer Decl. ¶ 13.

The Amended Complaint cites a number of public statements that Plaintiffs allege constitute official acknowledgement of properly classified facts.  *See* Am. Compl. ¶ 11 ("The comments of President Trump and Press Secretary Sean Spicer constitute prior official disclosure of the existence of surveillance orders issued by the FISC and that authorized collection of information that, at a minimum, incidentally implicated President Trump and/or his associates. This lawsuit ultimately will seek to determine the circumstances in which specific surveillance/collection orders were issued by the FISC.").  But these cited public statements about an investigation and alleged surveillance do not come close to meeting the standard for official acknowledgement of the information sought by Plaintiffs.

Primarily, Plaintiffs appear to rely on President Trump's four-part post on Twitter on March 4, 2017:

- "Terrible! Just found out that Obama had my "wires tapped" in Trump Tower just before the victory. Nothing found. This is McCarthyism!"

- "Is it legal for a sitting President to be "wire tapping" a race for president prior to an election? Turned down by court earlier. A NEW LOW!"

- "I'd bet a good lawyer could make a great case out of the fact that President Obama was tapping my phones in October, just prior to Election!"

- "How low has President Obama gone to tapp [*sic*] my phones during the very

   sacred election process. This is Nixon/Watergate. Bad (or sick) guy!"

Available at https://twitter.com/realDonaldTrump; *see also* Am. Compl. ¶ 7.  This series of

tweets contains a constellation of specific opinions and allegations regarding wiretapping,

including that (1) his phones were tapped; (2) at Trump Tower; (3) in October just prior to the

election; (4) on the orders of President Obama; and (5) that such actions were comparable to

"Nixon/Watergate."  Even assuming these tweets are official statements, nowhere do these

tweets mention FISA, the FISC, any targets other than President Trump, or the involvement of

DOJ or FBI.  Moreover, the statements are limited to a particular time, a particular target, and a

particular place, in contrast to plaintiff's FOIA request.  Thus, the statements are not as specific

and do not match the information sought in this FOIA request.[3]  The follow-up statements to the

media by the President or his Press Secretary as cited in the complaint also do not match the

specific information sought by Plaintiffs here.  Am. Compl. ¶¶ 7-11.

   As explained above, and as plaintiff notes, the FBI has also publicly disclosed generally

the existence of an investigation into Russian meddling in the 2016 presidential election and the

nature of any links between individuals associated with the Trump campaign and the Russian

government.  Hardy Decl. ¶ 19.  This ongoing investigation is overseen by Special Counsel

Robert Mueller.  The Government has not confirmed or denied the use of FISA in connection

with that investigation, much less the use of FISA pertaining to any particular individual or

organization.  *See id.*

---

[3] Moreover, FBI Director James Comey later denied the existence of any information to support the  President's tweets, stating that "With respect to the president's tweets about alleged wiretapping directed at him by the prior administration, I have no information that supports those tweets and we have looked carefully inside the FBI. The Department of Justice has asked me to share with you that the answer is the same for the Department of Justice and all its components."  Hardy Decl. ¶ 15.  Had plaintiff more specifically tied his FOIA request to the information in the tweets, he likely would have received a no-records response from the FBI and DOJ.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' Motion for Summary Judgment.

Dated:  July 14, 2017                              Respectfully Submitted,

                                                  CHAD READLER
                                                  Acting Assistant Attorney General

                                                  MARCIA BERMAN
                                                  Assistant Director, Federal Programs Branch

                                                  */s/Amy E. Powell*
                                                  AMY E. POWELL
                                                  Trial Attorney
                                                  U.S. Department of Justice, Civil Division
                                                  Federal Programs Branch
                                                  20 Massachusetts Ave., N.W., Room 5377
                                                  Washington, D.C. 20530
                                                  Tel.:    (202) 514-9836
                                                  Fax.:    (202) 616-8470
                                                  Email:  amy.powell@usdoj.gov

## CERTIFICATION OF SERVICE

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants by First Class Mail or Federal Express, on the 14th of July, 2017.

/s/Amy E. Powell
AMY POWELL
July 14, 2017