**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JAMES MADISON PROJECT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 17-597-CKK |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

CHAD READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

AMY E. POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

**<u>Table of Contents</u>**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

    I.   The Standard for Official Acknowledgment. ................................................................ 1

    II.  The Cited White House Statements Do Not Foreclose the Glomar Response. ................. 2

    III. Other Official Statements Do Not Foreclose the Glomar Response. ............................... 5

    IV. Unofficial Statements Do Not Foreclose the Glomar Response. ..................................... 6

    V.  Plaintiffs' Speculation Does Not Waive the Glomar Response. ...................................... 8

CONCLUSION........................................................................................................................... 9

# Table of Authorities

## Cases

*ACLU v. CIA*,
　710 F.3d 422 (D.C. Cir. 2013) ............................................................... 1, 2

*Afshar v. Dep't of State*,
　702 F.2d 1125 (D.C. Cir. 1983) .................................................... passim

*Dep't of the Navy v. Egan*,
　484 U.S. 518 (1988) ............................................................................. 8

*Earth Pledge Found. v. CIA*,
　988 F. Supp. 623 (S.D.N.Y. 1996) ..................................................... 7

*Fitzgibbon v. C.I.A.*,
　911 F.2d 755 (D.C .Cir. 1990) ......................................................... 5, 7

*Frugone v. CIA*,
　169 F.3d 772 (D.C. Cir. 1999) ......................................................... 6, 7

*McKinley v. Bd. of Governors of the Fed. Reserve Sys.*,
　849 F. Supp. 2d 47 (D.D.C. 2012) ..................................................... 8

*Military Audit Project v. Casey*,
　656 F.2d 724 (D.C. Cir. 1981) ......................................................... 7, 9

*Moore v. CIA*,
　666 F.3d 1330 (D.C. Cir. 2011) ......................................................... 7

*Murphy v. Dep't of Army*,
　613 F.2d 1151 (D.C. Cir. 1979) ......................................................... 7

*Phillippi v. CIA*,
　655 F.2d 1325 (D.C. Cir. 1981) ......................................................... 9

*Pub. Citizen v. Dep't of State*,
　11 F.3d 198 (D.C. Cir. 1993) ...................................................... 3, 5, 6

*Riquelme v. CIA*,
　453 F. Supp. 2d 103 (D.D.C. 2006) ................................................. 7

*Salisbury v. United States*,
　690 F.2d 966 (D.C. Cir. 1982) ......................................................... 7

*Shapiro v. CIA*,
　170 F. Supp. 3d 147 (D.D.C. 2016) ................................................. 3

*Students Against Genocide v. Dep't of State*,
   257 F.3d 828 (D.C. Cir. 2001) ................................................................. 7

*Wilson v. CIA,*
   586 F.3d 171 (2d Cir. 2009) ................................................................. 7

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ................................................ 1, 3, 4, 9

## **Other Authorities**

Declarations of David Hardy and G. Bradley Weinsheimer,
   *American Oversight v. DOJ*, No.17-718 (September 1, 2017) .................................................. 3

Transcript of the House Permanent Select Committee on Intelligence Hearing on Russian
   Interference in the 2016 U.S. Election, March 20, 2017 ....................................................... 3, 6

## INTRODUCTION

Plaintiffs concede that their Freedom of Information Act request seeks information which is ordinarily properly classified and otherwise exempt from FOIA – namely, any Foreign Intelligence Surveillance Act ("FISA") applications and orders pertaining to President Trump, the Trump Organization, President Donald Trump, or the Trump campaign.  Defendant United States Department of Justice ("DOJ") explained that FISA information pertaining to particular individuals and entities is currently and properly classified and subject to FOIA exemptions 1, 3, 7(A) and 7(E).   Moreover, Defendant explained that, even considering the information in the public sphere, disclosure of the specific information sought by Plaintiffs is reasonably expected to harm national security and ongoing law enforcement efforts.  In response, Plaintiffs maintain only that the applicable exemptions have been waived through various public statements, none of which match the specific information requested here.  Plaintiffs attempt to cast vague, irrelevant, unsourced or non-official statements as waivers, apparently believing that a sufficient volume of innuendo and media speculation amounts to official acknowledgement.  It does not.

## ARGUMENT

### I.      The Standard for Official Acknowledgment.

The standard for finding an official acknowledgement is settled law in this Circuit: the precise information at issue must have been officially and specifically disclosed by an authorized official and be in the public domain as such.  *See Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007); Mem in Supp. of Def.'s Mot. for Summ. J. (MSJ) at 17-20, ECF No. 13.  Not a single statement cited by Plaintiffs meets this standard.

Plaintiffs rely heavily on the D.C. Circuit decision in *ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013), but that case does not stand for the proposition that sufficient accumulation of media

1

attention or innuendo amounts to waiver.  Plaintiffs erroneously suppose that the decision in *ACLU v. CIA* changed the standard for official acknowledgement as applied to Glomar responses, and that the requirement of "specificity" no longer applies.  Mem. in Opp'n to Def.'s MSJ and in Supp. of Pls.' Cross-Mot. for Summ. J. (Pls.' MSJ) at 19, ECF No. 18-1.  That reading of *ACLU v. CIA* is unsupported by text or logic.  Rather, the Court found that several direct statements of authorized officials acknowledged the very fact sought to be protected by the Glomar – that CIA had an intelligence interest in U.S. drone strikes.  710 F.3d at 429.  The Court did not require an agency to respond to a request that was both more and less extensive than a public disclosure and thus clearly delineate the scope of ambiguous official statements, revealing the very information previously kept secret.

Here, by contrast to *ACLU*, the request seeks specific undisclosed details allegedly pertaining to an ongoing and acknowledged investigation.  The fact sought to be protected is not the FBI's general interest in a national security investigation; it is the investigatory details at issue, which have not been confirmed or denied by any authorized source.  Indeed, the purpose of the FOIA request appears to be to ferret out the existence or nonexistence of authorized FISA warrants with respect to the acknowledged investigation.  There is no official acknowledgement of the precise information at issue here.

## II.     The Cited White House Statements Do Not Foreclose the Glomar Response.

Plaintiffs cite a number of statements from the President or the Press Secretary that do not constitute acknowledgement of the information sought here.  As discussed in Defendants' Motion for Summary Judgment, the President's March 4 tweets do not confirm or deny the existence of FISA materials.  Def.'s MSJ at 19-20.  Nor do they amount to implicit

acknowledgement of the existence or nonexistence of FISA materials.  *See* Pls.' MSJ at 4.[1]  The

category of records sought by Plaintiffs, however, is both narrower than that addressed by the

March 4 tweets (because the request is limited to FISA information) and broader than that

addressed by the March 4 tweets (because the request is not limited in time, location, or other

specifics.)[2]  The Glomar response thus remains appropriate for the category of records sought by

Plaintiff.  The Government has not generally confirmed or denied the use of this particular

electronic surveillance technique pertaining to particular individuals or organizations,

particularly those allegedly related to ongoing national security investigations.  This information

is currently and properly classified, and otherwise exempt.   Plaintiffs fail to respond to those

arguments and instead just repeat portions of the tweets.  Pls.' MSJ at 6.

      Plaintiffs also rely on the President's statements that he was not personally under

investigation at the time.  *See* Pls.' MSJ at 5-6.  Such statements have no arguable bearing on the

precise issue here – whether or not there are any FISA materials pertaining to President Trump,

the Trump Organization, President Donald Trump, or the Trump campaign.  "Prior disclosure of

similar information does not suffice; instead, the specific information sought by the plaintiff

must already be in the public domain by official disclosure."  *Wolf*, 473 F.3d at 378; *Pub. Citizen*

---

[1] As discussed in the Hardy Declaration, then-FBI Director James Comey stated that DOJ has no information to support the tweets. Def.'s MSJ at 20; Hardy Decl. ¶ 15.  In another FOIA matter in this district, in which the requestor sought records more clearly encompassing the matters mentioned by the President, DOJ submitted declarations again confirming that DOJ has no such records.  *See* Declarations of David Hardy and G. Bradley Weinsheimer, *American Oversight v. DOJ*, No.17-718 (September 1, 2017).  Regardless, the nonexistence of a set of records that is in ways both broader and narrower than the requested records does not waive a Glomar as to the cross-cutting request.

[2] Former Director Comey also testified about the need for continued secrecy in his March 20th testimony before HPSCI, where he discussed why the FBI does not confirm or refute unsourced media reports.  *See* Transcript of the House Permanent Select Committee on Intelligence Hearing on Russian Interference in the 2016 U.S. Election, March 20, 2017 (question and answer exchanges between former Director Comey and Representative Trey Gowdy).

*v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993) (explaining that the information officially acknowledged must "duplicate[ ] that being withheld"); *Shapiro v. CIA*, 170 F. Supp. 3d 147, 159 (D.D.C. 2016).  As noted by the D.C. Circuit, "[t]he insistence on exactitude recognizes 'the Government's vital interest in information relating to national security and foreign affairs.'" *Wolf*, 473 F.3d at 378.

Plaintiffs then quote at length certain statements by the then-White House Press Secretary about press reports, in which he does not confirm or deny whether there were FISA materials. For example, Plaintiffs quote a statement from March 6, 2017: Commenting on news reports, Mr. Spicer states that "something happened," that it "could be FISA," "that it could be surveillance," that "the question is, is it surveillance, is it a wiretap, or whatever," and that the President "wants Congress to look into this."  *See* Pls.' MSJ at 6-7.  And the lengthy quote from his March 16 statement concludes only that "this leads to a lot."  *Id*. at 8-11.  It recounts certain media reporting, but contains not a single definitive statement from Mr. Spicer that there was in fact surveillance, much less that there was in fact FISA material at issue.  Such a vague generality does not waive the right to withhold the far more specific information sought here – whether or not there are specifically FISA documents pertaining to surveillance of particular individuals.  *See Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983) (holding release of information that "provide[s] only the most general outline" of an intelligence effort does not waive right to withhold documents giving "a far more precise idea" of that effort because withheld information must have "already been specifically revealed to the public").

Plaintiffs argue that "[a]lthough these media reports would not, on their own, qualify as official disclosures of information, President Trump and Mr. Spicer's specific reliance upon the information in the media reports – particularly in terms of forming the basis for President

4

Trump's specific claims in his March 4, 2017, tweets – constitute 'official acknowledgement' of at least those portions of the media reports that overlap with President Trump's claims."  Pls.' MSJ at 12-13, *id*. at 20-21.  This novel theory that consideration of news reports and "incorporation by reference" amounts to official acknowledgement of the details contained in such news reports is unsupported by any citation, and is fundamentally inconsistent with the well-settled criteria for finding official acknowledgement.

Mr. Spicer, in fact, clarifies that neither he nor the President were disclosing any official information but instead commenting on news reports.  *See* Pls.' MSJ at 6-13.  For example, Plaintiffs note that the President stated that the tweets were in the context of having read an article in the New York Times and watched a news report.  Pls.' MSJ at 8.  And Mr. Spicer later described in detail the various news reports about alleged surveillance.  Pls.' MSJ at 8-11.   It is beyond cavil that media reports quoting unnamed and unofficial sources do not constitute official disclosure.  *See Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C .Cir. 1990) ("'[I]t is one thing for a reporter or author to speculate or guess that a thing may be so or even, quoting undisclosed sources, to say that it is so; it is quite another thing for one in a position to know of it officially to say that it is so.'"); *Afshar*, 702 F.2d at 1130 (rejecting suggestion that public and media speculation about CIA liaison with Iranian government constituted prior disclosure); *Public Citizen*, 11 F.3d at 201 ("even if a fact has been the subject of media speculation, its official acknowledgment could" cause damage).  Mere commenting on them, or even relying on them, without any statement that they are accurate, surely does not either.

### III.      Other Official Statements Do Not Foreclose the Glomar Response.

Plaintiffs cite two official statements that do not confirm or deny the existence of FISA material pertaining to the specified individuals and entities.  First, consistent with the

Defendants' Motion for Summary Judgement, Plaintiffs quote then-FBI Director Comey's statement that FBI and DOJ have no records to support the President's tweets. *See* Pls.' MSJ at 13; Def.'s MSJ at 20.  As noted above, the President's tweets do not specify the existence or nonexistence of FISA material but do specify other details.  Mr. Comey's general statement in response does not mean that there is or is not responsive FISC material.

Second, Plaintiffs cite a wholly irrelevant statement by Admiral Mike Rogers, Director of the NSA.  In response to a question from Congressman Schiff, "Did you ever request that your counterparts in GCHQ [(Government Communications Headquarters, a British intelligence and security agency)] should wiretap Mr. Trump on behalf of President Obama?", Admiral Rogers responded directly, "No sir, nor would I, that would be expressly against the construct of the Five Eyes agreement that's been in place for decades." *See* Full Transcript: FBI Director James Comey testifies on Russian interference in 2016 election, WashingtonPost.com (Mar. 20, 2017), https://www.washingtonpost.com/news/post-politics/wp/2017/03/20/full-transcript-fbi-director-james-comey-testifies-on-russian-interference-in-2016-election/.   It is hard to see how this statement regarding British intelligence has any bearing on the existence or nonexistence of FISA materials at DOJ or FBI pertaining to the named individuals or entities.  In any event, the NSA Director could not waive a Glomar on behalf of DOJ.  *See Frugone v. CIA*, 169 F.3d 772, 774–75 (D.C. Cir. 1999) (protecting the CIA's right to make a Glomar response despite official disclosure of the same information by the Office of Personnel Management).

**IV.      Unofficial Statements Do Not Foreclose the Glomar Response.**

Plaintiffs also cite a statement from a former Government official and statement from a Member of Congress as evidence of official acknowledgement.  Pls.' MSJ at 14-18.  Although Plaintiffs characterize the caselaw as "murky," it is in fact quite clear.  Former officials do not

speak for the Government.  *See Public Citizen*, 11 F.3d at 201; *Afshar*, 702 F.2d at 1133.  The fact that some information related to a certain subject exists in the public domain, however, "does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods, and operations."  *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 835 (D.C. Cir. 2001) (citing *Fitzgibbon*, 911 F.2d at 766); *Afshar*, 702 F.2d at 1130; *Military Audit Project v. Casey*, 656 F.2d 724, 745 (D.C. Cir. 1981); *Riquelme v. CIA*, 453 F. Supp. 2d 103, 109 (D.D.C. 2006).  It would set a dangerous precedent if unauthorized public statements could cause otherwise classified or protected information to become unclassified and that is why this proposition has been resoundingly rejected by the courts.

Moreover, Members of Congress cannot waive FOIA exemptions on behalf of the Executive Branch.  The release of information by Congress (and, presumably, an individual Member of Congress) does not constitute official disclosure of classified information by the relevant Executive Branch agency.  *See Military Audit Project,* 656 F.2d at 742-745; *see also Moore v. CIA*, 666 F.3d 1330, 1333 n.4 (D.C. Cir. 2011) ("[W]e do not deem 'official' a disclosure made by someone other than the agency from which the information is being sought." (quoting *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999)); *Earth Pledge Found. v. CIA,* 988 F. Supp. 623, 627-628 (S.D.N.Y. 1996), *aff'd,* 128 F.3d 788 (2d Cir. 1997) (cited with approval in *Wilson v. CIA,* 586 F.3d 171, 186-187 (2d Cir. 2009)).

To hold otherwise would permit Members of Congress who might have been provided with classified information in the course of their official duties to override an Executive Branch classification decision without authorization to do so.  *See Murphy v. Dep't of Army,* 613 F.2d 1151, 1156 & n.13 (D.C. Cir. 1979) (rejecting an interpretation of FOIA that would "effectively transform section [552(d)] into a congressional declassification scheme," which would pose

"obvious problems, constitutional and otherwise," with regard to national security information protected under Exemption 1); *Salisbury v. United States*, 690 F.2d 966, 971 (D.C. Cir. 1982) ("bare discussions by this court and the Congress of NSA's methods generally cannot be equated with disclosure by the agency itself of its methods of information gathering"); *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 849 F. Supp. 2d 47, 60 (D.D.C. 2012) (holding that a congressional committee's publication of records provided to it in confidence without authorization does not constitute a waiver of the applicable FOIA Exemptions). Indeed, it would pose serious Constitutional questions if, as a result of legislative oversight responsibilities, members of Congress could override the Executive Branch determination that information was currently and properly classified. *Cf. Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988). Neither FOIA nor the Executive Order contemplate Congress taking on such a role.

## V.    Plaintiffs' Speculation Does Not Waive the Glomar Response.

Plaintiffs repeatedly attempt to infer a broad waiver from limited and careful official statements by the Department. As explained with respect to each statement above, Plaintiffs' list of "officially disclosed" points is equal parts erroneous, irrelevant, and overstated. This attempt is inconsistent with case law requiring precision in a waiver, and it is inconsistent with the purposes of FOIA. Inferring broad waivers from limited public disclosures, after all, perversely penalizes transparency and discourages Government efforts to make information public to the extent possible consistent with national security and law enforcement interests.

Finally, Plaintiffs opine that "the conflicting official claims that underlie this matter render a substantive response by DOJ as a practical necessity as a matter of policy," and that disclosure would "clarify a public dispute between portions of the Executive Branch." Pls.' MSJ at 21. Plaintiffs' policy judgments, however, are not at issue. The Executive Branch has

determined that further disclosures at this time would cause harm to national security and to law enforcement interests.  Plaintiffs have not met their burden of pointing to official information in the public sphere that precisely matches the information at issue here (the existence or nonexistence of responsive FISA records).  There has been no such official confirmation, and Plaintiffs' inferences about what they believe the White House Press Secretary meant to say do not suffice.[3]  As this Circuit's precedent makes clear, the purported intelligence expertise of the FOIA requestor should not be substituted for that of the responsible federal agency.  *See Phillippi v. CIA,* 655 F.2d 1325, 1331 (D.C. Cir. 1981); *Military Audit Project*, 656 F.2d at 745; *Afshar*, 702 F.2d at 1130-31.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion for Summary Judgment and deny Plaintiff's motion.


Dated:  September 15, 2017

Respectfully Submitted,

CHAD READLER
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
310 New Bern Avenue, Suite 800

---

[3] Moreover, Plaintiffs' insistence that their inferences from official statements contradict each other seems to cut against a finding of official acknowledgement.  The requirement for official and specific disclosure by an authorized official is even less likely to be met where there are multiple, apparently conflicting, and ambiguous statements on related issues.  *Cf. Wolf*, 473 F.3d at 378.

Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

**CERTIFICATION OF SERVICE**

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants by First Class Mail or Federal Express, on the 15th of September, 2017.

*/s/Amy E. Powell*
AMY POWELL
September 15, 2017