# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | * | |
| THE JAMES MADISON PROJECT, | * | |
| <u>et al.</u>, | * | |
| | * | |
|     Plaintiffs, | * | |
| | * | |
|         v. | * | Civil Action No. 17-597 (TJK) |
| | * | |
| DEPARTMENT OF JUSTICE, | * | |
| | * | |
|     Defendant. | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

# REPLY IN SUPPORT OF
# <u>PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

THE OFFICIAL DISCLOSURES OF INFORMATION ARE SUFFICIENT ON
THEIR OWN TO CONCLUDE, AS A MATTER OF LAW, THAT THE GLOMAR
RESPONSES ARE NOT PERMISSIBLE ...................................................................... 1

The Court Can "Incorporate By Reference" Portions Of Media Reports Relied Upon
By Government Officials To Justify Their Official Disclosures ................................ 3

DOJ's Glomar Responses Fail As A Matter Of Law .................................................. 6

IT WOULD CONSTITUTE A REASONABLE EXERCISE OF THIS COURT'S
DISCRETION TO INCORPORATE BY REFERENCE THE UNOFFICIAL
STATEMENTS MADE BY DIRECTOR CLAPPER AND CONGRESSMAN
NUNES ....................................................................................................................... 8

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

Cases

ACLU v. CIA, 710 F.3d 422 (D.C. Cir. 2013) ............................................................... 6, 7

Afshar v. Dep't of State, 702 F.2d 1125 (D.C. Cir. 1983)............................................. 5, 8

American Oversight v. DOJ, Civil Action No. 17-718 (D.D.C.)(RCL) ............................ 2

FBI v. Abramson, 456 U.S. 615 (1982).............................................................................. 6

Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990)............................................................ 5

Hayden v. Nat'l Sec. Agency, 608 F.2d 1381 (D.C. Cir. 1979) ..................................... 8, 9

Mobley v. CIA, 806 F.3d 568 (D.C. Cir. 2015)................................................................. 8

Public Citizen v. Dep't of State, 11 F.3d 198 (D.C. Cir. 1993)......................................... 5

Smith v. CIA, 2017 U.S. Dist. LEXIS 47230 (D.D.C. Mar. 30, 2017) ......................... 6, 7

Stillman v. CIA, 319 F.3d 546 (D.C. Cir. 2003)................................................................ 9

Other Authorities

*https://www.infowars.com/deep-state-drugging-trump-ahead-of-coup-sources-say/* (last
    accessed September 27, 2017) ...................................................................................... 4

## INTRODUCTION

This FOIA action has been brought by the Plaintiffs, The James Madison Project ("JMP") and USA TODAY reporter Brad Heath ("Heath")(hereinafter referred to jointly as "Plaintiffs"), to secure the lawful disclosure of records held by the defendant Department of Justice ("DOJ") with respect to whether the Foreign Intelligence Surveillance Court ("FISC") authorized surveillance of President Donald J. Trump ("President Trump"), his presidential campaign, his private company, or his associates, as well as any relevant applications for orders submitted to the FISC and minimization procedures issued by the FISC.

The DOJ filed its Motion for Summary Judgment ("Motion") on July 14, 2017. Dkt. #13. The Plaintiffs simultaneously filed an Opposition to DOJ's Motion, as well as their own Cross-Motion for Summary Judgment ("Cross-Motion"), on August 18, 2017. Dkt. #17; Dkt. #18. The DOJ filed its Reply in support of its Motion, as well as its Opposition to the Plaintiffs' Cross-Motion, on September 15, 2017. Dkt. #21; Dkt. #22.

For the reasons set forth in detail below, this Court should grant the Plaintiffs' Cross-Motion with respect to DOJ's invocation of Glomar responses.

## ARGUMENT

### I. THE OFFICIAL DISCLOSURES OF INFORMATION ARE SUFFICIENT ON THEIR OWN TO CONCLUDE, AS A MATTER OF LAW, THAT THE GLOMAR RESPONSES ARE NOT PERMISSIBLE

In their Cross-Motion, the Plaintiffs outlined the material information that had already been officially disclosed that was relevant to this Court's assessment of DOJ's Glomar responses. Dkt. #18-1 at 5-14.

Possibly most importantly, the Plaintiffs noted that President Donald Trump has officially disclosed – once in writing, and verbally during two media interviews – that former FBI Director James Comey ("Director Comey") informed him on three separate occasions that he (President Trump) was not under investigation. Id. at 6. That disclosure, on its own, sets the broad parameters for any inquiry into the reasonableness of the DOJ's Glomar response; if President Trump is not and has not been under investigation it is axiomatic that he cannot have been the subject of any type of surveillance order.

It also bears noting that DOJ continues to invoke a Glomar response with respect to at least parts of President Trump's now-infamous tweets on March 4, 2017. See Dkt. #18-1 at 6. The DOJ's contention in their response notwithstanding, see Dkt. #21 at 3, the declarations filed in American Oversight v. DOJ, Civil Action No. 17-718 (D.D.C.) (RCL), do not constitute "no responsive records" determinations with respect to the entirety of the March 4, 2017, tweets. Rather, a review of the declarations filed in that case by the DOJ National Security Division and the Federal Bureau of Investigation reflect that the DOJ components were only stating they did not locate any "records of alleged wiretapping of Trump Tower by President Obama prior to the election." See American Oversight, Dkt. #12-1 at ¶8 (filed September 1, 2017), Dkt. #12-3 at ¶15 (filed September 1, 2017).

Neither declaration indicated in a clear or direct manner that the "no records responsive" determination concerned the separate assertions in President Trump's tweets that a court had turned down a request to conduct "wiretapping" or that there had been specific "tapping" authorized in October 2016. Nor did Director Comey's testimony,

see Dkt. #13-3 at ¶15, clearly address those portions of the President's official statements from his March 4, 2017, tweets.

> A. *The Court Can "Incorporate By Reference" Portions Of Media Reports Relied Upon By Government Officials To Justify Their Official Disclosures*

The Plaintiffs outlined in detail in their Cross-Motion how President Trump and then-White House Press Secretary Sean Spicer ("Mr. Spicer") made official disclosures in the aftermath of the March 4, 2017, tweets. Those official disclosures cited to information contained in media reports, the substance of which President Trump and Mr. Spicer asserted they were relying upon as the factual justification for President Trump's original March 4, 2017, tweets. Dkt. #18-1 at 6-13. DOJ contends that the incorporation of media reports by Government officials to validate official statements is of no consequence in terms of whether that incorporation renders the portions of the media reports officially acknowledged. See Dkt. #21 at 4-5; see also id. at 5 ("Mere commenting on them, *or even relying on them*, without any statement they are accurate, surely does not either.")(emphasis added).

The policy implications of DOJ's position are startling. DOJ is effectively arguing that when Government officials – including the President of the United States – make official statements and subsequently cite to unofficial information in media reports as the factual basis for their official statements, the Government officials are not actually vouching for the accuracy of those portions of the media reports, to say nothing of the accuracy of their official statements themselves. In effect, unless Government officials include the magic words "I am confirming the accuracy of these media reports", DOJ is asserting they can make official statements to their heart's content based upon what they

read in the newspaper that morning and yet the statements will have no legal value nor factual legitimacy.

To adhere to DOJ's position would decimate the "official acknowledgment" exception. Consider the following hypothetical:

a)  the President posts on Twitter tomorrow morning that he just learned there is a plot by "the Deep State" to poison him;

b)  at a White House press briefing, White House Press Secretary Sarah Huckabee-Sanders ("Mrs. Sanders") explains that the President had just read an article on the InfoWars website in which anonymous sources claim "Deep State operatives" are putting sedatives in the President's food and drink, see *https://www.infowars.com/deep-state-drugging-trump-ahead-of-coup-sources-say/* (last accessed September 27, 2017), and that he issued his tweet in response to the claims in that story;

c)  the President subsequently gives a media interview in which he confirms he issued his tweet after reviewing the InfoWars story and says he wants Congress to investigate the matter; and

d)  Neither President Trump nor Mrs. Sanders ever specifically state that the accusations in the InfoWars story are accurate.

Under DOJ's view of the case law, neither President Trump nor Mrs. Sanders made official disclosures about the accuracy of the claims in the InfoWars article. Any argument subsequently made in a FOIA request that President Trump had officially acknowledged the existence of records reflecting such poisoning would have to fail. However, at the same time, the President would have been able to make an official statement indicating that he was in fact being poisoned.

With due respect, this simply cannot nor should it be the law. This appears to be a matter of first impression. The undersigned has not been able to identify – nor, apparently, has the Government – any case law on-point that address the novel factual dilemma posed by President Trump's unconventional communication methods. DOJ's

citations to case law regarding unofficial disclosures and media speculation, see Dkt. #21 at 5, are inapposite, as none of those cases involved a factual scenario similar to the present case. See Public Citizen v. Dep't of State, 11 F.3d 198, 201 (D.C. Cir. 1993) (official disclosures did not encompass broader information sought); Fitzgibbon v. CIA, 911 F.2d 755, 766 (D.C. Cir. 1990)(agency disclosure of station location in congressional report for particular years does not apply to other years not tied to the specific disclosure); Afshar v. Dep't of State, 702 F.2d 1125, 1133-34 (D.C. Cir. 1983) (books published by former officials cannot create an official disclosure on their own).

In contrast, here it was the President of the United States making unprompted official disclosures, and then subsequent official statements by both the President and the White House Press Secretary specifically relied upon media reports to factually justify the context of the President's unprompted official disclosures. This was not something as banal as Mr. Spicer merely commenting on media reports in a vacuum. Both President Trump and Mr. Spicer unequivocally cited to the media reports to validate the truth of President Trump's claims in his March 4, 2017, tweets. Mr. Spicer in particular was unambiguously clear in stating that some manner of surveillance had occurred. See Dkt. #18-1 at 7 ("Well, I think that there's no question that something happened. The question is, it is surveillance, is it a wiretap, or whatever."); see also id. at 12 ("There's no question that there was surveillance techniques used throughout this I think by a variety of outlets that have reported this activity concluded.").

The interests of public policy support the conclusion that when Government officials incorporate by reference into their official statements otherwise-unofficial disclosures in media reports they render that information "officially acknowledged" for purposes of

evaluating a Glomar response. Cf. FBI v. Abramson, 456 U.S. 615, 630 (1982)(finding

FOIA Exemption 5 protection for predecisional communications no longer applied when

those communications were incorporated into a final agency decision).

   B.  *DOJ's Glomar Responses Fail As A Matter Of Law*

   The Plaintiffs have more than sufficiently outlined how official disclosures by

President Trump and Mr. Spicer have already placed into the public domain the existence

of records responsive to the underlying FOIA requests. Dkt. #18-1 at 5-14.

   DOJ responded by arguing that the Plaintiffs have misconstrued and misapplied the

precedent set forth in ACLU v. CIA, 710 F.3d 422 (D.C. Cir. 2013). See Dkt. #21 at 1-5.

DOJ, however, has overplayed its hand in construing the ACLU ruling in such a cramped

manner. Not a single one of the official disclosures in the ACLU case specifically stated

that the CIA conducted or was involved in drone strikes; rather, the official disclosures

only stated that the United States in general conducts drone strikes. Id. at 429-31. The

D.C. Circuit nonetheless found CIA's Glomar response to be illogical and implausible,

concluding that the idea that the Nation's most famous intelligence agency would not

have some interest in otherwise-officially acknowledged drone strikes would perpetuate a

"fiction of deniability that no reasonable person would regard as plausible." Id. at 431.

   The ACLU precedent for Glomar responses was further clarified just six months ago

by one of this Court's brethren. In Smith v. CIA, 2017 U.S. Dist. LEXIS 47230

(D.D.C. Mar. 30, 2017), U.S. District Court Judge Tanya Chutkan concluded that it was

permissible to interpret an official statement by then-President Barack Obama about

providing "military and intelligence assistance" to Israel as sufficiently similar enough to

the plaintiff's FOIA request seeking a copy of intelligence budget line items concerning Israel so as to justify rejecting CIA's Glomar response. Id. at *6-*10.

The official disclosures made by President Trump and Mr. Spicer, whether done deliberately or recklessly, are more than sufficient to fall within the ambit of ACLU and Smith. No less an authoritative source than President Trump has stated on multiple occasions that he was informed by Director Comey that he is not the subject of an investigation. President Trump further stated that a "wire tapping" request had been "turned down by court earlier", and that there had been surveillance implicating him in October 2016. Dkt. #18-1 at 5-6. Mr. Spicer reiterated on two separate occasions that there had been some means of "surveillance" that had occurred, supra at 5, and both President Trump and Mr. Spicer deliberately incorporated by reference information in media reports concerning FISA warrants (including an allegedly declined FISA warrant application) in order to justify the veracity of President Trump's original March 4, 2017, tweets. Dkt. #18-1 at 6-13. In short, President Trump and Mr. Spicer both officially acknowledged that there was surveillance that was conducted of President Trump during the previous administration, and President Trump specifically cited to at least one failed application for surveillance.

To adhere to DOJ's cramped interpretation of the ACLU standard, however, would perpetuate a fiction in which it is plausible that President Trump (per his own statements) is *not* the subject of an investigation despite the fact that he *might* be the subject of a FISA warrant. It beggars belief to view such a circumstance as plausible or logical in any factual sense of the word.

## II.  IT WOULD CONSTITUTE A REASONABLE EXERCISE OF THIS COURT'S DISCRETION TO INCORPORATE BY REFERENCE THE UNOFFICIAL STATEMENTS MADE BY DIRECTOR CLAPPER AND CONGRESSMAN NUNES

The Plaintiffs concede that, ordinarily, the unofficial statements made by Former Director of National Intelligence James Clapper ("Director Clapper") and Congressman Devon Nunes ("Congressman Nunes") would not be admissible here. See Dkt. #18-1 at 14-16. The Plaintiffs argued in their Cross-Motion that this Court would be within its discretion to nonetheless consider those unofficial statements to the extent they overlapped with and/or corroborated separate official statements. Id. at ¶¶17-18. The Plaintiffs wish to clarify and revise the argument they put forward in their Cross-Motion by noting that they are only seeking to incorporate by reference these unofficial disclosures for the limited purpose of demonstrating the existence of a genuine issue of material fact in dispute warranting the denial of DOJ's Motion.[1]

DOJ not surprisingly rejected the Plaintiffs' argument. See Dkt. #21 at 6-8. However, the Plaintiffs maintain that the relevant case law has not contemplated a set of facts like those that exist in the present case. To the best of the undersigned's knowledge, the case law has only contemplated a situation where a plaintiff seeks to establish official disclosure *primarily* (if not exclusively) by way of unofficial statements. See e.g., Mobley v. CIA, 806 F.3d 568, 583-84 (D.C. Cir. 2015)(disclosure of an FBI record by a foreign government did not qualify as an official disclosure); Afshar v. Dep't of State, 702 F.2d 1125, 1133-34 (D.C. Cir. 1983)(books published by former CIA officials were not tantamount to official executive acknowledgments); Hayden v. Nat'l Sec. Agency,

---

[1] Given this modification of the Plaintiffs' argument, they do not object to DOJ being permitted by this Court to file a short sur-reply addressing this particular issue.

608 F.2d 1381, 1388 (D.C. Cir. 1979)(uninformed speculation regarding which foreign communications channels are known to be monitored did not render improper classification of relevant documentation);

That is not the case here. As explained earlier, <u>supra</u> at 2, 6-7, the Plaintiffs contend that the official disclosures by President Trump and Mr. Spicer alone are more than sufficient to render improper DOJ's Glomar responses as a matter of law. The Plaintiffs seek incorporation of these unofficial disclosures only as *supplemental* information to be considered, not as the *primary* basis for evaluating an official acknowledgment argument, and only for the alternative purpose of demonstrating the existence of a genuine issue of material fact in dispute (if necessary).

The Plaintiffs request this Court assess this proposition carefully. The Plaintiffs respectfully submit that the interests of public policy support the conclusion that federal courts can consider supplemental unofficial evidence to the extent the content of those unofficial disclosures substantially overlaps with that of separate official disclosures. <u>Cf</u>. <u>Stillman v. CIA</u>, 319 F.3d 546, 548 (D.C. Cir. 2003)(concluding that trial court should consider pleadings filed by the Government, as well as plaintiff, regarding the appropriateness of classification claims in a First Amendment case before reaching constitutional question of whether the court can compel the Government to grant plaintiff's private attorney access to the purported classified manuscript).

This would be a narrow exception to the "unofficial statement" rule. In all honesty, absent President Trump's calculated (albeit somewhat reckless) official disclosures – and Mr. Spicer's unorthodox attempt to legitimize those disclosures by incorporating claims made in media reports – the Glomar responses issued by DOJ would stand on much

firmer legal ground. The actions of President Trump and Mr. Spicer have undercut the legal feasibility of DOJ's legal position. By doing so, they arguably opened the door to discretionary consideration of supplemental evidence that otherwise would ordinarily be precluded.

For example, and as outlined in the Plaintiffs' Cross-Motion, Dkt. #18-1 at 16, Congressman Nunes provided unofficial disclosures of the existence of at least one FISA warrant authorizing surveillance that implicated President Trump's associates. The Plaintiffs do not require incorporation of this unofficial disclosure by a Member of Congress to establish official acknowledgment of this information as a matter of law. President Trump and Mr. Spicer already officially acknowledged the existence of some type of surveillance that implicated the President and/or his associates. The context of Congressman Nunes' unofficial statements merely supplement and clarify the nature of the surveillance to which both President Trump and Mr. Spicer were referring in their remarks. That context would be relevant to this Court's analysis of the extent to which there is a genuine issue of material fact in dispute warranting denial of DOJ's Glomar responses.

## **CONCLUSION**

For the foregoing reasons, the Plaintiffs' Cross-Motion for Summary Judgment should be granted.

Date: September 29, 2017

Respectfully submitted,

/s/

_____

Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for the Plaintiffs