**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAMES MADISON PROJECT, et al., )<br>  )<br>  Plaintiffs, )<br>  )<br>v. )<br>  )<br>UNITED STATES DEPARTMENT OF JUSTICE, )<br>  )<br>  Defendant. )<br>  ) | Case No. 17-597-APM |

**JOINT STATUS REPORT**

By Minute Order dated February 2, 2018, the Court instructed that by February 14, 2018, "Defendant shall notify the court whether the release of the 'Nunes Memo' referenced in Plaintiffs' Notice of Supplemental Information affects Defendant's blanket Glomar response to Plaintiffs' FOIA request," and further that "[i]f Defendant maintains that the Nunes Memo's release does not in any way change the agency's Glomar response, it shall set forth its justification for that position." Defendant responded on February 14, 2018, requesting that current motions be terminated as moot and requesting 30 days to confer with Plaintiffs' counsel and propose a reasonable schedule for the Government to make additional disclosures of records, if any, and to re-brief summary judgment, including asserting any remaining partial Glomar response.

The Court denied the pending motions for summary judgment as moot and directed the parties to appear for a status conference on March 19, 2018, at 10:00 am. Counsel for the parties have conferred and hereby advise the Court of their respective positions in advance of the status conference.

1

Defendant's Position.

As explained in the February 14, 2018 filing, the declassification of the Nunes Memorandum, and the subsequent release of the Schiff Memorandum, require the Government to carefully review FISA materials related to Carter Page to determine what information contained in them has been declassified and whether any such declassified information can be released to Plaintiff in response to its FOIA request. That review is ongoing.

Defendant requests until July 20, 2018 to complete processing of documents by NSD and FBI. The Government does not make this request lightly. The attached Declaration of David Hardy explains that ongoing review of these documents is novel, complex, and time-consuming. The Government has never, in any litigation civil or criminal, processed FISA applications for release to the public. *See* Hardy Decl. ¶ 9. The documents are lengthy and complicated, and the assessment of national security risk requires significant consultation and review and the diversion of operational resources from FBI's law enforcement and national security missions. *Id*. ¶¶ 8-15. The Hardy Declaration explains that this is an ongoing, multistep process to identify matching information in the responsive documents and public disclosure, to analyze classification and FOIA exemption status of all information in the documents, and to disclose any reasonably segregable non-exempt information. *Id*. ¶¶ 8-13. Finally, if and when portions of the FISA applications and FISC orders are identified for release after all classification, FOIA exemption, and segregability determinations are made, the Government may have to move the FISC for an unsealing order in order to make the release. *Id.* ¶ 14.

Based on the foregoing, Defendants propose the following schedule:

- July 20, 2018 -  Defendant completes processing and production of responsive, non-exempt records subject to FOIA.

- August 3, 2018 - The parties will meet and confer and file a joint status report on or before August 3, 2018, proposing next steps.

Plaintiffs' Position.

As a general matter, the Plaintiffs have no objection to meeting and conferring with the Government subsequent to the completion of its processing and release of responsive records (if any can be released, whether in whole or in part). The Plaintiffs agree that a joint status report advising the Court of proposed next steps would be appropriate at that juncture.

The Plaintiffs do object, however, to the Government's proposed timeframe for completing that processing and production of responsive, non-exempt records. The records at issue are of significant public interest, as evidenced by nothing less than the decision by the President of the United States – apparently in defiance of objections raised by the defendant Department of Justice – to personally authorize the declassification of the Nunes Memo in its entirety and take the unprecedented step of officially disclosing the existence of a FISA warrant. *https://www.cnbc.com/2018/02/02/white-house-says-trump-declassified-gop-surveillance-memo.html* (last accessed March 16, 2018). Both the President and several Members of Congress have since raised concerns that the information disclosed in both the Nunes Memo and Schiff Memo reveal potential violations of law, ethics or policy by the Department of Justice in its applications for FISA warrants targeting Carter Page. *https://www.washingtontimes.com/news/2018/feb/28/donald-trump-slams-disgraceful-jeff-sessions-over-/* (last accessed March 16, 2018); *https://www.msn.com/en-us/news/politics/gowdy-goodlatte-demand-appointment-of-special-counsel-citing-fisa-abuses/ar-BBJXaI5* (last accessed March 16, 2018).

The Plaintiffs are cognizant of the complexities of the situation faced by the Department of Justice in processing the responsive records, but respectfully submit that alone does not render the aforementioned public interest in these records any less immediate or significant. The Plaintiffs ultimately defer to the Court's best judgment regarding just how much time should be afforded to the Department of Justice to complete processing of these important records.

On a final note, it is the Plaintiffs' understanding that the Government will also – in addition to processing the Carter Page FISA warrant materials in particular – be evaluating the extent to which separate official disclosures in the Schiff Memo justify declining to invoke Glomar responses with respect to other categories of records that would be responsive to the Plaintiffs' FOIA requests. It is the Plaintiffs' understanding that the Government will advise them of this separate legal determination at some point in advance of the deadline to complete processing and production of the Carter Page records.

Dated:  March 16, 2018                                   Respectfully Submitted,

                                                         CHAD A. READLER
                                                         Acting Assistant Attorney General

                                                         MARCIA BERMAN
                                                         Assistant Director, Federal Programs Branch

                                                         */s/Amy E. Powell*
                                                         AMY E. POWELL
                                                         Trial Attorney, Federal Programs Branch
                                                         Civil Division, Department of Justice
                                                         310 New Bern Avenue, Suite 800
                                                         Federal Building
                                                         Raleigh, NC 27601-1461
                                                         Phone: 919-856-4013
                                                         Email:  amy.powell@usdoj.gov

                                                         */s/ Bradley P. Moss*
                                                         Bradley P. Moss, Esq.
                                                         D.C. Bar #975905
                                                         Mark S. Zaid, Esq.

                                                D.C. Bar #440532  
                                                Mark S. Zaid, P.C.  
                                                1250 Connecticut Avenue, N.W.  
                                                Suite. 200  
                                                Washington, D.C. 20036  
                                                (202) 454-2809  
                                                (202) 330-5610 fax  
                                                Brad@MarkZaid.com  
                                                Mark@MarkZaid.com  

                                                Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE JAMES MADISON PROJECT and BRAD HEATH, USA Today, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 17-cv-0597 |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am currently the Section Chief of the Record/Information Dissemination Section (RIDS), Records Management Division (RMD), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act (FOIA) policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 243 employees who staff a total of twelve (12) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and

information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (2010), and the preparation of declarations in support of Exemption (b)(1) claims under the FOIA. I have been designated by the Attorney General of the United States as an original classification authority, and a declassification authority pursuant to Executive Order 13526 §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiffs' FOIA request that is the subject of this lawsuit.

(4) This is the second declaration I have submitted in this case. My first declaration was submitted on July 14, 2017, in support of Defendant's motion for summary judgment and specifically to defend the FBI's Glomar response to Plaintiffs' FOIA request. *See* ECF No. 13-3, Declaration of David M. Hardy. Due to recent events, the FBI's Glomar response has been pierced in part due to the public disclosure of surveillance of Carter Page under the Foreign Intelligence Surveillance Act (FISA). Accordingly, my second declaration is being submitted to support Defendant's proposed schedule for processing the Carter Page FISA materials that have been publicly acknowledged and that are responsive to Plaintiffs' FOIA request at issue in this

lawsuit. That specifically includes the Foreign Intelligence Surveillance Court (FISC) orders of October 21, 2016 and January 12, 2017, authorizing surveillance of Carter Page, and the FISA applications associated with those two orders, which are the two groups of materials that fall within the search cut-off dates of Plaintiff's request (June 16, 2015 – April 4, 2017).

(5) On February 2, 2018, House Republicans released a memorandum authored for Devin Nunes, Chairman of the House Permanent Select on Intelligence (HPSCI), by his staff that disclosed the existence of FISA surveillance of Carter Page by the FBI (hereafter "the Nunes Memo"). Information in the memorandum that was classified when it was written was declassified by order of the President on February 2, 2018. The memorandum represents the judgments of its authors and is not a product of the Executive Branch. It summarizes, characterizes, and offers opinions about the much lengthier and more detailed FISA applications submitted by the Department of Justice (DOJ) to the Foreign Intelligence Surveillance Court (FISC), and the orders obtained from the FISC in response thereto. The Nunes Memo does not quote any portions of the FISA applications or FISC orders on Carter Page.

(6) On February 24, 2018, HPSCI's Democratic Members released a memorandum authored by Adam Schiff, ranking member of HPSCI, in response to the Nunes Memo (hereafter "the Schiff Memo"). The release of certain information from the Schiff Memo was a consequence of the President's decision to declassify the Nunes Memo; the redacted information in the Schiff Memo was not declassified and disclosed in the Nunes Memo and remains currently and properly classified. As with the Nunes Memo, the Schiff Memo represents the judgments of its authors and is not a product of the Executive Branch. It summarizes, characterizes, and offers opinions about the lengthy, detailed FISA applications submitted to the FISC, and the FISC orders obtained in response thereto. Other than one paragraph in the memorandum, the Schiff

Memo does not quote any portions of the FISA applications or FISC orders on Carter Page.

(7)  The declassification of the information in the Nunes Memo did not result in the declassification of *all* information in the lengthy and detailed FISA applications or the resulting FISC orders on Carter Page, nor did either memorandum disclose all facts and information contained in those FISA applications and FISC orders.

(8)  Thus, notwithstanding declassification and disclosure of the fact that DOJ sought and obtained authorization to conduct surveillance of Carter Page under FISA and certain related facts, the FISA applications and FISC orders at issue here continue to be very sensitive materials that are part of the on-going Russian interference investigation being overseen by the Special Counsel's Office. Accordingly, determining what information must now be disclosed under the FOIA requires that the FBI analyze each piece of information in the FISA materials to determine whether it matches information disclosed in the Nunes and Schiff Memos; whether declassification of the Nunes Memo and publication of the Schiff Memo have affected the classification status of information that does not match the disclosed information; and what other FOIA exemptions apply to non-matching information. Such an analysis of this information had not previously been conducted due to the FBI's initial Glomar response to the FOIA request submitted by Plaintiff. After the Nunes Memo was released, the FBI began processing the Carter Page FISA applications and FISC orders for determination of what, if anything, can be released under the FOIA, in response to the FOIA request at issue in this case, as well as other requests.

(9)  Identifying matching information and determining the classification and FOIA exemption status of the non-matching information in these FISA materials requires extremely careful and detailed analysis, given the sensitivities of this information. It is exceedingly rare that the FBI would disclose any substantive information related to an active investigation such as

the Russian interference investigation being overseen by the Special Counsel's Office, and it is wholly unprecedented for the Government to disclose FISA applications at all, whether under the FOIA or otherwise. Thus, any disclosure here is likely to have wide-reaching consequences to operational concerns outside the FOIA process and must be undertaken with all due care and consideration of the wide-reaching impacts on national security and intelligence operations.

(10)   The FBI is undertaking a multi-step, largely iterative process, as described below, in order to facilitate the identification of matching information, the analysis of classification and FOIA exemption status, and the disclosure of any reasonably segregable non-exempt information.

(11)   Matching Review:

(A)   Information that has been officially acknowledged through a documented public release by an agency official must be disclosed. Thus, to the extent that there is a match between information disclosed in the Nunes and Schiff Memos and information in the FISA applications and FISC opinions, the matching information in the FISA materials will have to be disclosed when reasonably segregable from non-exempt information.

(B)   The FBI is currently reviewing all of the relevant materials to identify matching information. Except for one paragraph in the Schiff Memo, the HPSCI memoranda do not quote the FISA applications or FISC orders, which are far longer and more detailed than either of the HPSCI memoranda. Thus, in order to determine whether other information in the Nunes and Schiff Memos matches information in the FISA applications and FISC orders, the FBI has to consider whether particular information in the Nunes and Schiff Memos, when combined with other information in either memorandum, creates a composite that matches information in the FISA applications and FISC orders. This is a detailed and

complicated process that requires more than a side-by-side comparison of the Nunes Memo or the Schiff Memo against the FISA materials.

  (C) This process is on-going and will proceed simultaneously with the classification review but must be completed prior to the FOIA review, both of which are discussed below.[1]

 (12) <u>Classification Review</u>:

  (A) As mentioned above, not all information in the FISA applications and FISC orders was declassified as a result of the declassification of the Nunes Memo. Accordingly, the FISA applications and FISC orders must undergo a classification review to determine (i) what has been declassified, and (ii) whether the classification level of other information was affected by the declassification of the information in the Nunes Memo and the publication of the Schiff Memo. This requires analysis of each piece of information in the FISA applications and FISC opinions.

  (B) This is not a typical classification review that can be conducted by RIDS, as it would in most FOIA cases. Rather, because of the nature and sensitivities of the documents at issue, this review is being completed by subject matter experts on the operational equities impacted by the classification determinations at issue here. The review necessarily diverts operational resources from FBI's core mission activities.

  (C) Matching the declassified information in the Nunes and Schiff Memos to the information in the FISA materials is not simply a matter of a side-by-side comparison to

---

[1] The matching review must be completed prior to the FOIA review because any information that matches cannot be exempted. Accordingly, to ensure efficiency and consistency, the FBI intends to identify any matching information that cannot be exempted before beginning to analyze the remaining information for exemptions.

transfer the declassification decisions from the HPSCI memoranda to the FISA applications and FISC orders, given that both HPSCI memoranda consist of summaries, characterizations, and opinions, rather than quotations from the FISA materials (except one instance in the Schiff Memo).

(D)  Moreover, determining whether declassification of the Nunes Memo has affected the classification status of other information in the FISA applications and orders will require careful analysis of all of the relevant documents (*i.e.*, both HPSCI memoranda and all the FISA applications and FISC orders), as well as other information that is already publicly known.[2]

(E)  Finally, given the sensitivities of FISA materials generally and of these materials specifically, this classification review will be subject to multiple layers of review and approval from operational divisions across the FBI, and by DOJ, at a minimum.

(13)  FOIA Exemption Review:

(A)  Once the matching and classification reviews are completed, RIDS will conduct a FOIA review of the FISA applications and FISC orders to apply any other applicable FOIA exemptions. As mentioned above, these FISA materials have not previously been processed because the FBI issued a Glomar response to Plaintiff's FOIA request. Furthermore, this will be the first time that FISA applications have been processed for release under the FOIA

---

[2] Classification determinations relative to the FISA applications and FISC orders at issue here are being made in light of the body of information available to the FBI concerning the national defense and foreign relations of the United States. When making classification determinations, the FBI cannot examine information in the FISA applications and FISC orders in isolation but rather must evaluate it with careful consideration given to the impact that its disclosure could have on other sensitive information contained elsewhere in the United States Intelligence Community's files. Consideration must also be given to the impact that other information – both in the public domain and likely known or suspected by present or potential adversaries of the United States – would have upon the information in the FISA applications and FISC orders under review here.

7

or otherwise, and complicated questions about the protection of information in the applications will have to be resolved prior to any disclosure decisions being made, because such decisions will impact the handling of FISA applications in other cases under the FOIA and otherwise.

(B) Once RIDS finishes applying FOIA exemptions, the consolidated redactions of classified and other FOIA-exempt information will then be sent to internal and external stakeholders, including DOJ's National Security Division, the Special Counsel's Office, and other affected U.S. Intelligence Community agencies, for final review to ensure that all equities are properly protected and defensible. Again, FBI has never previously processed FISA applications for production under FOIA or in other litigation, and anticipates this will require extensive consultation and review.

(14) <u>FISC Unsealing Order</u>: Finally, assuming that any sealed portions of the FISA applications and/or FISC orders are identified for release after all classification, FOIA exemption, and segregability determinations are made, the Government will have to move to unseal the materials before the FISC and obtain an unsealing order from the FISC in order to make the release.

(15) The FBI estimates that it will require four months to complete the above-described work, up to and including July 20, 2018. Specifically, it anticipates completing the matching review and the classification review/approvals within the first two months; the FOIA review and internal/external stakeholder approvals in the following six weeks; and the FISC unsealing and disclosure of any reasonably segregable, non-exempt information within the final two weeks.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16th day of March, 2018.

David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia