**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| THE JAMES MADISON PROJECT, <u>et al.</u>, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 17-597 (APM) |
| DEPARTMENT OF JUSTICE, | * * * | |
| Defendant. | * * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFFS' OPPOSITION TO**
**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

# Table of Contents

FACTUAL BACKGROUND ............................................................................................. 1

ARGUMENT .................................................................................................................... 2

  STANDARD OF REVIEW ............................................................................................ 2

  THE PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT
  WITH RESPECT TO REDACTIONS MADE TO 21 PAGES IN THE JUNE 2017
  FISC APPLICATION OR, ALTERNATIVELY, TO LIMITED DISCOVERY TO
  RESOLVE ANY GENUINE ISSUES OF MATERIAL FACT IN DISPUTE
  REGARDING THE CURRENT STATUS OF THE PRESIDENT'S
  DECLASSIFICATION ORDER ..................................................................................... 3

    The President's Declassification Order Remains In Effect ........................................ 3

    Alternatively, If Partial Summary Judgment Is Not Currently Warranted For The
    Plaintiffs, Limited Discovery Is Justified To Determine The Current Status Of The
    Order ..................................................................................................................... 8

  AT A MINIMUM, SUMMARY JUDGMENT IN FAVOR OF THE GOVERNMENT
  IS NOT WARRANTED AT THIS TIME WITH RESPECT TO THE REDACTIONS
  AND WITHHOLDINGS MADE TO THE RELEASED RECORDS ......................... 10

    THERE IS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE
    REGARDING THE GOOD FAITH BASIS OF THE GOVERNMENT'S
    REDACTIONS AND WITHHOLDINGS ............................................................... 10

    THE PLAINTIFFS HAVE PROVIDED A PRIVACY WAIVER FROM CARTER
    PAGE THAT WARRANTS RECONSIDERATION OF APPLICABLE PRIVACY
    REDACTIONS ..................................................................................................... 14

    THERE IS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE
    REGARDING THE EXTENT TO WHICH THE GOVERNMENT HAS MET ITS
    SEGREGABILITY OBLIGATIONS ...................................................................... 15

CONCLUSION .............................................................................................................. 16

# Table of Authorities

**Cases**

100Reporters LLC v. Dep't of Justice, 248 F. Supp. 3d 115 (D.D.C. 2017).............. 15, 16

Am. Immigration Council v. Dep't of Homeland Sec., 950 F. Supp. 2d 221 (D.D.C. 2013) ................................................................................................................ 16

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).................................................. 2, 3

Church of Scientology, Inc. v. Turner, 662 F.2d 784 (D.C. Cir. 1980)........................... 10

Davidson v. Dep't of State, 206 F. Supp. 3d 178 (D.D.C. 2016) .................................... 11

DiBacco v. Army, 795 F.3d 178 (D.C. Cir. 2015)............................................................ 11

Gardels v. CIA, 689 F.2d 1100 (D.C. Cir. 1982)............................................................. 11

Graff v. FBI, 822 F. Supp. 2d 23 (D.D.C. 2011) ........................................................14-15

Hall & Assocs. LLC v. EPA, 315 F. Supp. 3d 519 (D.D.C. 2018).................................. 12

Hayden v. NSA, 608 F.2d 1381 (D.C. Cir. 1979)............................................................ 11

Hodge v. FBI, 703 F.3d 575 (D.C. Cir. 2013) ................................................................ 15

Holcomb v. Powell, 433 F.3d 889 (D.C. Cir. 2006) ......................................................... 2

James Madison Project, et al., v. Dep't of Justice, 2018 U.S. Dist. LEXIS 152807 (D.D.C. Sept. 7, 2018) ............................................................................................ 6, 7

James Madison Project, et al., v. Dep't of Justice, et al., 302 F. Supp. 3d 12 (D.D.C. 2018) ........................................................................................................................ 5

Kimberlin v. Dep't of Justice, 139 F.3d 944 (D.C. Cir. 1998) ........................................ 15

King v. Dep't of Justice, 830 F.2d 210 (D.C. Cir. 1987)............................................ 10, 11

Lam Lek Chong v. DEA, 929 F.2d 729 (D.C. Cir. 1991)................................................. 16

Landmark Legal Found. v. EPA, 959 F. Supp. 2d 175 (D.D.C. 2013)............................ 12

Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242 (D.C. Cir. 1977)............ 16

PHE, Inc. v. Dep't of Justice, 983 F.2d 248 (D.C. Cir. 1993) ......................................... 11

<u>Pub. Citizen Health Research Group v. FDA</u>, 185 F.3d 898 (D.C. Cir. 1999).................. 2

<u>Roseberry-Andrews v. Dep't of Homeland Sec.</u>, 299 F. Supp. 3d 9 (D.D.C. 2018)........ 16

<u>Sheridan v. Office of Pers. Mgmt.</u>, 278 F. Supp. 3d 11 (D.D.C. 2017)........................... 15

<u>Trump v. Hawaii</u>, 2018 U.S. LEXIS 4026 (U.S. June 26, 2018)..................................... 13

<u>Voinche v. FBI</u>, 412 F. Supp. 2d 60 (D.D.C. 2006) ........................................................ 9

<u>Wheeler v. CIA</u>, 271 F. Supp. 2d 132 (D.D.C. 2003)...................................................... 9

Other Authorities

*https://oig.justice.gov/about/* (last accessed October 23, 2018) ........................................ 7

*https://twitter.com/realDonaldTrump/status/10213472300 22807552* (last accessed
    October 23, 2018) ...................................................................................................... 12

*https://twitter.com/realDonaldTrump/status/1020978929 736265729* (last accessed
    October 23, 2018) ...................................................................................................... 12

*https://www.usatoday.com/story/news/2018/07/21/fbi-releases-carter-page-fisa-*
    *records/813984002/* (last accessed October 22, 2018) ................................................... 3

*https://www.vox.com/2018/9/21/17886720/trump-russia-declassification-order-tweets-*
    *mueller* (last accessed October 22, 2018) ............................................................. 5, 13

*https://www.whitehouse.gov/briefings-statements/statement-press-secretary-34/* (last
    accessed October 22, 2018) .................................................................................... 4, 12

Rules

Fed. R. Civ. P. 56........................................................................................................... 2

The Plaintiffs, The James Madison Project ("JMP") and Brad Heath ("Heath") (hereinafter referred to jointly as "Plaintiffs"), brought this action under the Freedom of Information Act ("FOIA") to secure the lawful disclosure of records held by the defendant Department of Justice ("DOJ"). The underlying FOIA requests specifically sought copies of any orders issued by the Foreign Intelligence Surveillance Court ("FISC") authorizing surveillance of President Donald J. Trump ("President Trump"), his presidential campaign, his private company, or his associates, as well as any relevant applications for orders submitted to the FISC and minimization procedures issued by the FISC.

Presently before this Court for consideration is DOJ's Motion for Summary Judgment ("Motion"). Upon review of the Government's Motion and its supporting sworn declarations, the Plaintiffs have chosen to concede the adequacy of the searches conducted, as well as the Government's Glomar responses with respect to the existence or non-existence of responsive records other than those already produced. The Plaintiffs have confined their Cross-Motion for Partial Summary Judgment ("Cross-Motion"), as well as their Memorandum in Opposition to the Defendant's Motion for Summary Judgment, strictly to the legal appropriateness of the redactions and withholdings made to the documents that have been produced as part of this litigation.

For the reasons set forth in detail below, this Court should grant the Plaintiffs' Cross-Motion and deny DOJ's Motion in part.

## **FACTUAL BACKGROUND**

The convoluted drama underlying the factual background of this proceeding was largely set forth in two documents: the First Amended Complaint, see Dkt. #5 at ¶¶7-32

(filed April 15, 2017), and the Statement of Material Facts in Support of Defendant's
Motion for Summary Judgment, see Dkt. #40 (filed October 19, 2018)("Statement of
Material Facts").

In the interest of not repeating information already set forth before this Court in
DOJ's Statement of Material Facts, the Plaintiffs incorporate that document herein by
reference. However, the Plaintiffs are only incorporating the factual statements in relation
to paragraphs 1-9 and 11, and only to the extent that they do not constitute legal
characterizations and conclusions regarding the adequacy of DOJ's searches for
responsive records or the appropriateness of its invocations of particular FOIA
exemptions.

## ARGUMENT

### I.  STANDARD OF REVIEW

Summary judgment pursuant to FRCP 56 should be awarded to a movant if "the
pleadings, the discovery and disclosure materials on file, and any affidavits show that
there is no genuine issue as to any material fact and that the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the appropriateness of
summary judgment, the Court must view the evidence in the light most favorable to the
non-moving party, Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006), accepting the
non-moving party's evidence as true and drawing "all justifiable inferences" in the
nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
However, the Court need not rely on any "conclusory allegations unsupported by factual
data," Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999)
(internal quotation marks and citations omitted), and should only find that "there is a

genuine issue for trial" where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249 (citation omitted).

## II. THE PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT WITH RESPECT TO REDACTIONS MADE TO 21 PAGES IN THE JUNE 2017 FISC APPLICATION OR, ALTERNATIVELY, TO LIMITED DISCOVERY TO RESOLVE ANY GENUINE ISSUES OF MATERIAL FACT IN DISPUTE REGARDING THE CURRENT STATUS OF THE PRESIDENT'S DECLASSIFICATION ORDER

### A. The President's Declassification Order Remains In Effect

This litigation presents an arguably-unprecedented legal scenario regarding the impact of a presidential declassification order that was issued while the present case was already in briefing. The undersigned are not aware of any previous case that has presented a court with this particular situation.

On July 20, 2018, DOJ produced 412 pages of records memorializing four separate applications to the Foreign Intelligence Surveillance Court ("FISC") for authorization to conduct surveillance of Carter W. Page ("Mr. Page"). *https://www.usatoday.com/story/news/2018/07/21/fbi-releases-carter-page-fisa-records/813984002/* (last accessed October 22, 2018). This was the first time the U.S. Government had ever released to the public FISC records regarding surveillance of a specific individual.

As the Government states in its opening brief, <u>see</u> Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment at 15-31 (Dkt. #40)(filed October 19, 2018)("Def's Memo"), redactions were applied relying upon Exemptions 1, 3, 6 and 7 and 186 pages were withheld in their entirety in reliance upon Exemption 1, 3 and 7. If the present case had proceeded in a manner similar to most routine FOIA litigation, the briefing on this matter would be simpler and limited only to the question of the legal sufficiency of the Government's affidavit(s) with respect to

those redactions and withholdings. Alas, nothing in the era of President Trump is ever simple or routine.

On September 17, 2018, President Trump exercised his constitutional authority to order the immediate declassification of 21 specific pages ("the Pages") from the 412-page production. *https://www.whitehouse.gov/briefings-statements/statement-press-secretary-34/* (last accessed October 22, 2018). The Pages are derived from the June 2017 FISC application regarding Mr. Page.

To date, that official declassification order ("the Order") by President Trump has not been rescinded in any clear or explicit manner. On its own and as a matter of law, the Order nullifies the ability of the Government to justify redactions from the Pages and warrants summary judgment in favor of the Plaintiffs with respect to the Pages.

The Government nonetheless seeks to sidestep this problem by merely arguing (without citation) that President Trump "… [l]ater indicated he was no longer requiring immediate declassification of these documents at this time." See Def's Memo at 8 n.5. This appears to be a reference to a pair of tweets (consolidated into one body of text below) issued by President Trump on September 21, 2018, in which he stated the following:

> I met with the DOJ concerning the declassification of various
> UNREDACTED documents. They agreed to release them but stated that
> so doing may have a perceived negative impact on the Russia probe. Also,
> key Allies' called to ask not to release. Therefore, the Inspector General []
> has been asked to review these documents on an expedited basis. I believe
> he will move quickly on this (and hopefully other things which he is
> looking at). In the end, I can always declassify if it proves necessary.
> Speed is very important to me – and everyone!

*https://www.vox.com/2018/9/21/17886720/trump-russia-declassification-order-tweets-mueller* (last accessed October 22, 2018).[1]

The language of these tweets poses several problems for the Government and its attempt to argue to this Court that the Order is no longer in effect.

The reference by President Trump to "various UNREDACTED documents" makes little logical sense, at least in the context of the Pages, as they all contain some manner of redactions (with the exception of page 30 of the June 2017 FISC application, which was released without redactions). Unredacted documents would not, by their very nature, require declassification as there would be nothing to declassify nor redactions to remove.

The president's lack of clarity aside, the very next sentence in his two-part tweet states that DOJ conveyed to President Trump it would release the documents that are the subject of the Order. This statement unequivocally demonstrates that DOJ has informed President Trump that any redactions will be removed. This was not merely President Trump engaging in the type of political commentary as to what he "hopes" will happen or what he "believes" should happen that this Court has previously found insufficiently exacting, for example, for the purpose of an official disclosure. See James Madison Project, et al., v. Dep't of Justice, et al., 302 F. Supp. 3d 12, 35 (D.D.C. 2018)(finding President Trump's descriptions of "Steele Dossier" as "phony" or "fake" as insufficient to even create genuine issue of material fact in dispute). Nor does the statement leave it open to interpretation whether President Trump is actually relying upon government information in making his assertion. See id. at 35 ("But it does not follow that just because a tweet is an 'official' statement of the President that its substance is necessarily

_____

[1] The grammar and syntax errors made in these tweets issued by the Commander-in-Chief have been left "as is" for the sake of factual and historical accuracy.

grounded in information contained in government records."); see also James Madison Project, et al., v. Dep't of Justice, 2018 U.S. Dist. LEXIS 152807, *23 (D.D.C. Sept. 7, 2018)("…[I]t is imperative that both the context and substance of the official disclosures 'leave no doubt' as to [whether responsive records exist.]").[2]

To the contrary, President Trump makes it explicitly clear that in his discussions with DOJ he was informed that the documents subject to the Order will in fact be declassified and released. This reflects official confirmation that President Trump and DOJ officials discussed the declassification and agreed on a course of action that would lead to the release of, among other things, the Pages.

Nothing in the remainder of the two-part tweet or in the entirety of the written record for that matter constitutes a rescission of the Order or, alternatively, even a postponement of the impact of the Order. The Government certainly has not produced any written orders or directives from President Trump or DOJ stating that the Order has been rescinded or its impact postponed. The two sworn affidavits submitted by the Government in support of its Motion, see Third Declaration of David M. Hardy (Dkt. #40-1)(filed October 19, 2018)("Hardy Decl."); Declaration of Patrick M. Findlay (Dkt. #40-3)(filed October 19, 2018)("Findlay Decl."), both of whom are government officials far below the level of the President and therefore cannot overrule his position, contain no reference to any documentation indicating any change to the impact of the Order either.

---

[2] Respectfully, the Plaintiffs are not conceding the legal validity of the analysis in the cited rulings by this Court or its brethren, U.S. District Court Judge Amy Berman Jackson. However, as neither of those rulings have yet to be reviewed on the merits by the appellate courts and therefore remain valid and current case law, the Plaintiffs are relying upon those analyses for purposes of the present case.

The entirety of the Government's claim that the Order is effectively "on hold" appears to be factually premised on nothing more than President Trump's two-part tweet. The tweets certainly do not specifically say that the Order has been rescinded or put on hold. The only thing they say is that President Trump has asked the Office of the Inspector General to review an unspecified set of documents "on an expedited basis."

That assertion is too thin a reed upon which to hang the Government's defense. Even if the OIG had the authority to conduct a review of the appropriateness of the various redactions (and there is no indication that the OIG is the proper office to conduct such a review),[3] this vague assertion by President Trump (without any particular timeframe) simply cannot alone satisfy the Government's evidentiary burden here to demonstrate that the Order is no longer in effect (or at least in effect with respect to the Pages in particular). President Trump's tweets do not specify whether the "expedited review" being conducted by the OIG relates to the Pages specifically or rather to the other categories of information and records that were also subject to the Order (such as reports of interviews with DOJ official Bruce G. Ohr or reports of interviews prepared in connection with FISC applications targeting Mr. Page). What is good for the goose is good for the gander, see James Madison Project, 2018 U.S. Dist. LEXIS 152807 at *23 (referencing need to meet matching and specificity requirements for official disclosures), and DOJ cannot point to any specific or exacting official statements in the record that demonstrates OIG is reviewing the Pages in particular.

---

[3] The OIG's mandate is typically limited to matters involving misconduct in DOJ programs and personnel, as well as audits of DOJ programs. *https://oig.justice.gov/about/* (last accessed October 23, 2018). Unless the review is to reassure President Trump that redactions and withholdings made were not the result of improper political bias, the OIG does not appear to be the proper forum for conducting this review. Nor is there any evidence the OIG is actually conducting a review.

Indeed, it would defy logic to believe that OIG is currently conducting an overlapping review of the Pages (and, hypothetically, could conclude some redactions were inappropriate) while at the same time the Government is expending time and resources to argue before this Court that all of the redactions in the Pages are justified. If the OIG's "expedited review" did relate to the Pages, it is more than plausible to imagine that the review would be finished before the current briefing even concluded, let alone before this Court has a chance to issue a ruling. The undersigned find it unlikely that the Government has chosen to risk disrupting the briefing process in this case *for a second time* due to external events and can only reasonably surmise (as the written record would seem to confirm) that the OIG's review is not of the Pages.

If the Government wishes to produce actual evidence demonstrating that the Order has been rescinded or otherwise postponed with respect to the Pages, it is certainly within its discretion and authority to do so. Until such time as that evidence is provided, however, this Court should conclude that the President's Order remains in effect (at least with respect to the Pages) and that partial summary judgment in favor of the Plaintiffs is warranted with respect to the Pages.

**B.  Alternatively, If Partial Summary Judgment Is Not Currently Warranted For The Plaintiffs, Limited Discovery Is Justified To Determine The Current Status Of The Order**

Even if this Court were to conclude that partial summary judgment is not warranted at this time in favor of the Plaintiffs with respect to the Pages, it borders on axiomatic that the Government has failed to demonstrate the absence of a genuine issue of material fact in dispute justifying summary judgment in its favor on the same matter. As previously explained, supra at 6-7, the Government has provided no evidence beyond

President Trump's two-part tweet to suggest that the Order has been stayed, particularly with respect to the Pages.

These circumstances more than reasonably justify authorizing supplemental declarations or limited discovery to resolve the material fact in dispute. Although FOIA actions are typically resolved without the need for discovery, see Wheeler v. CIA, 271 F. Supp. 2d 132, 139 (D.D.C. 2003), it has been permitted when there is evidence of bad faith or other tangible evidence that an exemption claimed by the agency is inappropriate. See Voinche v. FBI, 412 F. Supp. 2d 60, 72 (D.D.C. 2006).

In the present case, limited discovery is justified given the existence of the Order requiring the declassification and release of the Pages and the Government's argument (without sufficient evidence) that the Order does not currently remain in effect as a matter of law. Discovery would be confined to answering the following questions: (1) has President Trump (or his appropriate designee) specifically informed the appropriate DOJ officials – whether in writing or verbally – that the Order can be considered as rescinded or otherwise postponed with respect to the Pages; (2) does the OIG's review encompass the appropriateness of the redactions made in the Pages and, if so, what is the timeframe for a completion of that review; and (3) if President Trump (or his appropriate designee) has not specifically given instructions that the Order can considered as rescinded or otherwise postponed, and the OIG's review does not encompass the Pages, upon what basis is DOJ concluding that the Order remains in effect with respect to the Pages? Declaration of Bradley P. Moss at ¶7 (dated November 9, 2018)("Moss Decl."), attached as Exhibit "1".

Absent this clarification, whether through supplemental agency declarations or limited discovery, a genuine issue of material fact remains in dispute regarding the status of the Order and its impact upon the redactions found in the Pages.

### III. AT A MINIMUM, SUMMARY JUDGMENT IN FAVOR OF THE GOVERNMENT IS NOT WARRANTED AT THIS TIME WITH RESPECT TO THE REDACTIONS AND WITHHOLDINGS MADE TO THE RELEASED RECORDS

In the event this Court concludes that the Order is not in effect or otherwise has no legal relevance to the current pleadings, the Plaintiffs nonetheless respectfully submit that summary judgment still is not warranted at this time with respect to the various redactions and withholdings made to the responsive records processed and released by the Government.

### A. THERE IS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE REGARDING THE GOOD FAITH BASIS OF THE GOVERNMENT'S REDACTIONS AND WITHHOLDINGS

"The significance of agency affidavits in a FOIA case cannot be underestimated." King v. Dep't of Justice, 830 F.2d 210, 218 (D.C. Cir. 1987). The rationale behind this well-established axiom is clear and apparent given that in FOIA cases "the agency alone possesses knowledge of the precise content of documents withheld," thereby forcing both the FOIA requester and the court to "rely upon the agency's representations for an understanding of the material sought to be protected." Id. In order to withhold information an agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Id. at 219. Vague or conclusory explanations by the agency will not suffice. See also Church of Scientology, Inc. v. Turner, 662 F.2d 784, 787 (D.C. Cir. 1980)("We have consistently

maintained that vague, conclusory affidavits, or those that merely paraphrase the words

of a statute, do not allow a reviewing judge to safeguard the public's right of access to

government records."). Rather, specificity is paramount. <u>See</u> <u>Gardels v. CIA</u>, 689 F.2d

1100, 1105 (D.C. Cir. 1982).

The burden of demonstrating that the material in question was properly withheld

commonly requires the preparation of a detailed <u>Vaughn</u> Index, which must "show

specifically and clearly that the requested materials fall into the category of documents"

that Congress has exempted. <u>Hayden v. NSA</u>, 608 F.2d 1381, 1390 (D.C. Cir. 1979); <u>see</u>

<u>also</u> <u>PHE, Inc. v. Dep't of Justice</u>, 983 F.2d 248, 250 (D.C. Cir. 1993)("[A]n affidavit

that contains merely a 'categorical description of redacted material coupled with a

categorical indication of anticipated consequences of disclosure is clearly inadequate.'"),

quoting <u>King</u>, 830 F.2d at 224; <u>King</u>, 830 F.2d at 225 ("The measure of a <u>Vaughn</u> Index

is its descriptive accuracy, and we are willing to accept innovations in its form so long,

but only so long, as they contribute to that end.").

In its pleadings, the Government laid out its arguments and justifications for why

redactions and withholdings relying upon Exemptions 1, 3, 6 and 7 should be upheld by

this Court. <u>See</u> Def's Memo at 15-32. However, despite having been put on notice by the

Plaintiffs, <u>see</u> Dkt. #36 (joint status report)(filed July 24, 2018), the Government made no

effort to proactively address the "bad faith" suggestions made by President Trump in the

wake of the release of responsive records in this FOIA action.

Summary judgment may not be warranted when an agency's declaration is

contradicted by evidence of possible agency bad faith. <u>See</u> <u>DiBacco v. Army</u>, 795 F.3d

178, 196 (D.C. Cir. 2015); <u>see also</u> <u>Davidson v. Dep't of State</u>, 206 F. Supp. 3d 178, 202

(D.D.C. 2016)(allegations of bad faith can place the credibility of an agency declaration in doubt and warrant further evidentiary inquiry). To be sure, an earnestly held but mistaken view of the law typically (but not exclusively) will not ultimately suffice to demonstrate agency bad faith *on the merits*. See Hall & Assocs. LLC v. EPA, 315 F. Supp. 3d 519, 545 (D.D.C. 2018). However, for the purpose of resolving the initial indication of a material fact in dispute, evidence of wrongdoing or bad faith can suffice to justify limited discovery. See Landmark Legal Found. v. EPA, 959 F. Supp. 2d 175, 184 (D.D.C. 2013)(authorizing limited discovery to resolve possible factual questions of possible bad faith by agency in how it conducted searches for records).

In the present case, the Plaintiffs can more than sufficiently demonstrate the existence of evidence coming from the highest government authority – namely, President Trump – casting doubt on the good faith bases for the redactions and withholdings made by the Government.

Within 48 hours of the public disclosure of the responsive records in this action, President Trump described the specific redactions in the records as "ridiculous" and repeated remarks claiming that the classified redactions in particular were done to "…[c]over up misconduct by the FBI and the Justice Department in misleading the Court …". *https://twitter.com/realDonaldTrump/status/1020978929 736265729* (last accessed October 23, 2018); *https://twitter.com/realDonaldTrump/ status/10213472300 22807552* (last accessed October 23, 2018). President Trump subsequently issued the Order that stated he was directly overriding the specific redaction determinations in the Pages, *https://www.whitehouse.gov/briefings-statements/statement-press-secretary-34/*

(last accessed October 22, 2018), and has since stated that the OIG is conducting a review of an unspecified set of the records. *https://www.vox.com/2018/9/21/17886720/trump-russia-declassification-order-tweets-mueller* (last accessed October 22, 2018).

To the best of the undersigned's knowledge, there is no precedent for a sitting President of the United States to so publicly question the good faith bases for redactions and withholdings put in place by his own Executive Branch agencies in a FOIA action. This reality requires this Court to look for guidance from a similar legal dilemma faced by the judiciary in the era of President Trump with respect to how much value to apply to the president's public commentary.

The U.S. Supreme Court recently expressed a willingness to consider the relevance and materiality of official presidential statements that conflict with the legal justifications separately made by the Executive Branch to support policy determinations. See Trump v. Hawaii, 2018 U.S. LEXIS 4026, *55 (U.S. June 26, 2018). Although the Supreme Court ultimately upheld the policy at issue in that litigation – President Trump's travel ban, commonly referred to as the "Muslim ban" – it did so only after determining that the Government had sufficiently demonstrated through the written record that the policy's formulation and implementation was facially legitimate irrespective of President Trump's separate inflammatory rhetoric and commentary. See id., 2018 U.S. LEXIS 4026 at *53, *57 (referencing multi-agency review process that developed "Muslim ban").

The Trump ruling could serve as a roadmap for this Court in the present case. The sufficiency of factual evidence that existed in Trump does not currently exist in an analogous fashion to the present FOIA action. The Government has provided no evidence to rebut or otherwise address the official statements by President Trump decrying the

redactions as "ridiculous". Nor has the Government provided evidence to rebut President

Trump's suggestion that political bias (not facially legitimate national security and policy

considerations) served as the justification for the redaction and withholding

determinations. The Government has similarly provided no evidence to address the

relevance of the OIG's apparent ongoing review of the appropriateness of the redactions

and withholdings. All three of these factors are relevant evidentiary considerations that

conflict with and contradict the good faith bases for the Government's redaction and

withholdings. Moss Decl. at ¶10.

It may come to pass that the Government can ultimately demonstrate that the

redactions and withholding determinations were done properly and independent of any

perceived political bias that would undermine the presumptive good faith bases for the

Government's actions. Until the factual dispute underlying that issue has been resolved,

however, summary judgment is not yet warranted for the Government.

## B.  THE PLAINTIFFS HAVE PROVIDED A PRIVACY WAIVER FROM CARTER PAGE THAT WARRANTS RECONSIDERATION OF APPLICABLE PRIVACY REDACTIONS

In its Motion, the Government notes that it redacted "certain personal information"

about Page that was contained in the responsive records. See Def's Memo at 29-30. The

Government relied upon FOIA Exemptions 6 and 7(C) as the legal bases for these

redactions. Id.

Privacy redactions can be overcome if a FOIA requester can do one of the following:

(1) provide proof of death; (2) demonstrate an overriding public interest in disclosure of

the responsive records; or (3) provide a privacy waiver from the third party. See Graff v.

FBI, 822 F. Supp. 2d 23, 36-37 (D.D.C. 2011). Upon review of the Motion, the Plaintiffs

secured a signed privacy waiver from Mr. Page and provided it to Government counsel.

Moss Decl. at ¶13.

Accordingly, summary judgment is not currently warranted for the Government with

respect to these particular privacy redactions and should be denied without prejudice.

### C.  THERE IS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE REGARDING THE EXTENT TO WHICH THE GOVERNMENT HAS MET ITS SEGREGABILITY OBLIGATIONS

The Plaintiffs further submit that the Government has not sufficiently demonstrated it

complied with FOIA's segregability requirements. At a minimum, the Plaintiffs

respectfully requests that this Court conduct an *in camera* review of at least a random

sampling (if not the entirety) of the 598 pages at issue to satisfy for itself that the

segregability requirements have been met as a matter of law.

The requirement regarding segregability obligates agencies to divulge all portions of

documents that are not specifically exempted by statute from disclosure. See Kimberlin v.

Dep't of Justice, 139 F.3d 944, 950 (D.C. Cir. 1998), cert. denied, 525 U.S. 891 (1998).

"The agency is 'entitled to a presumption that [it] complied with the obligation to

disclose reasonably segregable material,' but that does not excuse the agency from

carrying its evidentiary burden to fully explain its decisions on segregability."

100Reporters LLC v. Dep't of Justice, 248 F. Supp. 3d 115, 165 (D.D.C. 2017),

quoting Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013)(alteration in original);

see also Sheridan v. Office of Pers. Mgmt., 278 F. Supp. 3d 11, 20 (D.D.C. 2017)

(requiring agencies to provide a "detailed justification" for non-segregability).

In making a determination as to segregabilty, a district court judge may examine the contents of agency records *in camera*. See 100Reporters LLC, 248 F. Supp. 3d at 166. "The decision whether to perform *in camera* inspection is left to the 'broad discretion of the trial court judge.'" Lam Lek Chong v. DEA, 929 F.2d 729, 735 (D.C. Cir. 1991).

The Government has provided little beyond standard, boilerplate assertions that a document-by-document and line-by-line review was conducted and that no reasonably segregable non-exempt information could be released. See Hardy Decl. at ¶134. The courts have expressed skepticism at such conclusory claims in the past and have been hesitant to accept such attestations without additional information. See Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977) ("[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts."); see also Roseberry-Andrews v. Dep't of Homeland Sec., 299 F. Supp. 3d 9, 34 (D.D.C. 2018) (finding conclusory claims regarding segregability to be insufficient); Am. Immigration Council v. Dep't of Homeland Sec., 950 F. Supp. 2d 221, 248 (D.D.C. 2013)(finding similar conclusory language insufficient).

Absent additional clarifying details, the Plaintiffs respectfully submit that at least some measure of *in camera* review by this Court is warranted prior to rendering a determination on the Defendant's Motion. See Moss Decl. at ¶¶15-16.

## CONCLUSION

For the foregoing reasons, DOJ's Motion for Summary Judgment should be denied in part and the Plaintiffs' Cross-Motion for Partial Summary Judgment should be granted.

Date: November 9, 2018

Respectfully submitted,

/s/

_____

Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for the Plaintiffs

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                        |     |                                |
|----------------------------------------|-----|--------------------------------|
|                                        | *   |                                |
| THE JAMES MADISON PROJECT,             | *   |                                |
| <u>et al.</u>,                         | *   |                                |
|                                        | *   |                                |
|     Plaintiffs,    | *   |                                |
|                                        | *   |                                |
|     v.             | *   | Civil Action No. 17-597 (APM)  |
|                                        | *   |                                |
| DEPARTMENT OF JUSTICE,                 | *   |                                |
|                                        | *   |                                |
|     Defendant.     | *   |                                |
|                                        | *   |                                |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>RULE 56(d) DECLARATION OF BRADLEY P. MOSS, ESQ.</u>

The undersigned hereby declares as follows:

1.   I am a person over eighteen (18) years of age and competent to testify. I am making this Declaration on personal knowledge. This Declaration is submitted in support of the Plaintiffs' Cross-Motion for Partial Summary Judgment, as well as in support of the Memorandum of Points and Authorities in Opposition to the Defendant's Motion for Summary Judgment.

2.   I am one of the attorneys for the plaintiffs The James Madison Project and Brad Heath (hereinafter referred to collectively as the "Plaintiffs") in this matter, along with my firm's Managing Partner, Mark S. Zaid ("Mr. Zaid"). I am admitted to practice law in the State of Illinois and the District of Columbia, as well as the U.S. Court of Appeals for the D.C. Circuit and the United States District Courts for the District of Columbia, District of Maryland and the Northern District of Illinois. I have been litigating cases involving the federal government, including with respect to the Freedom of Information Act ("FOIA"), since 2007. I also actively represent individuals associated with or within

the intelligence, law enforcement or military communities in administrative proceedings. Both Mr. Zaid and I hold U.S. Government security clearances, granted by the Department of Justice, for the purpose of representing specific clients, some of whose affiliation to the U.S. Government is a classified fact.

*The Declassification Order*

3.    On September 17, 2018, President Donald J. Trump ("President Trump") exercised his constitutional authority to order the immediate declassification of twenty-one specific pages ("the Pages") from the 412-page production of FISA records released in this litigation and that relate to Carter W. Page ("Mr. Page"). *https://www.white house.gov/briefings-statements/statement-press-secretary-34/* (last accessed October 22, 2018). The Pages are derived from the June 2017 FISC application regarding Mr. Page.

4.    Since the issuance of the declassification order (the "Order"), neither President Trump nor any authorized U.S. Government official have made public, official statements indicating that the Order no longer remains in effect.

5.    President Trump did issue a two-part tweet on September 21, 2018, in which he stated that the Department of Justice had agreed to release an unspecified number of documents subject to the Order. President Trump further noted, however, that due to concerns raised about the "Russia probe" and by unidentified "Allies", he was asking the Inspector General ("OIG") to review an unspecified set of documents on an expedited basis. *https://www.vox.com/2018/9/21/17886720/trump-russia-declassification-order-tweets-mueller* (last accessed October 22, 2018).

6.   There is no evidence in the written record demonstrating that the documents at issue in the two-part tweet on September 21, 2018, overlap with the Pages subject to the Order. Nowhere within the four corners of the two supporting declarations submitted by DOJ in support of its Motion for Summary Judgment, <u>see</u> Dkt. #40-1; Dkt. #40-3, is there any reference to any documentation or authoritative sources of information indicating that the Order no longer remains in effect. The entirety of the evidence supporting DOJ's contention that the Order is not currently in effect consists merely of President Trump's two-part tweet on September 21, 2018.

7.   At a minimum, the Plaintiffs have provided more than sufficient evidence of a genuine issue of material fact in dispute regarding whether the Order remains in effect, particularly with respect to the Pages. Supplemental information – whether through additional agency declarations or limited discovery – is necessary to address the following questions: (a) has President Trump (or his appropriate designee) specifically informed the appropriate DOJ officials – whether in writing or verbally – that the Order can be considered as rescinded or otherwise postponed with respect to the Pages; (b) does the OIG's review encompass the appropriateness of the redactions made in the Pages and, if so, what is the timeframe for a completion of that review; and (c) if President Trump (or his appropriate designee) has not specifically given instructions that the Order can considered as rescinded or otherwise postponed, and the OIG's review does not encompass the Pages, upon what basis is DOJ concluding that the Order remains in effect with respect to the Pages?

*Good Faith Basis for Redactions and Withholdings*

8.   DOJ provided two sworn declarations in support of their Motion for Summary Judgment. See Dkt. #40-1; Dkt. #40-3. The Third Declaration of David M. Hardy ("Hardy Declaration") specifically addressed the justifications for the redactions and withholdings made to the 598 pages of responsive records. Dkt. #40-1.

9.   In a status report filed with this Court four months ago, see Dkt. #36 (filed July 24, 2018), the Plaintiffs notified DOJ that the Plaintiffs intended to challenge the good faith basis of the redactions and withholdings. Specifically, the Plaintiffs indicated they would raise before this Court the question of whether the President's public disparagement of the legitimacy of the redactions and withholdings sufficiently undermined the good faith justifications otherwise put forth by the Government. Despite that advance warning, the Hardy Declaration makes no reference to this issue at all. The Hardy Declaration similarly makes no reference to the relevance of President Trump's subsequent further actions questioning the legitimacy of the redactions and withholdings, namely the issuance of the Order and the subsequent initiation of an "expedited review" by the OIG.

10. By themselves, the President's official statements and official actions raise a genuine issue of material fact in dispute regarding the good faith basis for DOJ's redactions and withholdings. What evidence can DOJ provide to specifically rebut President Trump's description of the redactions as "ridiculous"? What evidence can DOJ provide to specifically counter President Trump's promotion of commentary stating that the redactions and withholdings are due to political bias, particularly in light of the "expedited review" that President Trump has since ordered to be conducted by the OIG?

11. At a minimum, additional clarification is needed from DOJ addressing these questions before this Court can conclude that summary judgment is warranted in favor of DOJ.

*The Carter Page Privacy Redactions*

12. At various points in the responsive records released as part of this litigation, the Government redacted what it has identified as "certain personal information" regarding Page in reliance upon privacy FOIA Exemptions 6 and 7(C).

13. The undersigned coordinated with Page's private counsel and secured an executed privacy waiver from Page waiving his rights with respect to the redaction of that "certain personal information". The undersigned has provided Government counsel with that privacy waiver.

*Segregability*

14. The Plaintiffs respectfully submit that the Hardy Declaration's language regarding segregability is too conclusory and lacking in detail. The Hardy Declaration provides this Court with nothing more than boilerplate language stating that no reasonably segregable non-exempt information could be released. These types of boilerplate descriptions have been viewed skeptically by courts in the past and should be done so here as well.

15. Of particular significance is the complete withholding of 186 pages of responsive records, including the minimization orders that would have accompanied each of the four FISC applications produced in part by DOJ as part of this litigation. Is DOJ truly arguing that no part of those minimization orders can be released in part? It may be the case that the DOJ's argument can eventually meet the legal threshold to answer that question in the affirmative but, in its current form, the Hardy Declaration simply fails to meet the

requisite evidentiary burden.

16. At a minimum, given the unprecedented nature of the release of the responsive records and the uncharted territory in which all parties reside in this litigation, it would be a reasonable exercise of this Court's discretion to conduct an *in camera* review of a sampling (if not the entirety) of the 186 pages of withheld records, as well as at least a sampling of the redactions in one or more of the released FISC applications.

I do solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge.

Date:   November 9, 2018

Bradley P. Moss, Esq.

6

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | * | |
| THE JAMES MADISON PROJECT, | * | |
| et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 17-597 (APM) |
| | * | |
| DEPARTMENT OF JUSTICE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS IN**
**SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7.1 (h), the plaintiffs The James Madison Project and

Brad Heath (referred to jointly as "Plaintiffs") respectfully respond to the defendant

Department of Justice's Statement of Material Facts in Support of Defendant's Motion

for Summary Judgment Statement.

1.   The Plaintiffs do not dispute the factual recitation of these statements except to

the extent that they do not reflect the entirety of what was stated in the relevant

documents, which speak for themselves. Dkt. #13-3, Exhibit "A"; Dkt. #40-3,

Exhibit "A".

2.   The Plaintiffs do not dispute the accuracy of this statement in terms of actions

taken by the defendant Department of Justice ("DOJ"), although the Plaintiffs do dispute

any underlying legal characterizations or conclusions regarding the appropriateness of the

substantive determinations reflected in the statement. The Plaintiffs believe the language

of the document speaks for itself. Dkt. #40-3, Exhibit "B".

3.   The Plaintiffs do not dispute the factual recitations of these statements except to the extent that they do not reflect the entirety of what was stated in the relevant document, which speaks for itself. Dkt. #40-3, Exhibit "C".

4.   The Plaintiffs do not dispute the accuracy of these statements in terms of actions taken by the DOJ, although the Plaintiffs do dispute any underlying legal characterizations or conclusions regarding the appropriateness of the substantive determinations reflected in the statement. <u>See</u> Dkt. #13-3, Exhibit "D".

5.   The Plaintiffs do not dispute these statements.

6.   The Plaintiffs do not dispute these statements.

7.   The Plaintiffs do not dispute these statements, except to the extent they contain legal conclusions or characterizations regarding the appropriateness of withholdings being challenged in this litigation.

8.   The Plaintiffs do not dispute these statements.

9.   The Plaintiffs do not dispute these statements.

10. The Plaintiffs do not dispute these statements.

11. The Plaintiffs do not dispute these statements, except to the extent they contain legal conclusions or characterizations regarding the adequacy of the Government's searches for records, the appropriateness of any redactions or withholdings, or the degree to which the Government met its segregability obligations.

12. No response is needed, as the Plaintiffs are conceding this particular argument with respect to the remaining Glomar responses.

13. No response is needed, as the Plaintiffs are conceding the legal adequacy of the searches conducted for responsive records.

14. The Plaintiffs do not dispute these statements.

15. The Plaintiffs do not dispute this statement.

16. The Plaintiffs dispute this statement, as it implicates legal conclusions that are being challenged in this litigation.

17. The Plaintiffs dispute this statement, as it implicates legal conclusions that are being challenged in this litigation.

18. The Plaintiffs dispute this statement, as it implicates legal conclusions that are being challenged in this litigation.

19. The Plaintiffs dispute these statements, as they implicate legal conclusions that are being challenged in this litigation.

20. The Plaintiffs dispute these statements, as they implicate legal conclusions that are being challenged in this litigation.

21. The Plaintiffs dispute this statement, as it implicates legal conclusions that are being challenged in this litigation.

22. The Plaintiffs do not dispute this statement.

23. The Plaintiffs dispute these statements, as they implicate legal conclusions that are being challenged in this litigation.

24. The Plaintiffs dispute these statements, as they implicate legal conclusions that are being challenged in this litigation.

25. The Plaintiffs dispute these statements, as they implicate legal conclusions that are being challenged in this litigation.

26. The Plaintiffs dispute these statements, as they implicate legal conclusions that are being challenged in this litigation.

27. The Plaintiffs dispute these statements, as they implicate legal conclusions that are being challenged in this litigation.

28. The Plaintiffs dispute these statements, as they implicate legal conclusions that are being challenged in this litigation.

29. No response is needed, as the Plaintiffs are conceding this particular argument with respect to the remaining Glomar responses.

30. No response is needed, as the Plaintiffs are conceding this particular argument with respect to the remaining Glomar responses.

31. No response is needed, as the Plaintiffs are conceding this particular argument with respect to the remaining Glomar responses.

32. No response is needed, as the Plaintiffs are conceding this particular argument with respect to the remaining Glomar responses.

33. No response is needed, as the Plaintiffs are conceding this particular argument with respect to the remaining Glomar responses.

34. No response is needed, as the Plaintiffs are conceding this particular argument with respect to the remaining Glomar responses.

35. No response is needed, as the Plaintiffs are conceding this particular argument with respect to the remaining Glomar responses.

36. No response is needed, as the Plaintiffs are conceding this particular argument with respect to the remaining Glomar responses.

37. No response is needed, as the Plaintiffs are conceding this particular argument with respect to the remaining Glomar responses.

38. No response is needed, as the Plaintiffs are conceding this particular argument with respect to the remaining Glomar responses.

39. The Plaintiffs dispute this statement.

Date:   November 9, 2018

Respectfully submitted,

/s/

_____
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | * | |
| THE JAMES MADISON PROJECT, | * | |
| et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 17-597 (APM) |
| | * | |
| DEPARTMENT OF JUSTICE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>ORDER</u>

Upon consideration of Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment, and the entire record herein, it is this _____ day of _____ 2018, hereby

ORDERED, that plaintiffs' Cross-Motion is granted; and

ORDERED, that defendant's Motion is denied in part.

_____

UNITED STATES DISTRICT JUDGE