**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE JAMES MADISON PROJECT, *et al.*,

Plaintiffs,

v.

DEPARTMENT OF JUSTICE,

Defendant.

No. 17-cv-00597-APM

DEFENDANT'S COMBINED MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REPLY IN
SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## **Table of Contents**

INTRODUCTION....................................................................................................................1

ARGUMENT .........................................................................................................................2

    I.    There is No Declassification Order Requiring Declassification and Disclosure of these Documents..............................................................................................................2

    II.    Discovery into Whether There is a Presidential Declassification Order is Not Appropriate.............................................................................................................5

    III.    The President's Tweets Following the Release of the Redacted Documents Do Not Create a Genuine Issue of Material Fact...................................................................8

    IV.    Carter Page's Privacy Waiver Does Not Require Additional Disclosures...................12

    V.    Defendant Has Disclosed All Reasonably Segregable Information. ...........................12

CONCLUSION.....................................................................................................................13

## Table of Authorities

**Cases**

*Am. Civil Liberties Union v. DOD*,
 628 F.3d 612 (D.C. Cir. 2011) ......................................................................13

*Baker & Hostetler LLP v. Dep't of Commerce*,
 473 F.3d 312 (D.C. Cir. 2006) ........................................................................ 8

*Cheney v. U.S. District Court for District of Columbia*,
 542 U.S. 367 (2004) ....................................................................................6, 7

*Clinton v. Jones*,
 520 U.S. 681 (1997) ....................................................................................... 7

*Dep't of Navy v. Egan*,
 484 U.S. 518 (1988) ....................................................................................... 2

*Dep't of State v. Ray*,
 502 U.S. 164 (1991) ....................................................................................... 8

*Hall v. CIA*,
 668 F. Supp. 2d 172 (D.D.C. 2009) ...............................................................12

*In re Sealed Case*,
 121 F.3d 729 (D.C. Cir. 1997) ........................................................................ 7

*In re Sealed Case*,
 856 F.2d 268 (D.C. Cir. 1988) ........................................................................ 8

*James Madison Project v. DOJ*,
 302 F. Supp. 3d 12 (D.D.C.) ......................................................................8, 10

*James Madison Project v. DOJ*,
 330 F. Supp. 3d 192 (D.D.C. 2018) ...............................................................11

*Juarez v. DOJ*,
 518 F.3d 54 (D.C. Cir. 2008) .........................................................................13

*Justice v. IRS*,
 798 F. Supp. 2d 43 (D.D.C. 2011) .................................................................. 5

*Landmark Legal Found. v. EPA,*
   959 F. Supp. 2d 175 (D.D.C. 2013) ......................................................................... 9

*Larson v. Dep't of State,*
   565 F.3d 857 (D.C. Cir. 2009) ...............................................................................13

*Military Audit Project, v. Casey,*
   656 F.2d 724 (D.C. Cir. 1981) ................................................................................. 6

*Nixon v. Fitzgerald,*
   457 U.S. 731 (1982) ................................................................................................. 7

*NY Times Co. v. CIA,*
   314 F. Supp. 3d 519 (S.D.N.Y. 2018) ..................................................................... 3

*Ocasio v. DOJ,*
   67 F. Supp. 3d 438 (D.D.C. 2014) ........................................................................... 6

*Quiñon v. FBI,*
   86 F.3d 1222 (DC Cir. 1996) ..................................................................................12

*Ray v. Turner,*
   587 F.2d 1187 (D.C.Cir.1978) ................................................................................12

*Re the City of New York,*
   607 F.3d 923 (2d Cir. 2010) .................................................................................... 8

*SafeCard Servs., Inc. v. SEC,*
   926 F.2d 1197 (D.C. Cir. 1991) ............................................................................... 8

*SAI v. TSA,*
   315 F. Supp. 3d 218 (D.D.C. 2018) ......................................................................... 6

*Schrecker v. DOJ,*
   217 F. Supp. 2d 29 (D.D.C. 2002) ........................................................................... 6

*United States v. Nixon,*
   418 U.S. 683 (1974) ................................................................................................. 7

*United States v. Reynolds,*
   345 U.S. 1 (1953) ..................................................................................................... 8

*Voinche v. FBI,*
   412 F. Supp. 2d 60 (D.D.C. 2006) ........................................................................... 6

## **Regulations**

E.O. 13,526,
   75 Fed. Reg. 707 (Dec. 29, 2009) ........................................................................... 2

## **Rules**

Fed. R. Civ. P. 56(c)(4) .......................................................................................... 5

Fed. R. Civ. P. 56(d) .............................................................................................. 5

## **Other Authorities**

FoxNews.com, *"All About Getting at Trump Campaign": Fitton Argues FBI Misled FISA Court
   on Carter Page Warrant* (July 23, 2018), http://insider.foxnews.com/2018/07/23/tom-fitton-
   carter-page-fisa-warrant-documents-fbi-doj-misled-court-target-trump.................................10

Mem. from the Att'y Gen. Re: Policies and Procedures Governing Invocation of the State Secrets
   Privilege (Sept. 23, 2009),
   http://www.justice.gov/opa/documents/state-secret-privileges.pdf...........................................8

Press Release, DOJ OIG Announces Initiation of Review (March 28, 2018),
   https://oig.justice.gov/press/2018/2018-03-28b.pdf.....................................................................4

Press Release, Statement from the Press Sec'y (Sept. 17, 2018),
   https://www.whitehouse.gov/briefings-statements/statement-press-secretary-34/....................3

https://twitter.com/realDonaldTrump/status/1043146627576258561..............................................4

https://twitter.com/realDonaldTrump/status/1043148165883416576..............................................4

https://twitter.com/realDonaldTrump/status/1020978929736265729..........................................10

https://twitter.com/realDonaldTrump/status/1021347230022807552..........................................10

https://vault.fbi.gov/d1-release/d1-release.......................................................................................5

**INTRODUCTION**

Plaintiffs concede the propriety of Defendant's partial Glomar response and provide no challenge to the factual and legal basis for redaction of the processed Carter Page FISA applications and orders. These concessions are both unsurprising and necessary, given the acknowledged and appropriate secrecy surrounding FISA matters and an ongoing national security investigation.

Plaintiffs instead argue that, regardless of whether the redactions and withholdings are otherwise proper, subsequent statements from the White House cast some doubt on the propriety of the withholdings. First, Plaintiffs argue that a statement of the White House Press Secretary constitutes a Presidential "order" to declassify twenty-one pages of the Carter Page documents, and that the subsequent statements by the President (via Twitter) saying otherwise somehow create a material issue of fact. This is simply not the case, and mis-reads both the press release and the tweets. There is no presidential declassification order, and the President has publicly indicated that he is not requiring declassification at this time, much less full disclosure. Second, Plaintiffs point to additional tweets from the President that they claim cast doubt on the "good faith basis" for Defendant's FOIA redactions. Defendant's sworn declarations are entitled to a presumption of good faith. Moreover, they are based on the review of personnel with personal knowledge of the documents and matters at issue and are not overcome by Plaintiff's speculation about the intended meaning of and basis for tweets by the President.

Plaintiffs also argue that they are entitled to additional information in light of a privacy waiver obtained from Mr. Page. Because of that waiver, Defendant is no longer relying on the privacy-based exemptions applicable to Page's private information. However, as defense counsel explained to Plaintiffs prior to their filing, as appears on the coded redactions, and as

1

Defendant has now confirmed in a supplemental declaration, all of the redactions of Mr. Page's private information are also protected by other exemptions, and thus no further disclosures are appropriate.

Finally, in light of these faulty legal arguments, Plaintiffs argue that Defendant's segregability analysis is somehow inadequate. In fact, the record shows that Defendant personnel carefully and exhaustively reviewed the documents, segregating releasable material whenever possible. The FBI declarant provided specific reasons for the redactions based on both personal knowledge and information provided in his official capacity. *In camera* review is neither required nor advisable under these circumstances.

## ARGUMENT

### I.      There is No Declassification Order Requiring Declassification and Disclosure of these Documents.

The President has the authority to declassify documents that are otherwise currently and properly classified. *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988) ("The President, after all, is the 'Commander in Chief of the Army and Navy of the United States.' U.S. Const., Art. II, § 2. His authority to classify and control access to information bearing on national security . . . flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant."); *cf*. E.O. 13,526 § 3.1(d), 75 Fed. Reg. 707, 713 (Dec. 29, 2009) (authorizing agency officials to declassify otherwise properly classified information in the public interest on a discretionary basis).

Plaintiffs argue that the President exercised this authority to declassify portions of the Carter Page documents based on a statement of the White House Press Secretary that "the President has directed the Office of the Director of National Intelligence and the Department of Justice (including the FBI) to provide for the immediate declassification of . . . pages 10-12 and

17-34 of the June 2017 application to the FISA court in the matter of Carter W. Page" (as well as certain other documents, not at issue in this case, related to the investigation into Russian election interference). Pls.' Opp'n to Def.'s Mot. For Summ. J. ("Pls.' brief") at 4, ECF No. 42, citing Press Release, Statement from the Press Sec'y (Sept. 17, 2018), https://www.whitehouse.gov/briefings-statements/statement-press-secretary-34/. Plaintiffs presumptively and repeatedly refer to this press release, which they fail to quote, as an "order," Pls.' brief at 4-5, but it is, indisputably, a statement from the press secretary, not an order from the President. Plaintiffs have pointed to no other order declassifying the pages at issue, and DOJ is not aware of any order that either declassified the pages at issue or directed declassification of them. *See NY Times Co. v. CIA*, 314 F. Supp. 3d 519, 528 (S.D.N.Y. 2018) ("absent an unequivocal statement of declassification from the President or exceptional circumstances that are not present here, the Court will not infer whether the President's statements have the legal effect of declassifying information"). The Court should not infer its existence, especially when the President is quite capable of making his intentions clear if he chooses to declassify information.

The press secretary statement is also ambiguous as to what the President may have directed. The press secretary statement does not indicate that the President was exercising his personal Constitutional authority to declassify specific information. Rather, it indicates that the President directed DOJ and ODNI to "provide for" the declassification of certain documents, suggesting that the documents were not directly declassified by order of the President.

Whatever was intended by the Press Secretary's announcement, the President made clear on September 21, 2018 that he had not ordered the documents declassified. As Plaintiffs concede, the President's twitter account stated that:

> I met with the DOJ concerning the declassification of various UNREDACTED documents. They agreed to release them but stated that so doing may have a perceived negative impact on the Russia probe. Also, key Allies' called to ask not to release. Therefore, the Inspector General.....

https://twitter.com/realDonaldTrump/status/1043146627576258561.

> ....has been asked to review these documents on an expedited basis. I believe he will move quickly on this (and hopefully other things which he is looking at). In the end I can always declassify if it proves necessary. Speed is very important to me - and everyone!

https://twitter.com/realDonaldTrump/status/1043148165883416576.   These tweets are ambiguous in a number of respects, and do not precisely identify which documents related to the Russia probe are at issue.  But the tweets are crystal clear that the President had not declassified the documents related to the Russia probe at the time of the tweets and was not directing their immediate declassification.   In the tweets, the President states that "in the end I can always declassify if it proves necessary."  Regardless of the lack of clarity about which documents are at issue, *see* Pls.' brief at 7, the President's statement about deferring the declassification decision is unambiguous, and Plaintiffs have no response to it.[1]

Instead, Plaintiffs hang their hat on the tweets' statement that DOJ "agreed to release" the "unredacted documents."  Plaintiffs are wrong that this "unequivocally demonstrates that DOJ has informed President Trump that any redactions will be removed."  Pls.' brief at 5.  In fact, the statement is on its face equivocal, because it says that DOJ also told the President that release "may have a perceived negative impact on the Russia probe."  Nor does the statement indicate under what circumstances or conditions DOJ "agreed to release" documents.

---

[1] The ongoing OIG investigation encompassed "the Justice Department's and the Federal Bureau of Investigation's (FBI) compliance with legal requirements, and with applicable DOJ and FBI policies and procedures, in applications filed with the U.S. Foreign Intelligence Surveillance Court (FISC) relating to a certain U.S. person."  Press Release, DOJ OIG Announces Initiation of Review (March 28, 2018), https://oig.justice.gov/press/2018/2018-03-28b.pdf.

Finally, and perhaps most importantly, even if Plaintiffs are correct that the Press Secretary had issued a "declassification order" and that the President never rescinded that "order" via the tweets, the "order" still would not require additional disclosures under FOIA. That is because all of the redactions on the referenced pages are taken pursuant to other exemptions as well. A review of the coded redactions shows that not a single redaction on those pages was taken solely on the basis of Exemption One. *See* https://vault.fbi.gov/d1-release/d1-release (at pp. 301-03, 308-25).

## II.    Discovery into Whether There is a Presidential Declassification Order is Not Appropriate.

As demonstrated above, there is no presidential declassification order requiring declassification and disclosure of certain of the Carter Page FISA application pages. Thus, there is no genuine issue of material fact requiring discovery. *See* Pls.' brief at 8-10. Plaintiffs explicitly seek discovery into communications between the President and DOJ regarding whether "the Order can be considered as rescinded or otherwise postponed"; the scope and timing of the OIG's review; and other bases for DOJ's position in this matter. *Id.* at 9; Rule 56(d) Decl. of Bradley Moss, at ¶ 7, ECF No. 41-1.[2]   Not only is there is no dispute of material fact to justify this discovery, it would be inappropriate for numerous other reasons.

As Plaintiffs concede, discovery is generally inappropriate in FOIA cases. *See, e.g., Justice v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011), aff'd, 485 F. App'x 439 (D.C. Cir. 2012)

---

[2] Plaintiffs submit what purports to be a declaration from counsel under Rule 56(d), ostensibly to show that Plaintiffs "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Defendant does not dispute the content of the various cited public statements, considered in their full context. Much of the declaration contains purely legal conclusions on matters about which counsel has no basis for knowledge and is not competent to testify. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

("In FOIA actions, however, discovery is disfavored."); *Schrecker v. DOJ*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003) ("Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed [and] submitted in good faith and [where] the court is satisfied that no factual dispute remains."); *SAI v. TSA*, 315 F. Supp. 3d 218, 257 (D.D.C. 2018) (same). "Courts permit discovery in FOIA cases where a plaintiff has made a sufficient showing that the agency acted in bad faith." *Ocasio v. DOJ*, 67 F. Supp. 3d 438, 440 (D.D.C. 2014) (citation omitted). "When allowed, the scope of discovery is usually limited to the adequacy of the agency's search and similar matters." *Voinche v. FBI*, 412 F. Supp. 2d 60, 71 (D.D.C. 2006). Discovery is not warranted "when it appears that discovery would only ... [afford the plaintiff] an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits." *Military Audit Project*, v. *Casey*, 656 F.2d 724, 751–52 (D.C. Cir. 1981) (internal quotations omitted). Plaintiffs claim no bad faith with respect to whether there is a presidential declassification order.

In addition, the discovery Plaintiffs seek would potentially violate separation of powers principles and implicate the presidential communications privilege. The Supreme Court has made clear that discovery directed to the President or his advisers in civil litigation, raises significant separation of powers concerns and should be strictly circumscribed. In *Cheney v. U.S. District Court for District of Columbia*, 542 U.S. 367 (2004), where the discovery requests were directed to the Vice President and other senior officials of the Executive Branch who gave advice and made recommendations to the President, the Court emphasized that "special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." *Id*. at 385. The Supreme Court "has held, on more than one occasion, that '[t]he high[est] respect that is

owed to the office of the Chief Executive … is a matter that should inform the conduct of the

entire proceeding, including the timing and scope of discovery . . . .'" *Id.* (quoting *Clinton v.

Jones*, 520 U.S. 681, 707 (1997)).   Further, the Court has held that the Executive's

"constitutional responsibilities and status [are] factors counseling judicial deference and restraint

in the conduct of the litigation against it." *Id.* (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 753

(1982)).

　　　　Discovery aimed at uncovering the substance of communications between the President

and his advisors, as Plaintiffs expressly seek, is subject to the presidential communications

privilege.   The "presumptive privilege" that attaches to presidential communications is

"fundamental to the operation of Government and inextricably rooted in the separation of powers

under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974)*; see In re Sealed Case*,

121 F.3d 729, 743 (D.C. Cir. 1997) (describing the privilege's "constitutional origins").   The

privilege is broad, protecting the "confidentiality of Presidential communications in performance

of the President's responsibilities . . . ." *Nixon*, 418 U.S. at 711; *see also In re Sealed Case*, 121

F.3d at 744 ("The *Nixon* cases establish the contours of the presidential communications

privilege.  The President can invoke the privilege when asked to produce documents or other

materials that reflect presidential decisionmaking and deliberations . . . .").  Documents subject

to the presidential communications privilege are shielded in their entirety, and the privilege

"covers final and post-decisional materials as well as pre-deliberative ones." *In re Sealed Case,*

121 F.3d 745.  Here, information Plaintiffs seek about deliberations and communications

involving the President regarding potential declassification and disclosure of the documents at issue would likely be subject to the presidential communications privilege.[3]

### III.   The President's Tweets Following the Release of the Redacted Documents Do Not Create a Genuine Issue of Material Fact.

Plaintiffs also argue that two statements by the President on Twitter, issued after the government released the redacted Carter Page FISA materials, create a genuine issue of material fact about the good faith of the government's declarations. Pls.' brief at 12-14. This argument is meritless and should be rejected.

Generally speaking, in FOIA as elsewhere, there is a presumption of good faith and regularity in official conduct. *Dep't of State v. Ray*, 502 U.S. 164, 179 (1991) ("We generally accord Government records and official conduct a presumption of legitimacy."); *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (finding that allegations of misconduct were insufficient to defeat summary judgment); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (holding that agency search affidavits "are accorded a presumption of good faith . . . ."); *James Madison Project v. DOJ*, 302 F. Supp. 3d 12, 32 (D.D.C.), *reconsideration denied in part*, 320 F. Supp. 3d 143 (D.D.C. 2018) ("Applying the presumption is most appropriate where a government official or entity conducts official acts in the manner provided by statute, regulation, or policy. For example, agencies are presumed to

---

[3] To the extent Plaintiffs were to seek discovery about the ongoing national security investigation or the classified bases for specific redactions, discovery in this matter could also require the invocation of the state secrets privilege and/or the law enforcement privilege. *See, e.g., United States v. Reynolds*, 345 U.S. 1 (1953) (state secrets privilege); Mem. from the Att'y Gen. Re: Policies and Procedures Governing Invocation of the State Secrets Privilege (Sept. 23, 2009), http://www.justice.gov/opa/documents/state-secret-privileges.pdf; *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988) (law enforcement privilege); *Re the City of New York*, 607 F.3d 923, 936-37 (2d Cir. 2010) (law enforcement privilege).

comply with their FOIA obligation to disclose reasonably segregable material, and to properly produce and process government documents . . . .").

Plaintiffs have put forward no information sufficient to overcome this presumption with respect to the government's declarations. They have not challenged any statement in the Hardy or Findlay declarations and have put forward no substantive information or legal argument suggesting that the facts and analysis in those declarations are incorrect or misleading. They have pointed to no statement in the declarations that may be the result of misconduct, and it does not appear that they actually believe that there was misconduct. Rather, Plaintiffs have wholly conceded the applicability of the government's claimed exemptions in general. Plaintiffs cannot therefore manufacture an issue of material fact as to the processing in general by relying on generalized, vague allegations of misconduct based on no personal knowledge.[4]

Moreover, the tweets cited by Plaintiffs do not create an issue of material fact as to the good faith of the government declarations and redactions. The President made a series of posts on Twitter on July 22 and 23 of this year related to Carter Page and/or the investigation into Russian election interference. Plaintiffs partially quote two of these tweets. On July 22, 2018, a post states:

> Congratulations to @JudicialWatch and @TomFitton on being successful in getting the Carter Page FISA documents. As usual they are ridiculously

---

[4] This is in stark contrast to the cases cited by Plaintiffs. In *Landmark Legal Found. v. EPA*, 959 F. Supp. 2d 175 (D.D.C. 2013), for example, the court found some evidence of bad faith in the agency's alleged efforts to evade FOIA by construing the request narrowly and not searching certain personal email accounts. Even assuming that ruling was correct, it was based on specific facts before the court – the use of personal email accounts and the scope of the search – and the remedy was discovery into those specific questions to resolve a specific disputed legal issue – the adequacy of the search. Plaintiffs in this matter have not identified any specific issue of fact or law with respect to the declaration and apparently seek unspecified further factual development regarding highly sensitive classified national security and law enforcement matters, based on a non-specific tweet.

> heavily redacted but confirm with little doubt that the Department of
> "Justice" and FBI misled the courts. Witch Hunt Rigged, a Scam!

https://twitter.com/realDonaldTrump/status/1020978929736265729.   On it its face, this tweet

does not suggest any misconduct in the redactions; the general statement that the redactions are

"heavy" and somehow "ridiculous" is not an accusation of bad faith or misconduct.   And it is not

a statement of fact at all.   As explained in the Hardy Declaration, FISA matters and national

security investigations necessarily involve government secrecy, and these applications contain a

significant amount of properly classified and otherwise sensitive material.   Third Decl. of David

Hardy ("Hardy Decl.") ¶¶ 13, 25, 35, ECF No 40-1.

On July 23, 2018, another post reads:

> "It was classified to cover up misconduct by the FBI and the Justice
> Department in misleading the Court by using this Dossier in a dishonest
> way to gain a warrant to target the Trump Team. This is a Clinton
> Campaign document. It was a fraud and a hoax designed to target Trump....

https://twitter.com/realDonaldTrump/status/1021347230022807552.   Plaintiffs ignore the

opening quotation mark included in the tweet, as well as the President's reference to himself in

the third person, and assume this is a statement directly from the President.   In fact, it appears to

be a (partially condensed) quotation from Tom Fitton of Judicial Watch, who was simultaneously

appearing on television that morning to promote further declassification of the documents (and

its lawsuit seeking these documents).   *See* FoxNews.com, *"All About Getting at Trump*

*Campaign": Fitton Argues FBI Misled FISA Court on Carter Page Warrant* (July 23, 2018),

http://insider.foxnews.com/2018/07/23/tom-fitton-carter-page-fisa-warrant-documents-fbi-doj-
misled-court-target-trump.   The President's quotation of media reporting cannot be assumed to

be his confirmation of the media reporting based on government information, and it is not

evidence of government misconduct in this case.   *See James Madison Project*, 302 F. Supp. 3d at

34 ("the President's statements may very well be based on media reports or his own personal knowledge, or could simply be viewed as political statements intended to counter media accounts about the Russia investigation, rather than assertions of pure fact."); *James Madison Project v. DOJ*, 330 F. Supp. 3d 192 (D.D.C. 2018) (finding that the President's retweet of media speculation was not a waiver under the official acknowledgement doctrine). Plaintiffs have pointed to no evidence establishing that the President was vouching for the wholesale accuracy of the statement he was quoting, or that he was commenting based on personal knowledge of the documents or based on personal knowledge of agency conduct. There is no evidence that he was formally overruling agency determinations via tweeted quotation of Fox & Friends. That would, indeed, be an extraordinary inference and is not warranted by the evidence.

Moreover, in context, it appears that Fitton may have been referring to the original classification of the documents as being somehow illegitimate. He is incorrect to suppose that the documents were classified to cover up misconduct; on the contrary, the declaration establishes that *all* FISA applications are classified, *see* Hardy Decl. ¶ 13, and when a declassification review was conducted, portions of the documents were determined to remain classified to prevent harm to national security and investigative interests, *id.* ¶¶ 25, 67. A tweet, quoting media reports based on speculation about FISA matters, cannot overcome the presumption of regularity and the detailed, thoughtful, sworn declarations submitted in this case.

Plaintiffs lean heavily on the entirely irrelevant opinion in the travel ban case, in which the President's statements were supposedly direct evidence of *the President's motivations* in issuing an executive order. Pls.' brief at 13-14. But the President's motivations are not at issue here – the issue Plaintiffs raised has to do with the agency's good faith and whether the agency has properly applied redactions. Contrary to Plaintiffs' argument, there is an ample, detailed

11

factual record before the Court as to how the agency reached its conclusions, not contradicted by any other evidence in the record.[5]

## IV. Carter Page's Privacy Waiver Does Not Require Additional Disclosures.

FBI received a privacy waiver from Carter Page that would permit release of his private information if no other exemptions applied. As confirmed in the Declaration of Michael Seidel, attached, DOJ is no longer asserting Exemptions 6 or 7(C) over that information, but all such information under redactions is also covered by other exemptions.

## V. Defendant Has Disclosed All Reasonably Segregable Information.

Plaintiffs make no effort whatsoever to find defects in the lengthy, substantive declaration provided by David Hardy on the redacted Carter Page documents but complain generally that the segregability analysis is "standard, boilerplate" and "conclusory." Pls.' brief at 16. In fact, the redactions and withholdings are carefully coded on the documents and categorized, described and explained in the declaration. And Mr. Hardy additionally declared that FOIA personnel conducted an exhaustive segregability analysis, taking into account public information, in order to properly apply redactions and release segregable material. This is all that can possibly be required. *See* Defs.' 2nd Mot. for Summ. J., at 30-32, ECF No. 40.

Plaintiffs' alternative request for in camera review should be denied. Although district courts may, at their discretion, examine agency records *in camera*, "*in camera* review should not be resorted to as a matter of course . . . ." *Quiñon v. FBI*, 86 F.3d 1222, 1228 (DC Cir. 1996) (citing *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C.Cir.1978)); *Hall v. CIA*, 668 F. Supp. 2d 172, 196 (D.D.C. 2009). "When a district court finds that a law enforcement agency's affidavits

---

[5] Plaintiffs argue in their Rule 56(d) declaration that DOJ must produce evidence to rebut the President's July 22 and 23 tweets, but they do not propose to propound any discovery on this issue. *See* Rule 56(d) declaration at ¶¶ 8-11.

sufficiently describe the documents and set forth proper reasons for invoking an exemption, in camera inspection of those documents is unnecessary." *Juarez v. DOJ*, 518 F.3d 54, 60 (D.C. Cir. 2008). Moreover, "[i]n camera inspection is particularly a last resort in national security situations like this case—a court should not resort to it routinely on the theory that "it can't hurt." *Larson v. Dep't of State*, 565 F.3d 857, 870 (D.C. Cir. 2009) (citations omitted); *Am. Civil Liberties Union v. DOD*, 628 F.3d 612, 626 (D.C. Cir. 2011). Here, the explanations in the declarations are sufficient to rule without conducting an in camera review, particularly given Plaintiffs' complete failure to challenge any of the redactions.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Cross-Motion for Partial Summary Judgment should be denied and Defendant's Motion for Summary Judgment should be granted.


Dated: November 30, 2018                    Respectfully Submitted,

                                            CHAD A. READLER
                                            Principal Deputy Assistant Attorney General

                                            MARCIA BERMAN
                                            Assistant Director, Federal Programs Branch

                                            */s/Amy E. Powell*
                                            AMY E. POWELL
                                            Trial Attorney, Federal Programs Branch
                                            Civil Division, Department of Justice
                                            310 New Bern Avenue, Suite 800
                                            Federal Building
                                            Raleigh, NC 27601-1461
                                            Phone: 919-856-4013
                                            Email:  amy.powell@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| THE JAMES MADISON PROJECT, *et al.*, |
| *Plaintiffs*, |
| v. |
| DEPARTMENT OF JUSTICE, |
| *Defendant.* |

No. 17-cv-00597-APM

**DEFENDANT'S RESPONSE TO PLAINTIFFS' STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 7(h)(1), Defendant respectfully submits the following response to Plaintiffs' statement of material facts as to which there is no genuine dispute. As explained herein and in the Defendant's Combined Memorandum in Opposition to Plaintiffs' Cross-Motion and Reply in Support Defendant's Motion for Summary Judgment, none of the disputed facts are material. The following numbered paragraphs correspond to the numbered paragraphs in Plaintiffs' Statement of Material Facts:

1. Admit that Plaintiffs submitted FOIA requests by letter dated March 6, 2017, but otherwise, this paragraph characterizes the cited documents, which speak for themselves.

2. Admit the existence of two memoranda authored by the Majority and the Minority members of the House Permanent Select Committee on Intelligence, relating to FISA surveillance of Carter Page. Dispute the characterization of these documents and the nature of their release, which is more accurately described in the Third Declaration of David Hardy, ¶¶ 17-24 (Oct. 19, 2018).

3.  Admit that Defendant released responsive material in response to the FOIA request, but otherwise, the paragraph characterizes the cited documents, which speak for themselves, and which are described in the Third Declaration of David Hardy, ¶ 31.

4.  Admit the existence of the cited Press Secretary statement, but the remainder of the paragraph characterizes the statement, which speaks for itself.  Specifically dispute the first sentence, which mischaracterizes the statement.

5.  Disputed.  There is no official declassification order, and Plaintiffs mischaracterize the statement in paragraph 4.  Per the statements in paragraph 6, the President has made clear that he is not requiring immediate declassification.

6.  Admit the existence of the cited statements from the President's twitter account, which Plaintiffs quote in part.  The Court is respectfully referred to the tweets themselves for a full and accurate statement of their contents.  *See* https://twitter.com/realDonaldTrump/status/1043146627576258561; https://twitter.com/realDonaldTrump/status/1043148165883416576.

7.  Disputed.  This paragraph purports to characterize the statements cited in paragraph 6 (as well as the statement cited in paragraph 4), which best speak for themselves.

8.  Disputed.  This paragraph purports to characterize the statements cited in paragraph 6 (as well as the statement cited in paragraph 4), which best speak for themselves.

9.  Disputed.  This paragraph purports to characterize the statement cited in paragraph 4, which speaks for itself.

10. Disputed.  There is no official declassification order.  This paragraph purports to characterize the statement cited in paragraph 4, which speaks for itself.

Dated:  November 30, 2018

Respectfully  Submitted,

CHAD A.  READLER
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Trial Attorney, Federal Programs Branch
Civil Division,  Department of Justice
310 New Bern Avenue, Suite  800
Federal Building
Raleigh, NC 27601-1461
Phone: 919-856-4013
Email:  amy.powell@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE JAMES MADISON PROJECT and BRAD HEATH, USA Today,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 17-cv-0597<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am currently the Assistant Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division ("IMD"), in Winchester, Virginia, and in the absence of RIDS Section Chief David M. Hardy, I serve as Acting Section Chief for RIDS. I have held this position since June 26, 2016. I joined the FBI in September 2011, and prior to my current position, I was the Unit Chief of RIDS's Litigation Support Unit from November 2012 to June 2016, and an Assistant General Counsel in the FBI Office of the General Counsel, Freedom of Information Act ("FOIA") Litigation Unit from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("PA") litigation cases nationwide. Prior to joining the FBI, I served as a Senior Attorney at the U.S. Drug Enforcement Administration ("DEA") from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIA/PA matters and served as agency counsel representing the DEA in FOIA/PA lawsuits

1

nationwide.  I also served as a U.S. Army Judge Advocate General's Corps Officer in various

assignments from 1994 to September 2006 culminating in my assignment as Chief, General

Litigation Branch, U.S. Army Litigation Division, where I oversaw FOIA/PA litigation for the

U.S. Army.  I am an attorney registered in the State of Ohio (inactive) and the District of

Columbia (active).

(2)     In my official capacity as Acting Section Chief of RIDS, I supervise

approximately 237 employees who staff a total of twelve FBI Headquarters ("FBIHQ") units and

three field operational service center units whose collective mission is to effectively plan,

develop, direct, and manage responses to requests for access to FBI records and information

pursuant to the FOIA, as amended by the OPEN Government Act of 2007, the OPEN FOIA Act

of 2009 and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order

13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and

Presidential and Congressional directives.  The statements contained in this declaration are based

upon my personal knowledge, upon information provided to me in my official capacity, and

upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5

U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am aware of the

FBI's handling of plaintiffs' FOIA request that is the subject of this lawsuit.

(4)     This declaration is being submitted in further support of DOJ's motion for

summary judgment filed on October 19, 2018, *see* ECF No. 40, and in conjunction with DOJ's

reply in support of that motion/response to plaintiffs' cross motion for partial summary

judgment, *see* ECF No. 41.  It supplements and incorporates by reference three previous

declarations by David M. Hardy submitted in this case. *See* ECF No. 13-3, Declaration of David M. Hardy (hereafter "First Hardy Decl."), submitted in support of DOJ's withdrawn motion for summary judgment (ECF No. 13); ECF No. 34-1, Second Declaration of David M. Hardy (hereafter "Second Hardy Decl."), submitted in support of DOJ's Joint Status Report (ECF No. 34); and ECF No. 40-1, Third Declaration of David M. Hardy (hereafter "Third Hardy Decl."), submitted in support of DOJ's renewed motion for summary judgment (ECF No. 40).[1]

(5)     This declaration specifically addresses the FBI's withholdings as categorized under coded category (b)(6)/(b)(7)(C)-2.

(6)     As explained in the Third Hardy Decl., the FBI protected certain personally-identifying and other non-public information about Carter Page contained in the FISA applications and FISC orders processed in response to plaintiffs' FOIA request. *See* ECF No. 40-1, Third Hardy Decl., at ¶ 102. On November 9, 2018, the FBI received a privacy waiver executed by Carter Page in which he waived his privacy interests in information about him redacted in this case, and authorized its release to the public. Accordingly, the FBI is no longer asserting Exemptions (b)(6) and (b)(7)(C) to protect Mr. Page's information.

(7)     Nevertheless, this information was also protected under one or more other exemptions, and accordingly, no additional information is available for public disclosure as a result of this privacy waiver.[2]

---

[1] The Third Hardy Decl. is classified. The version filed on the public docket at ECF No. 40-1 is a redacted, unclassified version.

[2] The FBI notes that plaintiffs have not challenged the legal or factual basis for FBI's withholdings of information in this case other than certain (b)(1) withholdings on 21 pages of the fourth application (and the corresponding pages in the other three applications). While the FBI asserted Exemption (b)(1) in each instance where Exemptions (b)(6) and (b)(7)(C) were cited to protect information about Carter Page on those 21 pages, the FBI also relied on other exemptions in those instances, including Exemptions (b)(3), (b)(7)(A), (b)(7)(D), and (b)(7)(E).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _23rd_ day of November, 2018.

Michael G. Seidel
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia