UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES MADISON PROJECT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 17-cv-00597 (APM) |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

I.

On March 6, 2017, Plaintiffs The James Madison Project and Brad Heath submitted a Freedom of Information Act ("FOIA") request to Defendant Department of Justice for, among other things, orders by or applications to the United States Foreign Intelligence Surveillance Court concerning the Trump Organization, President Trump, President Trump's campaign for the presidency, or people associated with President Trump. *See* Def.'s Mot. for Summ. J., ECF No. 40 [hereinafter Def.'s Mot.], Def.'s Stmt. of Material Facts, ECF No. 40 at 1–11 [hereinafter Def.'s Facts], ¶ 1; *see also* Pls.' Mot. for Summ. J., ECF No. 41 [hereinafter Pl.'s Mot.], at 2 (incorporating Defendant's fact). On July 20, 2018, in response to multiple FOIA requests like the one at issue here, Defendant made public 412 pages, which constituted "all responsive, non-exempt and reasonably segregable information" from Foreign Intelligence Surveillance Act ("FISA") applications related to Carter Page. *See* Def.'s Facts ¶ 11; *see also* Pl.'s Mot. at 2.[1]

---

[1] The Carter Page FISA applications were publicly acknowledged following release of a declassified memorandum from Devin Nunes, Chairman of the House Permanent Select Committee on Intelligence, and an unclassified, redacted memorandum from Adam Schiff, Ranking Member of the House Permanent Select Committee on Intelligence.

The released 412 pages were heavily redacted and identified a range of FOIA exemptions to justify the withholdings. See https://vault.fbi.gov/d1-release/d1-release (last visited July 30, 2019).

Defendant's continued redaction of 21 of the 412 pages is the sole contested issue in the parties' cross-motions for summary judgment. See Pl.'s Mot. at 1. The dispute arises because, nearly two months *after* releasing the 412 pages, on September 17, 2018, the White House announced in a Press Release that President Trump had

> directed the Office of the Director of National Intelligence and the Department of Justice (including the FBI) to provide for the immediate declassification of the following materials: (1) pages 10-12 and 17-34 of the June 2017 application to the FISA court in the matter of Carter W. Page . . .

See Pl.'s Mot. at 4; *see also* Press Release, White House Press Secretary (Sept. 17, 2018), https://www.whitehouse.gov/briefings-statements/statement-press-secretary-34/ (last visited July 30, 2019) [hereinafter Press Release]. Plaintiffs contend that the Press Release reflects a presidential order to declassify the referenced 21 pages ("the Pages") in full. Yet, in this FOIA litigation, Defendant has not withdrawn Exemptions 1 and 3—both based on the purported classification of the redacted material—as a basis for withholding information from the Pages. It also continues to assert other exemptions, including Exemptions 7(D) and 7(E), to justify withholding the same information. See Pl.'s Mot. at 4–8.[2] Plaintiffs contend that the Press Release creates a genuine dispute of material fact as to (1) whether Defendant validly can maintain

---

See Def.'s Facts ¶¶ 7–11. "[N]o authorized government official has confirmed or denied the existence of any other responsive FISA-related records." *See id.* ¶ 12.

[2] Defendant at first invoked multiple exemptions for each of the redacted portions from the Pages. The complete line up of exemptions included some combination of Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(E). *See* https://vault.fbi.gov/d1-release/d1-release (the Pages are at 301–03, 308–25). Since the start of this litigation, Defendant has withdrawn Exemptions 6 and 7(C), because Carter Page supplied a privacy waiver, *see* Def.'s Opp'n to Pl.'s Mot., ECF No. 43, at 12, and Exemption 7(A), as the Russia investigation has since concluded, *see* Def.'s Supp. Memo., ECF No. 49, at 3. Thus, what remains asserted as to the Pages is Exemptions 1, 3, 7(D), and 7(E).

Exemptions 1 and 3, and (2) whether the court can in good faith rely on Exemptions 7(D) and 7(E) in the alternative to affirm the withholdings.

II.

In FOIA cases, "the agency bears the burden of justifying its decision to withhold requested information." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987). The agency here relies on FOIA Exemption 1 to justify the redactions.[3] That exemption protects against disclosing matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Conversely, Exemption 1 cannot apply to information that has been declassified.

No one disputes that "the President, as head of the Executive Branch, has broad declassification authority." *New York Times Co. v. CIA*, 314 F. Supp. 3d 519, 526 (S.D.N.Y. 2018) (citing *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988)). The question here is whether President Trump exercised that authority with respect to the Pages. Because the agency is asserting Exemption 1 with respect to the Pages, it bears the burden of showing that the President did *not* declassify the Pages in full.[4]

Defendant asserts that "[t]here is no presidential declassification order, and the President has publicly indicated that he is not requiring declassification at this time, much less full disclosure." *See* Def.'s Opp'n to Pl.'s Mot., ECF No. 43 [hereinafter Def.'s Opp'n], at 1. To support its position, Defendant relies on legal arguments, and not sworn declarations. To start,

---

[3] Defendant's assertion of Exemption 3 is predicated entirely on Exemption 1. *See* Def.'s Mot., Decl. of David M. Hardy, ECF No. 40-1, ¶¶ 68–72. For ease of reference, the court refers to both as "Exemption 1."

[4] By phrasing the issue in this way, the court does not mean to suggest that in every Exemption 1 case the agency must prove the record was not declassified. This question arises in this case only because of the President's public declassification announcement of these specific documents.

Defendant insists that the Press Release is, "indisputably, a statement from the press secretary, not an order from the President." *Id.* at 3. That argument, however, ignores the plain text of the Press Release. It says that the President "*directed* . . . the Department of Justice . . . to provide for the immediate declassification" of the Pages. Press Release (emphasis added). The Release's use of the word "direct" suggests that the President ordered the Department of Justice to declassify the Pages.[5] And, while it is true that the Press Release is a statement of the Press Secretary, and not the President, *see* Def.'s Opp'n at 3, Defendant offers no reason to believe that the Press Release inaccurately conveys the President's "directive." Thus, contrary to what Defendant says, it would appear that the President did make "his intentions clear . . . to declassify information." *Id.*

Next, Defendant contends the Pages were not declassified because the Press Release is "ambiguous as to what the President may have directed." Def.'s Opp'n at 3. That argument has it precisely backwards. The agency bears the burden to show that Exemption 1 applies. It cannot carry that burden by suggesting that a potential declassification order is ambiguous. Rather, the agency must dispel any ambiguity. In this case, that means Defendant must establish that the Pages were not declassified in full. Defendant has not done so.

Additionally, Defendant argues that, whatever was meant by the Press Release, the President later "made clear . . . that he had not ordered the documents declassified." *Id.* Defendant points to a tweet from the President four days after the Press Release, stating:

> I met with the DOJ concerning the declassification of various UNREDACTED documents. They agreed to release them but stated that so doing may have a perceived negative impact on the Russia probe . . . Therefore, the Inspector General has been asked to review these documents on an expedited basis . . . In the end I can always declassify if it proves necessary.

---

[5] One common definition of "direct" is "[t]o give an order to; command." *See* https://www.thefreedictionary.com/directed.

Def.'s Opp'n at 3–4. Defendant maintains that this tweet makes "crystal clear" that the President did not declassify documents relating to the Russia probe. *Id.* at 4. Far from it. The tweet only injects ambiguity as to the President's intentions. The tweet does not identify the documents to which the President is referring, let alone refer to the Pages, and it leaves unclear whether the President rescinded the directive announced in the Press Release. Ultimately, as Defendant concedes, the tweet is "fac[ially] equivocal" about the President's instructions to the Department of Justice. *Id.* at 4.

The court in *New York Times Company* observed that "the courts are [not] in a position to decide whether a President's statements, absent an unequivocal declaration that [he] is declassifying information, have the effect of declassifying secret information." *New York Times Company*, 314 F. Supp. 3d at 527 (cleaned up). On its face, the Press Release would appear to be such an "unequivocal declaration." But the President's subsequent tweets and the agency's insistence that there is no declassification order render what seems to be unequivocal less so. Defendant should have provided some clarification about what instructions the Department of Justice received concerning the "declassification" of the Pages' contents. But none of the declarations submitted by Defendant even mention the Press Release. Therefore, on the present record, the court cannot find that Defendant's withholding of information from the Pages was proper under FOIA Exemption 1.

III.

Alternatively, Defendant contends that, even if it has not met its burden as to Exemption 1, it has asserted other exemptions, namely, Exemptions 7(D) or 7(E), which Plaintiffs have not challenged and serve as an independent ground to affirm the agency's withholdings. *See* Def.'s Opp'n at 5 (citing to the Pages, which list the alternative exemptions). It is true that Plaintiffs have

not challenged the factual basis for either Exemption 7(D) or 7(E).  But that does not resolve the issue.  There still remains a genuine dispute of material fact about the agency's authority to invoke those Exemptions.

The President "directed" the Department of Justice "to provide for the immediate declassification" of the Pages.  Did the President narrowly mean only to "declassify" the Pages, or did he more broadly intend to release the Pages in full, without redactions?  To be sure, the Press Release refers only to "immediate declassification" and is silent as to the other applicable exemptions.  But why would the President order declassification of the Pages, if the agency could still rely on other already-asserted exemptions to withhold the very same material?  Such an order would not result in any additional public information.  And it would not promote the "transparency" that the Press Release identified as a reason for the President's action.  The court cannot presume that the President's declassification order was meant to have no practical effect.  For that reason, there remains a genuine dispute of material fact as to whether the agency here has the authority to rely on Exemptions 7(D) and 7(E).

IV.

The court, therefore, denies the parties' motions for summary judgment.  Defendant may submit an additional declaration and renew its motion for summary judgment by August 30, 2019.  Any supplemental declaration should provide information about (1) the effect, if any, the Press Release and the President's subsequent tweets (including the meeting referenced in the tweets) had on the classification status of the Pages, and (2) whether the agency is authorized to assert Exemptions 7(D) and 7(E) to shield portions of the Pages from disclosure.

Dated:  July 30, 2019

Amit P. Mehta
United States District Court Judge