**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | * | |
| THE JAMES MADISON PROJECT, | * | |
| <u>et al.</u>, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 17-597 (APM) |
| | * | |
| DEPARTMENT OF JUSTICE, | * | (ORAL ARGUMENTS REQUESTED) |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFFS' OPPOSITION TO**
**<u>DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT</u>**

# Table of Contents

BACKGROUND ........................................................................................................... 1

ARGUMENT ............................................................................................................... 3

    THE WEINSHEIMER DECLARATION DOES NOT DEMONSTRATE THAT DOJ
    RECEIVED AUTHORIZED INSTRUCTIONS THAT THE ORDER HAD BEEN
    RESCINDED OR OTHERWISE POSTPONED AS A MATTER OF LAW ............... 3

    THERE REMAINS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE
    REGARDING THE ABILITY OF DOJ TO ASSERT OTHER EXEMPTIONS IN
    ORDER TO JUSTIFY WITHHOLDING THE PAGES ................................................ 9

CONCLUSION ........................................................................................................... 10

# Table of Authorities

**Cases**

<u>Citizens for Responsibility & Ethics in Wash. v. Nat'l Indian Gaming Comm'n</u>, 467 F. Supp. 2d 50 (D.D.C. 2006) ............................................................................... 7

<u>Holcomb v. Powell</u>, 433 F.3d 889 (D.C. Cir. 2006) ........................................................... 9

<u>Judicial Watch, Inc. v. Dep't of Commerce</u>, 34 F. Supp. 2d 28 (D.D.C. 1998) ................. 8

<u>Judicial Watch, Inc. v. Dep't of State</u>, 344 F. Supp. 3d 77 (D.D.C. 2018) ........................ 7

<u>Sussman v. United States Marshals Serv.</u>, 494 F.3d 1106 (D.C. Cir. 2007) ..................... 6

<u>The James Madison Project, et al. v. Dep't of Justice</u>, 2019 U.S Dist. LEXIS 126575 (D.D.C. Jul. 30, 2019) .................................................................................... 2-4, 7, 9-10

<u>United States v. Valencia</u>, 2018 U.S. Dist. LEXIS 200564 (W.D. Tex. Nov. 27, 2018) ... 4

**Other Authorities**

*https://www.whitehouse.gov/briefings-statements/statement-press-secretary-34/* (last accessed September 3, 2019) ............................................................................ 3

## BACKGROUND

The Plaintiffs, The James Madison Project ("JMP") and Brad Heath ("Heath") (hereinafter referred to jointly as "Plaintiffs"), brought this action under the Freedom of Information Act ("FOIA") to accomplish what had never before been done: namely, to secure the *lawful* disclosure of records memorializing the application for and issuance of orders for surveillance by the Foreign Intelligence Surveillance Court ("FISC"). In the context of this present case, the specific potential targets of surveillance originally at issue in the Plaintiffs' underlying FOIA requests were President Donald J. Trump ("President Trump"), his presidential campaign, his private company, or his associates.

The factual background with respect to how this litigation unfolded – including the unprecedented disclosure by the defendant Department of Justice ("DOJ") of four applications made to the FISC to authorize the surveillance of Carter W. Page ("Mr. Page") – has already been well-documented for this Court by both parties, see Dkt. #5 (First Amended Complaint)(filed April 15, 2017); Dkt. #40 (Defendant's Statement of Material Facts in Support of Defendants' Motion for Summary Judgment) (filed October 19, 2018); Dkt. #52 (Supplemental Statement of Material Facts in Support of Defendant's Renewed Motion for Summary Judgment)(filed August 30, 2019), and the Plaintiffs have no desire to further burden it with details regarding which it is already well aware.[1]

---

[1] The Plaintiffs respectfully incorporate the Government's two statements of material facts herein by reference, subject to the caveat – as done previously, see Dkt. #42 at *2 (filed November 9, 2018) – that the Plaintiffs are only incorporating the statements to the extent they do not constitute legal characterizations or conclusions regarding the appropriateness of DOJ's invocations of particular FOIA exemptions.

In its Memorandum Opinion issued on July 30, 2019, this Court denied both parties respective motions for summary judgment with respect to a particular issue: the 21 pages of one FISC application for authorization for surveillance of Mr. Page (the "Pages"). See The James Madison Project, et al. v. Dep't of Justice, 2019 U.S Dist. LEXIS 126575 (D.D.C. Jul. 30, 2019). This Court specifically made two conclusions: (1) that DOJ had failed to sufficiently clarify the legal impact of President Trump's September 17, 2018, press release ordering the declassification of the Pages (the "Order"), as well as President Trump's subsequent tweets possibly rescinding the declassification; and (2) that DOJ had failed to sufficiently explain the authority of DOJ to still invoke other exemptions to justify withholding the Pages in light of the existence of the Order. Id., 2019 U.S. Dist. LEXIS 126575 at *2, *6, *8.[2]

DOJ has now filed a Renewed Motion for Summary Judgment ("Renewed Motion"), complete with a declaration from G. Bradley Weinsheimer ("Weinsheimer Declaration") that seeks to fill in the gaps identified by this Court in its recent ruling. However, for the reasons set forth in detail below, the Weinsheimer Declaration fails to sufficiently resolve the factual disputes for purpose of summary judgment.

Accordingly, this Court should deny DOJ's Renewed Motion without prejudice and authorize limited discovery.

---

[2] This Court has not yet ruled on the extent to which DOJ's remaining redactions and/or withholdings that the Plaintiffs are challenging were appropriate as a matter of law. Presumably, that is a matter this Court will address once the dispute over the Pages is resolved.

## **ARGUMENT**

**I.   THE WEINSHEIMER DECLARATION DOES NOT DEMONSTRATE THAT DOJ RECEIVED AUTHORIZED INSTRUCTIONS THAT THE ORDER HAD BEEN RESCINDED OR OTHERWISE POSTPONED AS A MATTER OF LAW**

The Order could not have been clearer in its instructions, and bears repeating it in its

entirety if only for the sake of factual accuracy.

> At the request of a number of committees of Congress, and for reasons of transparency, *the President has directed the Office of the Director of National Intelligence and the Department of Justice (including the FBI) to provide for the immediate declassification of the following materials: (1) pages 10-12 and 17-34 of the June 2017 application to the FISA court in the matter of Carter W. Page*; (2) all FBI reports of interviews with Bruce G. Ohr prepared in connection with the Russia investigation; and (3) all FBI reports of interviews prepared in connection with all Carter Page FISA applications.
>
> In addition, President Donald J. Trump has directed the Department of Justice (including the FBI) to publicly release all text messages relating to the Russia investigation, without redaction, of James Comey, Andrew McCabe, Peter Strzok, Lisa Page, and Bruce Ohr.

*https://www.whitehouse.gov/briefings-statements/statement-press-secretary-34/*

(last accessed September 3, 2019)(emphasis added).

This Court previously stated that, contrary to claims by DOJ, "…[i]t would appear

that the President did make 'his intentions clear … to declassify information.'"

See The James Madison Project, 2019 U.S. Dist. LEXIS 126575 at *5. Nowhere within

the four corners of the Weinsheimer Declaration, however, does the Government ever

address whether the Order was treated by DOJ as a declassification order from the outset.

The Weinsheimer Declaration instead makes three points: (a) that DOJ did not receive

what it views to be a "declassification order" separate from the Order itself; (b) that in

subsequent discussions with unidentified White House personnel DOJ was purportedly

informed that there was no order requiring "immediate declassification or disclosure" of the Pages; and (c) that DOJ did not receive a separate "declassification order" in its meeting with President Trump. See Dkt. #52-1 at ¶¶4-5.

The Weinsheimer Declaration quite simply fails to address the initial threshold question raised by this Court in its previous ruling, namely what basis in law DOJ had for contending the Order was anything other than a declassification order. See The James Madison Project, 2019 U.S. Dist. LEXIS 126575 at *4-*5. The Weinsheimer Declaration points to no citation or source of authority demonstrating why a separate document distinct from the Order itself was required for purposes of concluding that a "declassification order" had been issued and required implementation. Declaration of Bradley P. Moss at ¶9 (dated September 13, 2019)("Moss Decl."), attached as Exhibit "1". Ironically, it is the Government that has previously argued successfully that President Trump's mere tweets, to say nothing of an official White House press release from the president, can carry the force of law. See United States v. Valencia, 2018 U.S. Dist. LEXIS 200564, *18 (W.D. Tex. Nov. 27, 2018)(concluding that nothing beyond President's tweets was needed to legally demonstrate Matthew Whitaker had been appointed by President Trump as acting Attorney General of United States in compliance with legal restrictions imposed by 5 U.S.C. § 3346).

Therefore, from the outset, the Plaintiffs respectfully submit DOJ failed to provide this Court with clarity regarding why the Order, in and of itself, does not qualify as a declassification order as a matter of law. Consequently, it is the Plaintiffs' position that, as a matter of law, the Order qualified as a declassification order.

To explain why the Order was not implemented, the Weinsheimer Declaration vaguely references consultations with unidentified White House personnel. Dkt. #52-1 at ¶5. The description of those consultations leaves much to be desired. The Weinsheimer Declaration does not provide this Court with any substantive insight into the identities and/or positions of the White House personnel, including to what extent those individuals provided DOJ with any basis to conclude they (the White House personnel) had been delegated the authority to convey that the Order did not require immediate implementation. Moss Decl. at ¶10.

This lack of clarity is particularly important in the present case. This was not a mere incident of subordinate Executive Branch personnel working to flesh out broad policy guidance from the President of the United States. The Order was a <u>declassification order</u> from no less an authority than President Trump himself directing the relevant agencies to *immediately* declassify the Pages (among other things). Absent a proper delegation of authority from President Trump (or his designee), the White House personnel referenced in the Weinsheimer Declaration lacked any basis to convey to DOJ that the Order did not require immediate implementation. To conclude otherwise would be to accept an explanation from the Government that unidentified bureaucratic officials in the White House overrode the Constitutional authority of President Trump to order the immediate declassification of classified information. The Plaintiffs are willing to assume for the moment the Government is not seriously suggesting to this Court that the unidentified White House officials broke the law and defied President Trump's Article II powers.

But even if these unidentified individual White House personnel held some type of delegation of authority from President Trump, the Weinsheimer Declaration still unequivocally fails to explain what that delegation was or if the relevant DOJ officials ever asked the White House personnel for relevant documentation or descriptions of the delegation of authority. Moss Decl. at ¶10. Again, the Plaintiffs are forced to reiterate the constitutional sensitivity of the discussions referenced in the Weinsheimer Declaration, and why this was not just another routine meeting of government officials in which their respective authority was not of particular importance. This was a meeting to coordinate the implementation of a declassification order issued by the Commander in Chief himself. If the White House personnel were going to inform DOJ personnel the Order did not require what it clearly stated was required – namely, the *immediate* declassification of the Pages – then logic and the presumption of regularity, see Sussman v. United States Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007), would suggest DOJ personnel asked for an explanation of the White House personnel's respective authority to contravene the Order and the White House personnel provided DOJ with something more substantive than their stated word. Moss Decl. at ¶11.

To permit anything less than clarification from the Government regarding those discrepancies would be to conclude that what the Weinsheimer Declaration describes is unidentified bureaucrats contravening and obstructing the Article II authority of the president of the United States with respect to declassification of the Pages. Moss Decl. at ¶11. That is a factual scenario this Court should not sanction.

The follow up question obviously becomes how this Court should require such clarification. The Plaintiffs respectfully submit the present case satisfies the circumstances of those rare FOIA cases in which limited discovery is appropriate due to the absence of good faith by the Government in the sufficiency of its sworn pleadings presented to this Court, see Citizens for Responsibility & Ethics in Wash. v. Nat'l Indian Gaming Comm'n, 467 F. Supp. 2d 50, 56 (D.D.C. 2006)(identifying material conflict in agency affidavits as exception to rule that such affidavits are accorded presumption of good faith), as well as evidence of misconduct by the government in its response. See Judicial Watch, Inc. v. Dep't of State, 344 F. Supp. 3d 77, 80 (D.D.C. 2018) (authorizing discovery with respect to manner in which State Department and former Secretary of State Clinton's personal staff handled maintenance of records on a personal e-mail server).

The Government has already had not one but two separate occasions in which to respond to a specific challenge to its description of the impact of the Order. The Plaintiffs directly challenged the Government's description in their original opposition to DOJ's Motion for Summary Judgment, see Dkt. #42 at *8-*9, but the Government declined to supplement their original sworn declarations with anything beyond legal arguments in a reply brief, see Dkt. #43. This Court specifically highlighted the lack of supplemental sworn declarations in its ruling denying DOJ's previous motion for summary judgment. See The James Madison Project, 2019 U.S. Dist. LEXIS 126575 at *4, *7. To remedy that deficiency, the Government provided the Weinsheimer Declaration: however, for the reasons just outlined above, supra at 4-6, that supplemental pleading *still* does not satisfy the Government's legal burden. Instead, the Weinsheimer Declaration paints a picture of

what at best can only be described as bureaucratic confusion regarding the legal implications of the Order upon its issuance, and which at worst memorializes unidentified bureaucrats obstructing the constitutional authority of the president of the United States.

The Plaintiffs respectfully submit that the Government should not be permitted to delay this proceeding further in order to formulate yet another sworn declaration to once again provide only a slightly greater amount of detail. Instead, the sensitivities of this legal issue and the public interest in ensuring that procedures for implementing declassification orders direct from the President of the United States warrants authorizing limited discovery by the Plaintiffs. Moss Decl. at ¶15.

This discovery need not be overly invasive nor extensive, and more than likely will be confined to a narrow set of document production requests and depositions. Specifically, the Plaintiffs propose the following:

1) The release of any records provided to DOJ at the meetings referenced in the Weinsheimer Declaration that memorialized instructions, guidance or directions from President Trump (or his designee) to the unidentified White House personnel regarding their authority to convey that the Order did not have to be implemented; and/or

2) Depositions of relevant DOJ personnel who attended the meetings referenced in the Weinsheimer Declaration for the strict purpose of addressing the threshold question of the extent to which DOJ confirmed the White House personnel had the lawful authority to convey the instructions that ran contrary to the mandate of the Order.

Moss Decl. at ¶16.[3]

---

[3] It is plausible there may be issues of classification and privilege that will have to be addressed to protect legitimate interests of the U.S. Government. See Judicial Watch, Inc. v. Dep't of Commerce, 34 F. Supp. 2d 28, 41 (D.D.C. 1998)(appointing magistrate judge to closely supervise discovery). However, this discovery is not seeking the substantive contents of the discussions referenced in the Weinsheimer Declaration but rather only confirmation that the relevant officials in the discussions had the authority to provide guidance that contradicted the requirements of the Order regarding declassification.

Absent this clarification through discovery, a genuine issue of material fact remains in dispute regarding the status of the Order that precludes granting summary judgment to the Government.

## II.   THERE REMAINS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE REGARDING THE ABILITY OF DOJ TO ASSERT OTHER EXEMPTIONS IN ORDER TO JUSTIFY WITHHOLDING THE PAGES

In its previous ruling, this Court also identified the need for the Government to provide greater clarity (through a sworn declaration) with respect to the basis or bases upon which it was relying upon other exemptions – Exemption 3, Exemption 7(D) and Exemption 7(E) – to continue withholding the Pages (whether in whole or in part) even if the Order was construed as nullifying the Exemption 1 invocation. See The James Madison Project, 2019 U.S. Dist. LEXIS 126575 at *8.

The Weinsheimer Declaration, once again, simply does not satisfy that requirement in any way, shape or form. The sole reference to the issue is the assertion that Mr. Weinsheimer is not aware of any "order, guidance, policy or other facts" that prevent DOJ from invoking other exemptions. See Dkt. #52-1 at ¶5. That was not the question posed to DOJ by this Court, however: the ambiguity laid bare by the Order was why this Court should view the Order's requirement for immediate declassification of the Pages as simultaneously *not* actually demanding *release* of the Pages subsequent to that declassification. See The James Madison Project, 2019 U.S. Dist. LEXIS 126575 at *8. The Weinsheimer Declaration's statement does not clear up that ambiguity, and the burden is on DOJ (as the movant party) to demonstrate the absence of a genuine issue of material fact in dispute. See Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).

The inclusion of "legal spin" by DOJ on possible alternative explanations for why the Order would not necessarily have been meant to require public release of the Pages, see Dkt. #52 at *5, cannot serve as a substitute for factual explanations in a sworn declaration, as this Court has already warned the Government once before in this litigation. See The James Madison Project, 2019 U.S. Dist. LEXIS 126575 at *4. Were DOJ personnel informed by the White House (or President Trump directly) that the declassification of the Pages was only designed to facilitate broader information sharing within the Executive Branch, with Congress, and with other governmental entities and partners? Moss Decl. at ¶13. That certainly may be the case, but the Weinsheimer Declaration is silent on the issue.

This continued discrepancy represents a genuine issue of material fact that needs to be clarified, preferably through the limited discovery outlined above, before this Court can render a determination on summary judgment.

## **CONCLUSION**

For the foregoing reasons, DOJ's Renewed Motion for Summary Judgment should be denied without prejudice and this Court should authorize limited discovery.

Date: September 13, 2019

Respectfully submitted,

/s/

_____
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for the Plaintiffs

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | * | |
| THE JAMES MADISON PROJECT, | * | |
| <u>et al.</u>, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 17-597 (APM) |
| | * | |
| DEPARTMENT OF JUSTICE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>RULE 56(d) DECLARATION OF BRADLEY P. MOSS, ESQ.</u>

The undersigned hereby declares as follows:

1.   I am a person over eighteen (18) years of age and competent to testify. I am making this Declaration on personal knowledge. This Declaration is submitted in support of the Plaintiffs' Opposition to the Defendant's Renewed Motion for Summary Judgment.

2.   I am one of the attorneys for the plaintiffs The James Madison Project and Brad Heath (hereinafter referred to collectively as the "Plaintiffs") in this matter, along with my firm's Managing Partner, Mark S. Zaid ("Mr. Zaid"). I am admitted to practice law in the State of Illinois and the District of Columbia, as well as the U.S. Court of Appeals for the D.C. Circuit and the United States District Courts for the District of Columbia, District of Maryland and the Northern District of Illinois. I have been litigating cases involving the federal government, including with respect to the Freedom of Information Act ("FOIA"), since 2007. I also actively represent individuals associated with or within the intelligence, law enforcement or military communities in administrative proceedings. Both Mr. Zaid and I hold U.S. Government security clearances, granted by the

Department of Justice, for the purpose of representing specific clients, some of whose affiliation to the U.S. Government is a classified fact.

3.   In support of its Renewed Motion for Summary Judgment ("Motion"), see Dkt. #52 (filed August 30, 2019), the defendant Department of Justice ("DOJ") provided a sworn declaration from G. Bradley Weinsheimer ("Weinsheimer Declaration") to respond to the mandate set forth in this Court's memorandum opinion, issued on July 30, 2019. See Dkt. #52-1 (filed August 30, 2019). For the reasons outlined below, the Weinsheimer Declaration simply fails to satisfy the factual disputes identified by this Court.

*The Declassification Order*

4.   On September 17, 2018, President Donald J. Trump ("President Trump") exercised his constitutional authority to order the immediate declassification of twenty-one specific pages ("the Pages") from the 412-page production of FISA records released in this litigation and that relate to Carter W. Page ("Mr. Page)". *https://www.white house.gov/briefings-statements/statement-press-secretary-34/* (last accessed September 10, 2019). The Pages are derived from the June 2017 FISC application regarding Mr. Page. President Trump's order was memorialized in a White House press release (the "Order").

5.   President Trump did issue a two-part tweet on September 21, 2018, in which he stated that the Department of Justice had agreed to release an unspecified number of documents subject to the Order. President Trump further noted, however, that due to concerns raised about the "Russia probe" and by unidentified "Allies", he was asking the Inspector General ("OIG") to review an unspecified set of documents on an expedited

basis. *https://www.vox.com/2018/9/21/17886720/trump-russia-declassification-order-tweets-mueller* (last accessed September 10, 2019).

6.   There is no evidence in the written record demonstrating that the documents at issue in the two-part tweet on September 21, 2018, overlap with the Pages subject to the Order.

7.   In the Weinsheimer Declaration, DOJ provided some more details about what transpired "behind the scenes" in the aftermath of the issuance of the Order. The Weinsheimer Declaration states that unidentified White House officials met with unidentified DOJ officials (and Mr. Weinsheimer) regarding the impact of the Order. The Weinsheimer Declaration claims that White House personnel informed DOJ "there was no order requiring immediate declassification or disclosure of [the Carter Page documents]." See Dkt. #52-1 at ¶5. The Weinsheimer Declaration further claims that no separate "declassification order" was ever received by DOJ independent of the Order itself.

8.   The Weinsheimer Declaration does not provide any factual or legal basis, however, for concluding that the consultations described should be construed as overruling or otherwise nullifying the declassifying impact of the Order.

9.   First, the Weinsheimer Declaration fails to address why the Order, on its own, does not qualify as a declassification order. The text of the Order was clear and unequivocal in expressing the order from President Trump that the Pages be immediately declassified. The Government at no point, in either the Weinsheimer Declaration or in its Motion, provides any authoritative basis to conclude that the Order *does not*, as a matter of law, qualify as a declassification order. The Government certainly does not explain on

what basis it believes a separate "declassification order" is required and has to be submitted to DOJ independent of the issuance of the Order. It certainly may be the case that has been routinely done in the past for purposes of documentation but that it may be a common practice does not render it legally obligatory.

10. Even if the Government could rectify that threshold question, the Weinsheimer Declaration provides no information regarding the authority of the White House personnel to convey to DOJ that the Order was not a declassification order and/or that there was no requirement for immediate declassification. Did President Trump delegate authority to the White House officials to state that the Order did not, in fact, have to be implemented (at least not immediately)? Did DOJ secure clarification from White House personnel regarding any such delegation of authority, or did they merely take their word for it?

11. These are not trivial questions. To the contrary, they strike at the heart of one of the legal questions still unresolved in the present case, namely the authority of bureaucrats in the White House and the DOJ to take actions that appear to conflict with the clear instructions of the Commander in Chief. It is entirely possible that President Trump (or his authorized designee) did in fact delegate necessary authority to the White House officials in question, and that authority was properly explained to DOJ. Until such time, however, as the Government verifies that in a sworn declaration, there remains a genuine issue of material fact in dispute regarding the legal basis for concluding the Order was nullified or otherwise postponed.

*The Other Exemptions Invoked*

12. The Weinsheimer Declaration separately tries to address this Court's question regarding the Government's ability to invoke Exemption 3 Exemption 7(C), Exemption 7(D) and Exemption 7(E) to withhold some or all of the Pages. See Dkt. #52-1 at ¶5. Once again, the Weinsheimer Declaration fails to live up to the standard set forth in the case law, to say nothing of that set by this Court.

13. The Weinsheimer Declaration simply provides nothing in the way of factual information to resolve why this Court should construe the Order's declassification requirement as not also indicating that the Pages should be released subsequent to that declassification. Although the Government posits some plausible explanations in their Motion, see Dkt. #52 at *5, those explanations are noticeably absent from the Weinsheimer Declaration itself. This Court already made clear once before the need for the Government to resolve these factual disputes in sworn declarations, *not* in legal pleadings, and the Weinsheimer Declaration's factual deficiencies do not satisfy that burden.

*Limited Discovery*

14. The Plaintiffs respectfully submit that limited discovery, consisting most likely of document production and depositions, is warranted at this juncture. The Government has already had two bites at the proverbial apple to resolve these factual disputes through the submission of sworn declarations. This Court rejected the Government's first attempt and, for the reasons outlined above, the Plaintiffs submit that the Government still has not sufficiently corrected the deficiencies previously identified by this Court. With due respect, the Government should not be afforded a third chance.

15. The Plaintiffs particularly wish to reiterate the intense public interest in the information at issue in the present case. The disclosure by DOJ of the Foreign Intelligence Surveillance Act ("FISA") applications targeting Mr. Page was unprecedented and was due specifically to the initiation of the present case and similar FOIA cases brought by other FOIA plaintiffs. Media interest in the debate over declassification of the remaining portions of the FISA applications remains ongoing, including with remarks by President Trump himself indicating he want to ultimately see much (if not all) of the documentation declassified and released. *https://www.washington examiner.com/news/trump-says-everything-will-be-declassified* (last accessed September 12, 2019). That the Plaintiffs are being forced to pry this information out of the Government bit by bit is contrary to the spirit and purpose of the FOIA.

16. The scope of the anticipated discovery need not be extensive. The Plaintiffs would particularly seek to secure the following, which could afford this Court sufficient information to render a determination with prejudice.

1) Records provided to DOJ at the meetings referenced in the Weinsheimer Declaration that memorialized instructions, guidance or directions from President Trump (or his designee) to the unidentified White House personnel regarding their authority to convey to DOJ that the Order did not have to be implemented;

2) Depositions of the relevant DOJ personnel who attended the meetings referenced in the Weinsheimer Declaration for the strict purpose of addressing the threshold question of the extent to which DOJ confirmed the White House personnel had the lawful authority to convey the instructions that ran contrary to the mandate of the Order.

17. It is entirely possible that the information sought in that discovery would ultimately demonstrate as a matter of fact and law that the Government is entitled to summary judgment. However, absent that information, there remain genuine issues of material fact in dispute that prohibit this Court from ruling in the Government's favor.

6

I do solemnly affirm under the penalties of perjury that the contents of the foregoing

paper are true to the best of my knowledge.

Date:   September 13, 2019

_____
Bradley P. Moss, Esq.

7

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                        |     |                              |
|----------------------------------------|-----|------------------------------|
|                                        | *   |                              |
| THE JAMES MADISON PROJECT,             | *   |                              |
| <u>et al.</u>,                         | *   |                              |
|                                        | *   |                              |
| Plaintiffs,                            | *   |                              |
|                                        | *   |                              |
| v.                                     | *   | Civil Action No. 17-597 (APM)|
|                                        | *   |                              |
| DEPARTMENT OF JUSTICE,                 | *   |                              |
|                                        | *   |                              |
| Defendant.                             | *   |                              |
|                                        | *   |                              |

*   *   *   *   *   *   *   *   *   *   *   *   *   *

**RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**IN SUPPORT OF DEFENDANT'S RENEWED MOTION**
**<u>FOR SUMMARY JUDGMENT</u>**

Pursuant to Local Rule 7.1 (h), the plaintiffs The James Madison Project and

Brad Heath (referred to jointly as "Plaintiffs") respectfully respond to the defendant

Department of Justice's Statement of Material Facts in Support of Defendant's Renewed

Motion for Summary Judgment.

40. The Plaintiffs dispute this statement, as it implicates a legal conclusion at issue in

the present case.

41. The Plaintiffs do not dispute the recitation of these statements, except to the

extent they constitute legal conclusions or characterizations regarding the extent to which

the White House press release constituted a declassification order and/or that the White

House personnel had the authority to convey that the White House press release had been

rescinded as a matter of law with respect to declassification.

42. The Plaintiffs do not dispute the recitation of these statements, except to the extent they constitute legal conclusions or characterizations regarding the extent to which the White House press release constituted a declassification order and/or that the White House press release had been rescinded as a matter of law with respect to declassification.

43. The Plaintiffs dispute this statement.

Date:   September 13, 2019

Respectfully submitted,

/s/
_____
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for the Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | * | |
| THE JAMES MADISON PROJECT, | * | |
| <u>et al.</u>, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 17-597 (APM) |
| | * | |
| DEPARTMENT OF JUSTICE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**ORDER**</u>

Upon consideration of Defendant's Renewed Motion for Summary Judgment, and the entire record herein, it is this _____ day of _____ 2019, hereby

ORDERED, that Defendant's Motion is denied.

_____
UNITED STATES DISTRICT JUDGE