**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAMES MADISON PROJECT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 17-597-APM |
| UNITED STATES DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
RENEWED MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiffs try and fail to invent a dispute of material fact. Plaintiffs cannot reasonably argue with DOJ's representation that it has not received an order requiring immediate declassification or disclosure. Plaintiffs argue that DOJ has not established that the "order" referred to in a press release was rescinded, but in fact Defendant DOJ never received a declassification order from the President related to the materials remaining at issue in this case. And following the press release, DOJ consulted with the White House and confirmed that there was no such order, all of which is entirely consistent with the President's later tweets and statements and with the representations made in this case to date. Accordingly, even if the press release itself described a direction to declassify, Plaintiffs do not – and cannot – dispute that there was no declassification order. For the same reason, Plaintiffs are not entitled to discovery. Discovery would serve no valid purpose where there are no disputed facts material to the resolution of this Freedom of Information Act lawsuit, and discovery would inevitably impinge on privileged deliberations involving the President. Defendant is therefore entitled to summary judgment.

**ARGUMENT**

I. **The President Did Not Order Declassification or Disclosure of the Information at Issue.**

As set forth in the renewed motion and the Weinsheimer Declaration, DOJ did not receive a declassification order, and following the press secretary statement that the President had directed DOJ "to provide for" declassification, DOJ followed up with the White House to confirm that there was no order requiring immediate declassification or disclosure. ECF No. 52 ("Def's Renewed MSJ"). This declaration is entitled to a presumption of good faith. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (FOIA declarations are afforded "a presumption of good faith, which cannot be rebutted by purely speculative claims") (citation omitted); *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) (A "presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."). Plaintiffs argue that the Court already found that the President's "intentions" were clear and that "the Government does not address whether the Order was treated by DOJ as a declassification order from the outset." ECF No. 53 ("Pls.' Opp'n") at 3. That is incorrect. In fact, the declaration plainly states: "DOJ did not receive at any time a declassification order related to the materials remaining at issue in this case." Declaration of G. Bradley Weinsheimer, ECF No. 53-1, ¶ 4 ("Weinsheimer Decl."). *See also id*. ¶ 5 ("DOJ also did not receive any order to declassify the materials . . . during the meeting the President referenced in his tweet, or at any time."). Accordingly, DOJ never believed that the press release was a declassification order or treated it as one.

Plaintiffs also argue that the declaration "fails to address . . . what basis in law DOJ had for contending the Order was anything other than a declassification order." Pls.' Opp'n at 4. As

an initial matter, DOJ's legal rationale is not material to the factual question the Court identified. Rather, as an undisputed factual matter, DOJ confirmed with the White House that the President is not in fact requiring immediate declassification and disclosure. Weinsheimer Decl. ¶¶ 4-5. The President has, however, delegated authority to the Attorney General to determine whether these or other materials should be declassified. *Id.* The Court emphasized that DOJ should provide "clarification about what instructions [DOJ] received concerning the 'declassification' of the Pages' contents." Op., ECF No. 51, at 5. DOJ has now provided sufficient clarification to show that the pages were not declassified.

To the extent that DOJ's past legal reasoning remains relevant, DOJ set forth its reasoning in previous briefing. *See* Def's Reply ECF No. 44, at 2-4; Def's Renewed MSJ, at 2. A declassification order would not be transmitted solely via press release to the general public. And a declassification order would be wholly unnecessary if the President simply intended to order disclosure; the President has the authority to declassify and disclose documents himself and in fact has done so during the course of this litigation. Instead, there was a press release describing a direction to "provide for immediate declassification;" that press secretary statement was followed by public statements of the President himself that he was not requiring declassification at this time. Even assuming the Court disagreed with DOJ's interpretation of the press release and found it to be more unequivocal than DOJ did, *see* Op. at 5, there is now an additional, indisputable, sworn statement that DOJ never received the "order" described in the press release. Thus, even if the Court found that the press release facially describes an order from the President to declassify, Defendants did not read the release itself as an order, never received an order, and subsequently confirmed with the White House that there was and is no order to declassify the pages at issue.

Plaintiffs further argue that the description of the consultations with the White House are

insufficient because the declaration does not disclose "the identities and/or positions of the White House personnel, including to what extent those individuals provided DOJ with any basis to conclude they (the White House personnel) had been delegated the authority to convey that the Order did not require immediate implementation." Pls.' Opp'n at 5. Plaintiffs may want to know this information, but it is not relevant to the issue before the Court. The declaration plainly describes responsible DOJ officials consulting with the White House through ordinary channels about ongoing decision-making. No formal "delegation" to communicate the President's intent was required; DOJ plainly understood White House officials acting in their official capacities to be acting on behalf of the President when "DOJ was informed that there was no order requiring immediate declassification or disclosure of those documents." Weinsheimer Decl. ¶¶ 4-5. Nor is there any reason to think that anyone was "contravening" or "obstructing" the authority of the President, Pls.' Opp'n at 6, as DOJ "did not receive any order to declassify the materials . . . during the meeting [between the President and DOJ that] the President referenced in his tweet, or at any time." Weinsheimer Decl. ¶ 5. The President's tweets in fact confirmed that the President was not immediately requiring declassification, and the declaration makes clear that he also has delegated authority to the Attorney General to determine whether declassification is appropriate of these and related materials.

      Accordingly, the Court should grant DOJ's renewed motion for summary judgment.

      **II.**    **Discovery Is Unwarranted.**

      As a remedy for the supposed lack of clarity, Plaintiffs demand "limited" discovery, including document requests and depositions, regarding high level deliberations between senior DOJ officials, White House officials, and the President himself. Pls.' Opp'n 7-8. Discovery is unwarranted in this FOIA matter, particularly because the discovery sought would involve obviously privileged information and high level officials.

As Plaintiffs concede, discovery is generally inappropriate in FOIA cases. *See, e.g., Justice v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) ("In FOIA actions, however, discovery is disfavored."), *aff'd*, 485 F. App'x 439 (D.C. Cir. 2012); *Schrecker v. DOJ*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002) ("Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed [and] submitted in good faith and [where] the court is satisfied that no factual dispute remains."), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003); *SAI v. TSA*, 315 F. Supp. 3d 218, 257 (D.D.C. 2018) (same). "Courts permit discovery in FOIA cases where a plaintiff has made a sufficient showing that the agency acted in bad faith." *Ocasio v. DOJ*, 67 F. Supp. 3d 438, 440 (D.D.C. 2014) (citation omitted). "When allowed, the scope of discovery is usually limited to the adequacy of the agency's search and similar matters." *Voinche v. FBI*, 412 F. Supp. 2d 60, 71 (D.D.C. 2006). Discovery is not warranted "when it appears that discovery would only ... [afford the plaintiff] an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits." *Military Audit Project*, *v. Casey*, 656 F.2d 724, 751–52 (D.C. Cir. 1981) (citation omitted).

Here, it is uncontroverted that DOJ consulted with the White House personnel to confirm that there was no current declassification order. Plaintiffs speculate that someone at the White House might have been lying or trying to undermine the President's Article II powers. Such speculation does not, however, overcome the presumption of good faith or the presumption of regularity.[1]

---

[1] The cases cited by Plaintiff do not support their position. In *CREW v. Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d 40, 55-56 (D.D.C. 2006), the Court found that discovery in a FOIA case would require an "extraordinary basis," and denied the request despite allegations of deficient declarations. In *Judicial Watch, Inc. v. Dep't of State*, 344 F. Supp. 3d 77, 83 (D.D.C. 2018), the Court found some evidence of what it called "egregious government misconduct" before ordering limited discovery. The Government disagrees with that decision but it is readily distinguishable. No such evidence exists here, and there was no misconduct.

Also, the specific discovery sought is inappropriate because it would potentially violate separation of powers principles and implicate the presidential communications privilege, and because it potentially involves depositions of high-ranking officials.  While Plaintiffs admit that there are "plausible" privilege issues here that they maintain could be litigated in the context of discovery, separation of powers principles and ordinary prudence counsel against permitting discovery to proceed here, where the discovery requests so plainly implicate information that is nearly entirely privileged.  Specifically, Plaintiffs seek (1) records that "memorialized instructions, guidance or directions from President Trump (or his designee)" regarding the "authority" of "unidentified White House personnel" to "convey that the Order did not have to be implemented;" and (2) depositions of any "DOJ personnel who attended the meeting referenced in the Weinsheimer declaration . . . addressing . . . the extent to which DOJ confirmed the White House personnel had the lawful authority to convey instructions that ran contrary to the mandate of the Order." Pls.' Opp'n at 8.

The Supreme Court has made clear that discovery directed to the President or his advisers in civil litigation raises significant separation of powers concerns and should be strictly circumscribed.  In *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004), where the discovery requests were directed to the Vice President and other senior officials of the Executive Branch who gave advice and made recommendations to the President, the Court emphasized that "special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." *Id*. at 385.  The Supreme Court "has held, on more than one occasion, that '[t]he high[est] respect that is owed to the office of the Chief Executive … is a matter that should inform the conduct of the entire proceeding, including the timing and scope of discovery . . . .'" *Id.* (quoting *Clinton v. Jones*, 520 U.S. 681, 707 (1997)).  Further, the Court

has held that the Executive's "'constitutional responsibilities and status [are] factors counseling judicial deference and restraint' in the conduct of the litigation against it.'" *Id*. (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982)).

Discovery aimed at uncovering the substance of communications between the President and his advisors, as Plaintiffs expressly seek, is subject to the presidential communications privilege. The "presumptive privilege" that attaches to presidential communications is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974)*; see In re Sealed Case*, 121 F.3d 729, 743 (D.C. Cir. 1997) (describing the privilege's "constitutional origins"). The privilege is broad, protecting the "confidentiality of Presidential communications in performance of the President's responsibilities . . . ." *Nixon*, 418 U.S. at 711; *see also In re Sealed Case*, 121 F.3d at 744 ("The *Nixon* cases establish the contours of the presidential communications privilege. The President can invoke the privilege when asked to produce documents or other materials that reflect presidential decisionmaking and deliberations . . . ."). The privilege applies both to "communications directly involving and documents actually viewed by the President," as well as to "documents solicited and received by the President or his immediate White House advisers who have broad and significant responsibility for investigating and formulating the advice to be given the President." *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1114-15 (D.C. Cir. 2004) (citations omitted); *see also Loving v. DOD*, 550 F.3d 32, 37 (D.C. Cir. 2008). Documents subject to the presidential communications privilege are shielded in their entirety, and the privilege "covers final and post-decisional materials as well as pre-deliberative ones." *In re Sealed Case,* 121 F.3d at 745.

Here, all of the information Plaintiffs seek about deliberations and communications involving the President and his advisers regarding potential declassification and disclosure of the

7

documents at issue would be subject to the presidential communications privilege and possibly the deliberative process privilege or other privileges. The first category of documents would obviously be privileged in its entirety because it directly seeks, on its face, communications "from President Trump (or his designee)." The President's communications with his advisers in the White House are at the core of the privilege, which applies regardless of whether the communications are pre- or post-decisional. The deposition testimony sought is similarly problematic. Although it is directed to depositions of DOJ officials, it is specifically about their meetings with White House personnel regarding supposed instructions from the President. The privilege protects in its entirety "the President's personal decision-making process," including the activities of White House staff that is relevant to that process. *See Judicial Watch*, 365 F.3d at 1118.

Finally, the depositions sought may involve high-ranking government officials at DOJ, of the sort who would conduct meetings and conversations with White House officials and the President. Any such officials still at DOJ have extraordinary demands on their time and focus, and should not be required to submit to depositions in this matter, particularly when other means of providing the same information is available in a way that will impose fewer burdens on the proper functioning of the Government. *See, e.g., United States v. Morgan*, 313 U.S. 409, 421-22 (1941) (criticizing a district court's decision to allow "the deposition of the Secretary," because "it was not the function of the court to probe the mental processes of the Secretary"); *In re McCarthy*, 636 F. App'x 142, 143 (4th Cir. 2015) ("high-ranking government officials may not be deposed or called to testify about their reasons for taking official actions absent extraordinary circumstances.") (citation omitted); *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013). "This rule allows high-level public servants to spend their valuable time performing their duties rather than preparing for and testifying in depositions,

unless the individual has some relevant personal knowledge about the subject matter." *Breiterman v. U.S. Capitol Police*, 323 F.R.D. 36, 53 (D.D.C. 2017) (internal citation omitted); *see also Fed. Deposit Ins. Corp. v. Galan-Alvarez*, Case No. 1:15-MC-00752 (CRC), 2015 WL 5602342, at *3-*4 (D.D.C. Sept. 4, 2015) (describing multiple rationales for limiting depositions of high- level officials). Plaintiffs have not shown that such depositions here would be reasonable and proportionate to the needs of the case, much less that there are extraordinary circumstances justifying a deposition of high-ranking government officials.

Accordingly, DOJ is entitled to summary judgment on all remaining claims, without ordering discovery.

### III. DOJ Has Properly Asserted Other Exemptions as Well.

As set forth in the renewed motion for summary judgment, the press secretary statement does not affect the applicability of other exemptions, and redactions based on other exemptions continue to be proper as well, including Exemptions 3, 6 and 7(C), 7(D), and 7(E). Def's Renewed MSJ at 5. Plaintiffs complain that this does not address the question of why the press release should not also be read as demanding disclosure. But although the Court questioned why the President would order declassification but not disclosure, *see* Op. at 6, the Court, quite reasonably, did not demand the President's rationale for his actions. Nor could the Court demand the President's rationale in this FOIA case against DOJ. Instead, the Court directed DOJ to address "whether the agency is authorized to assert" other exemptions. *Id*. Following consultations with the White House, DOJ is aware of no "order, guidance, policy, or other facts" that would prevent invocation of other exemptions at this time. Weinsheimer Decl. ¶ 5.

Accordingly, the Court should grant the Defendant's renewed motion for summary judgment on the grounds of other exemptions as well.

### IV. Carter Page Has Rescinded His Privacy Waiver.

Additionally, Defendant DOJ hereby notifies the Court that Carter Page contacted counsel for the parties to inform us that he is rescinding his privacy waiver. *See* Email from Carter Page to Amy Powell et al., dated September 15, 2019, attached. To date, none of his information in the pages remaining at issue has been disclosed because such information was covered by other exemptions. *See* Declaration of Michael Seidel, dated November 23, 2018, ECF No. 43-2.

### CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the briefing on Defendants' most recent motion for summary judgment, the Court should grant the Government's renewed motion for summary judgment.

Dated: September 27, 2019

Respectfully Submitted,

HASHIM MOOPAN
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

*/s/Amy E. Powell*
AMY E. POWELL
Trial Attorney, Federal Programs Branch
Civil Division, Department of Justice
150 Fayetteville St, Suite 2100
Raleigh, NC 27601
Phone: 919-856-4013
Email: amy.powell@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES MADISON PROJECT, et al., )
                      )
 Plaintiffs, )
                      )
v. )
                      )  Case No. 17-597-APM
UNITED STATES DEPARTMENT OF JUSTICE, )
                      )
 Defendant. )
                      )

## DECLARATION OF AMY POWELL

1. I am counsel for the Defendant in the above-captioned matter. I am submitting this declaration in support of Defendants' Renewed Motion for Summary Judgment.

2. On September 15, 2019, I received the attached email. *See* Email from Carter Page to Amy Powell et al., dated September 15, 2019, attached.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this 27th day of September, 2019, in Raleigh, NC.

_____
AMY E. POWELL

| | |
|---|---|
| **From:** | Carter Page |
| **To:** | Mooppan, Hashim (CIV); Powell, Amy (CIV); Heath, Brad; Bradley P. Moss |
| **Cc:** | Winn, Peter A. (OPCL); Privacy (SMO); Horowitz, Michael E.(OIG); Smith, James M. (OIP); Hurd, Matthew (OIP); Pustay, Melanie A (OIP); USDOJ-Office of Legal Counsel (SMO) |
| **Subject:** | James Madison Project v. DOJ (17-cv-597-APM): FISA documents - appropriate 5 U.S.C. § 552a(d)(2) reviews for accuracy and comment purposes |
| **Date:** | Sunday, September 15, 2019 9:00:35 PM |

Dear Mr. Mooppan, Ms. Powell, Mr. Heath and Mr. Moss:

I am writing to let you know of my decision to temporarily rescind my Privacy Act waiver for the case you have been litigating - *James Madison Project v. DOJ* (17-cv-597-APM, D.D.C.). I have recently been in contact with DOJ's Office of Privacy and Civil Liberties (OPCL) and Office of Information Policy (OIP) about ensuring the appropriate 5 U.S.C. § 552a(d)(2) reviews related to the forthcoming disclosures surrounding the 2016-2017 FISA abuse committed against the Trump movement including myself. When I had previously provided a Privacy Act waiver to the Plaintiffs last November, it came in the wake of recent criminal disclosure activity by DOJ including their illegal decision to reveal my highly misleading redacted FISA affidavits to the *N.Y. Times* in violation of the Privacy Act in July 2018. It was clear that people at Main Justice were not following the law then anyway and I was desperate for prompt transparency as I was pursuing my case here in the Western District of Oklahoma at the time. So I thought it was my best alternative at that juncture amidst the mismanagement during the Rosenstein-Sessions era. But whereas there are significant indications that the Justice Department is in the process of returning to strict compliance with the rule of law under Attorney General Barr and since I have received a more cooperative initial response in this instance, I would like to withdraw my waiver for your case for the time being. This is based on the expectation that DOJ will

finally do the right thing by granting my 5 U.S.C. § 552a(d)(2) amendment request in this belated instance.

As I had previously written in my initial letter to the House Intelligence Committee in May 2017 (p. 2 of my letter, which was included at the start of the transcript for my November 2017 hearing available here):

> 'The Privacy Act of 1974 includes provisions which, "Grant individuals the right to seek amendment of agency records maintained on themselves upon a showing that the records are not accurate, relevant, timely, or complete."<!--[if !supportFootnotes]-->[1]<!--[endif]--> As a major affront to our democracy, the complete mockery that the Obama Administration allegedly made of the 2016 election makes such immediate steps essential today.'

That same month I had also submitted an initial Privacy Act request to the DOJ, as well as the FBI and NSA. These were never fulfilled despite my extensive related supporting correspondence with Rod Rosenstein and others at the Department in the summer of 2017. Rather than the Justice Department meeting my basic FISA Privacy Act requests, Mr. Rosenstein instead decide to sign a false FISA affidavit of his own in June 2017 too.

As you may recall, Judge Mehta noted the following earlier this summer (see footnote 2 on p. 2, Docket 51 of July 30, 2019):

> 'Defendant at first invoked multiple exemptions for each

of the redacted portions from the Pages. The complete line up of exemptions included some combination of Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(E). See https://vault fbi.gov/d1-release/d1-release (the Pages are at 301–03, 308–25). Since the start of this litigation, Defendant has withdrawn Exemptions 6 and 7(C), because Carter Page supplied a privacy waiver, see Def.'s Opp'n to Pl.'s Mot., ECF No. 43, at 12, and Exemption 7(A), as the Russia investigation has since concluded, see Def.'s Supp. Memo., ECF No. 49, at 3. Thus, what remains asserted as to the Pages is Exemptions 1, 3, 7(D), and 7(E).'

Watching from a distance, I see from some of the recent developments in your case that the proceedings seem to be somewhat deadlocked for the time being as we all await much bigger historic events (IG FISA abuse report, other declassification, et al).  I suspect that the disclosure you have been hoping for might come, following my prompt § 552a(d)(2) review of these related documents which I look forward to completing very soon.  After this is done and to the extent it might help, I would be happy to sign a new Privacy Act waiver.

As you may already be aware from the latest developments on Friday, Inspector General Horowitz has sent a letter to senior Congressional leaders.  As noted herein, he has again underscored the essential need to ensure that the forthcoming FISA abuse report receives "appropriate reviews for accuracy and comment purposes".  In this regard and consistent with other such Privacy Act references in their IG's most recent Comey Memo report (see for example, on p. 6 and 58), it

appears to be another clear step in the right direction towards finally returning DOJ to 5 U.S.C. § 552a compliance in this belated instance.

Please feel free to notify the Court of these developments as you see fit. To the extent that you need me to sign any relevant forms or other paperwork to this effect, please don't hesitate to contact me. I will be in meetings here in Oklahoma tomorrow, but can do my best to make myself available for call if you would like to discuss. Thanks for your understanding, and please accept my apologies for any inconvenience that this unfortunate situation has created.

Kind regards,
Carter

Carter Page, Ph.D.
Managing Partner[SEP]
Global Natural Gas Ventures LLC
101 Park Ave, Suite 1300
Oklahoma City, OK 73102
Direct   +1-405-825-0172
Fax       +1-405-825-0177
Mobile  +1-917-280-3662
cpage@globalenergycap.com
<!--[if !supportFootnotes]-->

---

<!--[endif]-->

<!--[if !supportFootnotes]-->[1]<!--[endif]-->   Office of Justice Programs, Bureau of Justice Assistance. "Privacy Act of 1974, 5 U.S.C. § 552a," U.S. Department of Justice. [https://it.ojp.gov/PrivacyLiberty/authorities/statutes/1279]