**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAMES MADISON PROJECT, et al., )<br>)<br>  Plaintiffs, )<br>)<br>v. )<br>) Case No. 17-597-APM<br>UNITED STATES DEPARTMENT OF JUSTICE, )<br>)<br>  Defendant. )<br>) | |

**DEFENDANT'S STATUS REPORT**

By Minute Order dated December 12, 2019, the Court directed that by December 20, 2019, "Defendant shall advise the court whether release of the Department of Justice's Inspector General's 'Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation' affects Defendant's withholding of information from the 412 released pages regarding the FISA applications pertaining to Carter Page," and "whether any information withheld from the 21 pages that are the subject of the court's Memorandum Opinion and Order of July 30, 2019, are impacted by the report's release."

Defendant DOJ hereby reports that at least some additional information related to the Carter Page FISA applications has been declassified and disclosed in the OIG Report, and that the additional information appears to overlap with aspects of the Page FISA applications at issue in this matter, including portions of the 21 pages that are the subject of the Court's opinion and that are the sole contested issue in the pending motion. As an initial matter, the Court should not consider these disclosures in ruling on the pending Motion for Summary Judgment. Rather, the propriety of the government's exemptions is typically judged at the time that it processed the request, and the D.C. Circuit has advised that "[a]lthough there may be some circumstances in which it is appropriate to consider new information that comes to light during litigation, courts

must be wary of creating an endless cycle of judicially mandated reprocessing of FOIA requests." *See ACLU v. CIA*, 640 Fed. Appx. 9, 13 (D.C. Cir. 2016); *Bonner v. State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991).

To the extent the Court intends to await the outcome of additional processing, Defendant is in the process of evaluating whether further FOIA releases are appropriate in several pending matters, including this one. The attached Fifth Declaration of David Hardy explains that "while only 21 pages remain at issue in this matter, the entire set of documents will need to be processed consistently for release in response to other requests and must be considered as a whole." 5th Hardy Decl. ¶ 5. The evaluation in this case will require the Government to carefully review the OIG report in conjunction with the Page FISAs in order to determine precisely what information contained in them has been declassified and whether any such declassified information can be released to Plaintiff in response to its FOIA request. *Id*. ¶ 10.[1] The same personnel are responsible for evaluating other pending FOIA matters related to the Russia investigation involving even more documents and imminent deadlines. "Their most immediate demand is completing processing on more than 1000 pages of SCO 302s for three productions on January 2, 17, and February 2, 2020, in *Leopold et al. v. DOJ*, 19-cv-1278 (D.D.C.) and *CNN v. FBI*, 19-cv-1626 (D.D.C.)," but the same unit is handling multiple priority matters described in the Hardy Declaration and over 100,000 pages pending processing. *Id*. ¶¶ 8-9. The declaration describes increasing demands on the other personnel who will be involved in review of these documents, and the general demand for FOIA resources at FBI. ¶¶ 11-13. "Accordingly, due to the overall demands on the FBI's FOIA program and the specific demands and pending court deadlines on

---

[1] Separate from this process, as described in the previously filed Weinsheimer Declaration, the President has "delegated to the Attorney General the authority to declassify documents as part of his ongoing review of intelligence activities relating to the campaigns in the 2016 Presidential election and certain related matters." Weinsheimer Decl. ¶ 5. This consideration by the Attorney General could also result in additional disclosures.

the FOIPA unit designated to handle SCO and SCO-related records, the FBI needs 4-6 months to re-process the Page FISAs previously released in July 2018."

Dated:  December 20, 2019               Respectfully Submitted,

                                        ETHAN P. DAVIS
                                        Principal Deputy Assistant Attorney General

                                        MARCIA BERMAN
                                        Assistant Director, Federal Programs Branch

                                        */s/Amy E. Powell*
                                        AMY E. POWELL
                                        Trial Attorney, Federal Programs Branch
                                        Civil Division, Department of Justice
                                        150 Fayetteville St, Suite 2100
                                        Raleigh, NC 27601
                                        Phone: 919-856-4013
                                        Email:  amy.powell@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE JAMES MADISON PROJECT and BRAD HEATH, USA Today,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 17-cv-0597<br>)<br>)<br>)<br>)<br>) |

## FIFTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1) I am currently the Section Chief of the Record/Information Dissemination Section (RIDS), Records Management Division (RMD), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act (FOIA) policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 243 employees and 73 contractor personnel who staff a total of twelve (12) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests

for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (2010), and the preparation of declarations in support of Exemption (b)(1) claims under the FOIA. I have been designated by the Attorney General of the United States as an original classification authority, and a declassification authority pursuant to Executive Order 13526 §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiffs' FOIA request that is the subject of this lawsuit.

(4)     This declaration addresses generally the impact of the release of the report of DOJ's Office of the Inspector General ("OIG") entitled *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (December 2019), the amount of time the FBI will need to re-process information responsive to Plaintiffs' FOIA requests, and the circumstances driving the FBI's estimate of the necessary re-processing time. This declaration supplements and incorporates by reference my four previous declarations in this case as well as the Declaration of Michael G. Seidel. *See* ECF No. 13-3, Declaration of David M. Hardy (hereafter "First Hardy Decl."), submitted in support of DOJ's withdrawn motion for summary

2

judgment (ECF No. 13); ECF No. 34-1, Second Declaration of David M. Hardy (hereafter "Second Hardy Decl."), submitted in support of DOJ's Joint Status Report (ECF No. 34); ECF No. 40-1, Third Declaration of David M. Hardy (hereafter "Third Hardy Decl."), submitted in support of DOJ's renewed motion for summary judgment (ECF No. 40)[1]; ECF No. 43-2, Declaration of Michael G. Seidel, submitted in support of DOJ's reply in support of its renewed motion for summary judgment (ECF No. 40); and ECF No. 49-1, Fourth Declaration of David M. Hardy, submitted in support of a supplemental motion in support of DOJ's renewed motion summary judgment (ECF No. 40).[2]

(5)  From an initial review, the FBI has concluded that at least some withholding decisions in the four Page FISAs at issue in this case, and in particular on the 21 pages still at issue in this case, have been affected by the declassification and disclosure of certain information in relation to the OIG report. And while only 21 pages remain at issue in this matter, the entire set of documents will need to be processed consistently for release in response to other requests and must be considered as a whole.

(6)  In terms of timing, the FBI estimates that it will need 4-6 months to reprocess the affected pages, in light of those declassification and disclosure decisions.

(7)  The FBI has designated a single FOIPA processing unit in RIDS to handle all FOIA requests for SCO and SCO-related records. This allows RIDS to leverage expertise in the records and surrounding circumstances; quickly identify what has previously been requested, how those requests were handled, and any previous disclosures that have been made; not have to

---

[1] The Third Hardy Decl. is classified. The version filed on the public docket at ECF No. 40-1 is a redacted, unclassified version.

[2] The Seidel Declaration addressed the impact of plaintiffs' submission of a privacy waiver executed by Carter Page on certain withholdings under Exemptions (b)(6) and (b)(7)(C).

re-do research that has already been conducted or re-analyze issues that have already been addressed; and find other similar efficiencies.

(8) The unit handling SCO and SCO-related materials is the unit that processed the Page FISAs for release in July 2018. As a result of the closure of the SCO, disclosure of the SCO Report and the OIG Report, and other related circumstances, that unit is incredibly busy. Their most immediate demand is completing processing on more than 1000 pages of SCO 302s for three productions on January 2, 17, and February 2, 2020, in *Leopold et al. v. DOJ*, 19-cv-1278 (D.D.C.) and *CNN v. FBI*, 19-cv-1626 (D.D.C.). The particular records that the judge in the *Leopold* and *CNN* cases designated for processing in December for release in January were not the ones that RIDS had been processing, so in order to meet the FBI's processing requirements for the upcoming releases, the unit had to assign nine additional employees to the processing and was anticipating well in excess of 100 hours of overtime or compensatory time could be required (over the Christmas and New Year's holidays) to meet the deadlines in this single case.

(9) This FOIPA unit has other priority work for which it is responsible. As of early December 2019, this unit had approximately 515 pending FOIPA requests assigned to it. Of those, 30 are in litigation; approximately 325 are at the initial processing stage (*i.e.*, reviewing to determine whether it is a proper FOIA request; opening and sending acknowledgment letters; conducting searches or otherwise responding to the requests; etc.); and approximately 160 are at the processing stage, with roughly 125,000 pages pending processing.[3] The 30 pending lawsuits involve monthly responses concerning roughly 5200 pages (including those being processed in

---

[3] This page count does not include the whole of the SCO files, which we have estimated at more than 2 million pages in the investigative files, with potentially billions more on various media devices included within the SCO files.

the *Leopold* and *CNN* cases mentioned above). The FOIPA unit is also conducting searches for and vetting potentially responsive records in litigation cases that have not yet reached the processing/monthly release phase, conducting research into a variety of issues, and preparing charts and other records in order to respond to court orders. In total, about 85% of the unit's work is in litigation.

(10) For the Page FISAs, the FOIPA unit will need to review the entire report (as information about Page, Steele, the FISAs, etc. is distributed throughout it) and it will not be able to carefully review the report until January at the earliest due to the other court deadlines referenced above. The unit must review and digest the entire report because a particular fact could be declassified but that would not necessarily result in the declassification of all related information or the waiver of all FOIA exemptions over related information in the FISAs. Accordingly, the FOIPA unit will need to compare the entire report against the FISAs to identify what matches and thus, must be disclosed.

(11) In addition to the demands on the FOIPA unit handling SCO and SCO-related FOIA requests, other FBI employees are involved overall in the review of these records for public disclosure. Three attorneys in the FBI's Office of the General Counsel, FOIA Litigation unit (half of the unit's attorney staff) are handling lawsuits involving SCO and SCO-related records and a small but varying number of Subject Matter Experts (SMEs) are assisting in the review of SCO and SCO-related records, depending on the particular records at issue.[4] These attorneys and SMEs' ability to assist in these reviews is stretched thin due to the other demands

---

[4] The number of SMEs varies pending on the particular records and subjects at issue. Nevertheless, this is a necessarily limited universe of personnel, due to the knowledge and expertise required and also given their other duties and responsibilities to conduct or provide operational support on on-going FBI investigations and enforcement/intelligence-gathering activities.

on them from other SCO and SCO-related matters, as well as the other regularly-assigned work for which they are responsible.

(12) The demands on the FBI with respect to the processing of FOIA requests for SCO and SCO-related records tax already strained resources. The FBI has been inundated with an unprecedented volume of FOIPA requests in recent years. In Fiscal Year ("FY") 2019, the FBI received 31,344 FOIPA requests (a 78% increase over intake from five years ago, when in FY 2014, intake was 17,653 requests). In FY 2019, the FBI resolved 31,962 FOIPA requests and reviewed over one million pages of records in response to FOIPA requests.

(13) Over the past several years, requests have grown significantly more complex. Rather than relatively straightforward requests for a single bank robbery investigative file, for example, requests are often multi-part and seek various categories of records and/or pertain to complex topics, which require much more coordination with external and internal stakeholders to ensure the FBI makes appropriate disclosure decisions.[5] They also increasingly seek large volumes of records, which proportionally impacts - and dramatically affects - the complexity of the FOIPA processing required as well as the resources and time needed to respond to a particular request.[6] Records responsive to FOIPA requests also increasingly contain information

---

[5] The subject matter of requests received by the FBI has mirrored the changing nature of the crimes investigated by the FBI. In a hearing before the Senate Judiciary Committee on July 8, 2015, former FBI Director James Comey informed Congress as our society has increased its reliance on technology, so have criminals; thus, the FBI has "been forced to consider how criminals and terrorists might use advances in technology to their advantage." Essentially, as criminals, terrorists, and those who threaten the national security of the United States become more technologically savvy, so must the FBI. This directly impacts the nature of FOIPA requests received by the FBI. Requests increasingly require RIDS FOIA processors to seek guidance from FBI SMEs to (a) understand the information at issue and (b) to make informed, appropriate disclosure decisions. Parallel to this, RIDS has been forced to focus more of its finite resources on developing a specialized workforce able to meet the demands of more sophisticated FOIPA requests about complex and often technical subject matters.

[6] The FBI's experience is that as the number of pages in a request increases, the work and complexity associated with responding to a request proportionally increases as well. This includes increases in the number of referrals (for either consultation or direct response) to other DOJ components and agencies, the need for internal reviews, classification/declassification considerations, and the time needed to conduct page-by-page, line-by-line reviews of all potentially responsive material to determine what can be released and/or withheld.

originating from or involving other government agency ("OGA") information, which requires more coordination and consultation between the FBI and the OGAs than ever before.[7] Finally, the FBI's records increasingly contain materials other than paper records or documents, such as audio and visual files, which has forced RIDS to dedicate more of its finite resources on developing its workforce's capability and expertise to process an increasing number of audio and video records, which are very time-consuming to process.

(14) Accordingly, due to the overall demands on the FBI's FOIA program and the specific demands and pending court deadlines on the FOIPA unit designated to handle SCO and SCO-related records, the FBI needs 4-6 months to re-process the Page FISAs previously released in July 2018.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of December, 2019.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

---

[7] After reviewing the United States Government's response to the terrorist attacks of September 11, 2001, the National Commission on Terrorist Attacks upon the United States ("9/11 Commission") recommended agencies within the federal government increase their ability to share and collaborate on gathered intelligence. The FBI, like other members of the United States Intelligence Community, adopted this recommendation. This means FBI records increasingly contain OGA information and/or equities. This requires the FBI seek these OGA's redaction determinations about the disposition of their information and equities prior to disclosure of the records. Thus, increased inter-agency information sharing has increased the administrative burden associated with processing FOIA requests to ensure such information is appropriately vetted before public dissemination. This has forced RIDS to devote more of its finite resources to disseminating and tracking a growing number of FOIPA referrals and consultations with OGAs.