**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                              )
**THE JAMES MADISON PROJECT, et al.,**          )
                                                              )
    **Plaintiffs,**                                      )
                                                              )
    **v.**                                                    )    **Case No. 17-cv-00597 (APM)**
                                                              )
**UNITED STATES DEPARTMENT OF**               )
**JUSTICE,**                                              )
                                                              )
    **Defendant.**                                       )
_____  )

## MEMORANDUM OPINION

At issue in this case are 21 of 412 pages responsive to a Freedom of Information Act ("FOIA") request that concerns an application made to the U.S. Foreign Intelligence Surveillance Court regarding Carter Page.  Before the court is Defendant U.S. Department of Justice's ("DOJ") Renewed Motion for Summary Judgment.  For the reasons that follow, the court grants Defendant's motion.

I.

The relevant facts are set forth in the court's previous opinion, *see* Mem. Op. and Order from July 30, 2019, ECF No. 51 [hereinafter Mem. Op.], so the court only summarizes them here. In March 2017, Plaintiffs The James Madison Project and Brad Heath submitted a FOIA request to DOJ for, among other things, orders by or applications to the U.S. Foreign Intelligence Surveillance Court concerning the Trump Organization, President Trump, President Trump's campaign, or people associated with President Trump. *See* Def.'s Mot. for Summ. J., ECF No. 40 [hereinafter Def.'s Mot.], Def.'s Stmt. of Material Facts, ECF No. 40 at 1–11 [hereinafter Def.'s Facts], ¶ 1; *see also* Pls.' Mot. for Summ. J., ECF No. 41 [hereinafter Pls.' Mot.], at 2

(incorporating Defendant's facts).   Defendant released 412 pages, which constituted "all responsive, non-exempt and reasonably segregable information subject to FOIA," including any Foreign Intelligence Surveillance Act ("FISA") applications related to Carter Page.   *See* Def.'s Facts ¶ 11; *see also* Pls.' Mot. at 2.   The released pages were heavily redacted and identified a range of FOIA exemptions to justify the withholdings.   *See* https://vault.fbi.gov/d1-release/d1-release (last visited February 24, 2020).

Plaintiffs disputed Defendant's redaction of 21 of the 412 pages ("the Pages") based on post-disclosure events.   *See* Pls.' Mot. at 1.   Nearly two months after releasing the 412 pages, the White House issued a Press Release stating that President Trump had "directed the Office of the Director of National Intelligence and the Department of Justice (including the FBI) to provide for the immediate declassification of the following materials:  (1) pages 10-12 and 17-34 of the June 2017 application to the FISA court in the matter of Carter W. Page."   *See* Press Release, White House   Press   Secretary   (Sept.   17,   2018),   https://www.whitehouse.gov/briefings-statements/statement-press-secretary-34/ (last visited February 24, 2020) [hereinafter Press Release]; *see also* Pls.' Mot. at 4.   Notwithstanding the Press Release, Defendant continued to withhold the Pages pursuant to Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(E).   *See* Def.'s Mot. at 13.

The parties moved for summary judgment.   *See* Def.'s Mot.; Pls.' Mot.   With respect to Exemption 1, Plaintiffs argued that the Press Release reflected a presidential order to declassify the referenced Pages in full.   *See* Pls.' Mot. at 4.   Defendant countered that there had been "no presidential declassification order, and the President has publicly indicated that he is not requiring declassification at this time, much less full disclosure."   *See* Def.'s Opp'n to Pls.' Mot., ECF No.

43 [hereinafter Def.'s Opp'n], at 1.[1]   Further, Defendant insisted that the Press Release is, "indisputably, a statement from the press secretary, not an order from the President." *Id.* at 3.

The court denied both motions for summary judgment, but allowed Defendant to submit a renewed motion and an additional declaration providing information about "(1) the effect, if any, the Press Release and the President's subsequent tweets (including the meeting referenced in the tweets) had on the classification status of the Pages, and (2) whether the agency is authorized to assert [other Exemptions] to shield portions of the Pages from disclosure."   Mem. Op. at 6. Defendant accepted the court's invitation, and now pending is Defendant's Renewed Motion for Summary Judgment.   Def.'s Renewed Mot. for Summ. J., ECF No. 52 [hereinafter Def.'s Renewed Mot.].

## II.

In a FOIA case, "the agency bears the burden of justifying its decision to withhold requested information." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987).   Here, the agency withheld the Pages pursuant to Exemption 1, which protects against disclosures that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant

---

[1] Defendant's later argument relied on presidential tweets coming four days after the Press Release.   The two tweets were as follows:

> I met with the DOJ concerning the declassification of various UNREDACTED documents.   They agreed to release them but stated that so doing may have a perceived negative impact on the Russia probe.   Also, key Allies' [*sic*] called to ask not to release.   Therefore, the Inspector General . . . has been asked to review these documents on an expedited basis.   I believe he will move quickly on this (and hopefully other things which he is looking at).   In the end I can always declassify if it proves necessary.   Speed is very important to me – and everyone!

Donald   J.   Trump   (@realDonald   Trump),   TWITTER   (Sept.   21,   2018,   10:35   AM), https://twitter.com/realdonaldtrump/status/1043146627576258561;   Donald   J.   Trump   (@realDonaldTrump), TWITTER (Sept. 21, 2018, 10:41 AM), https://twitter.com/realdonaldtrump/status/1043148165883416576.

to such Executive order." 5 U.S.C. § 552(b)(1).  Exemption 1 cannot apply to information that has been declassified.

A.

In its previous opinion, the court found that the Press Release was ambiguous as to whether it had the effect of a declassification order.  Mem. Op. at 4.  Recognizing that "[t]he agency bears the burden to show that Exemption 1 applies" and to "dispel any ambiguity," the court afforded Defendant an opportunity to "establish that the Pages were not declassified in full." *Id.*  Defendant has now done so.

With its renewed motion, Defendant submitted a declaration from G. Bradley Weinsheimer, an Associate Deputy Attorney General in the Office of the Deputy Attorney General ("ODAG") at the DOJ.  Decl. of G. Bradley Weinsheimer, ECF No. 52-1 [hereinafter Weinsheimer Decl.].  In that declaration, Weinsheimer affirms that "[a]fter the press secretary statement was issued, ODAG personnel, including [Weinsheimer], consulted with personnel at the White House about the matters discussed in that statement, including potential declassification of certain documents related to the Carter Page FISA applications and orders," and "DOJ did not receive at any time a declassification order related to the materials remaining at issue in this case." *Id.* ¶ 4; *see also id.* ¶ 5 (stating that, during the consultations with the White House, the "DOJ was informed that there was no order requiring immediate declassification or disclosure of those documents"). Further, Weinsheimer explains, in May 2019, the President delegated to the Attorney General of the United States the authority to "declassify documents as part of his ongoing review of intelligence activities relating to the campaigns in the 2016 Presidential election and certain related matters," and to date, "the Attorney General has not exercised that declassification authority over the materials at issue in this case." *Id.* ¶ 5.

After reviewing the Weinsheimer Declaration, the court is satisfied that Defendant has met its burden of establishing that the Press Release from September 17, 2018, did not constitute or reflect a presidential order to declassify the Pages. Accordingly, the Pages were properly withheld pursuant to Exemption 1. *See* 5 U.S.C. § 552(b)(1).[2]

## B.

Plaintiffs try to avoid this conclusion by asserting that the Weinsheimer Declaration fails to explain why the Press Release itself "does not qualify as a declassification order as a matter of law," Pls.' Opp'n to Def.'s Renewed Mot., ECF No. 53 [hereinafter Pls.' Opp'n to Renewed Mot.], at 4, and "does not demonstrate that DOJ received authorized instructions that the [Press Release] had been rescinded or otherwise postponed as a matter of law," *id.* at 3 (cleaned up). This argument misses the point. Plaintiffs assume that the Press Release is, in fact, as a declassification order and that it is Defendant's job to prove otherwise, or alternatively, to prove that the order was rescinded. But the court never held that the Press Release was a declassification order or its equivalent. To the contrary, the court observed that the Press Release's text "suggests" it might be or "would appear" to be a declassification order or reflect one, but ultimately found the Press Release and the events that followed to be ambiguous. *See* Mem. Op. at 4–6. For that reason, the court ordered the DOJ to "provide information about [ ] the effect, if any, the Press Release and the President's subsequent tweets . . . had on the classification status of the Pages." *Id.* at 6. DOJ's declaration now makes clear that the Press Release was not a declassification order.[3] *See* Weinsheimer Decl. Plaintiffs' protestations to the contrary, which lack any evidentiary support, therefore ring hollow.

---

[2] Except as discussed below, Plaintiffs do not dispute that the withheld material from the Pages satisfies the requirements of Exemption 1.

[3] Because the court is satisfied that the DOJ has properly withheld the Pages at issue pursuant to Exemption 1, it need not address whether the DOJ was entitled to withhold the Pages pursuant to any other statutory exemptions. *See* Def.'s Renewed Mot. at 4–6; Pls.' Opp'n to Renewed Mot. at 9–10.

III.

In a supplemental filing, Plaintiffs state that the Pages are not the only documents that remain in dispute in this litigation.   They write: "[T]he Plaintiffs did not concede the appropriateness of the remainder of the redactions and/or withholdings made by the government with respect to the other 391 pages of the Page FISA warrants." Pls.' Resp. to Def.'s Status Report, ECF No. 60.  That is news to the court.

On October 19, 2018, Defendant filed a comprehensive motion for summary judgment that defended its search; its withholding and redaction of records based on Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(E); and its invocation of a *Glomar* response as to other records.  *See generally* Def.'s Mot. Plaintiffs opposed Defendant's motion and filed a partial cross-motion for summary judgment.  Pls.' Mot.; Pls.' Opp'n to Def.'s Mot. for Summ. J., ECF No. 42 [hereinafter Pls.' Opp'n].  In their papers, Plaintiffs stated:

> Upon review of the Government's Motion and its supporting sworn declarations, the Plaintiffs have chosen to concede the adequacy of the searches conducted, as well as the Government's Glomar responses . . . . The Plaintiffs have confined their Cross-Motion for Partial Summary Judgment ("Cross-Motion"), as well as their Memorandum in Opposition to the Defendant's Motion for Summary Judgment, strictly to the legal appropriateness of the redactions and withholdings made to the documents that have been produced as part of this litigation.

Pls.' Mot. at 1; Pls.' Opp'n at 1 (same).  As a consequence of Plaintiffs having "confined" their arguments, the court wrote in its earlier opinion that "Defendant's continued redaction of 21 of the 412 pages is the *sole contested issue* in the parties' cross-motions for summary judgment." *See* Mem. Op. at 2 (emphasis added).  Plaintiffs never sought to disabuse the court of the notion that the "sole contested issue" pertained to redaction of the Pages—until now.  Thus, it is for the first time in their supplemental filing, submitted after the second round of summary judgment

briefing closed and permitted by the court only to address new developments, that Plaintiffs suggest that there is more left to resolve in this case.  There is not.  Plaintiffs had every opportunity to oppose and cross-move as to any and all issues raised in Defendant's original motion for summary judgment, or as to any other issue they wished.  They chose instead to contest only one discrete issue.  Plaintiffs cannot now revive what they long ago abandoned.  *See Hayes v. District of Columbia*, 923 F. Supp. 2d 44, 51 (D.D.C. 2013) (treating a claim as conceded when the plaintiff did not "specifically dispute the defendant's argument" regarding the claim in her opposition); *Valles-Hall v. Ctr. For Nonprofit Advancement*, 481 F. Supp. 2d 118, 140 (D.D.C. 2007) (deeming abandoned claims not raised by the plaintiff in her revised opposition to the defendant's summary judgment motion); *Brodie v. Burwell*, No. 15-322 (JEB), 2016 WL 3248197, at *14 (D.D.C. June 13, 2016) (treating as abandoned a claim that a party only mentions "in passing" in his opposition motion).  Therefore, having resolved the sole remaining issue in the second summary judgment motion, the court considers this matter closed.

IV.

For the foregoing reasons, the court grants Defendant's Renewed Motion for Summary Judgment, ECF No. 52, and enters judgment in favor of Defendant.  A separate, final order accompanies this Memorandum Opinion.

Dated:  March 3, 2020

Amit P. Mehta
United States District Court Judge